# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| BYJU'S ALPHA, INC.,[1] | ) | |
| | ) | |
| Debtor. | ) | Case No. 24-10140 (JTD) |
| | ) | |
| | ) | **Re:  Docket No. 5** |

## INTERIM ORDER
## (I) AUTHORIZING THE USE OF CASH COLLATERAL,
## (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING
## THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon the Motion (the "Motion")[2] filed by the above-captioned debtor and debtor in possession (the "Debtor") for entry of an interim order (this "Interim Order") pursuant to sections 361, 362, 363, 503, 506, 507, and 552 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), among other things:

    (a)    authorization for the Debtor, pursuant to sections 361, 362, 363, and 507 of the Bankruptcy Code to (i) use Cash Collateral, solely in accordance with the terms of this Interim Order, and (ii) provide adequate protection to the Prepetition Secured Parties;

    (b)    authorization to grant the Adequate Protection Liens and the Adequate Protection Claims;

---

[1]  The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is:  BYJU's Alpha, Inc. (4260).  The location of the Debtor's service address for purposes of this Chapter 11 Case is 16192 Coastal Highway, Lewes, Delaware 19958.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(c)     modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent set forth herein;

(d)     subject to entry of the Final Order, waiver of all rights to surcharge any Prepetition Collateral or Adequate Protection Collateral under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(e)     waiver of the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Adequate Protection Collateral;

(f)     scheduling of a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis; and

(g)     waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order; and

(h)     granting related relief.

Having considered the Motion, the First Day Declaration and the evidence submitted or proffered at the hearing on the Motion held on February 5, 2024 (the "Interim Hearing"); and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having determined that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having considered the Motion, the First Day Declaration, and the arguments of counsel at the Interim Hearing; and the Court having found that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate, as contemplated by Bankruptcy Rules 4001 and 6003; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor and its estate, creditors, and other parties in interest; and it appearing that the Debtor's use of Cash Collateral and granting of adequate protection to the

Prepetition Secured Parties are sound and prudent exercises of the Debtor's business judgment; and the Court having found that proper and adequate notice of the Motion and the Interim Hearing thereon has been given under the circumstances and that no other or further notice is necessary for the interim relief requested in the Motion; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation to the Motion and all of the proceedings had before the Court in connection with the Motion, **THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.     <u>Petition Date</u>.  On February 1, 2024 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>"), commencing the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>").

B.     <u>Debtor in Possession</u>.  The Debtor continues to operate its business as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case.

C.     <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for

---

[3]     Where appropriate in this Interim Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

the relief sought herein are sections 361, 362, 363, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Local Rules 2002-1, 4001-1, 4001-2, and 9013-1.

D.    Committee.  As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee ("Committee") in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

E.    Debtor's Stipulations.  In requesting the use of Cash Collateral, and in exchange for and as a material inducement to the Prepetition Secured Parties to agree to provide, or consent to, the Debtor's access to the Cash Collateral and subordination of the Prepetition Liens to the Carve Out and as a condition to consenting to the use of Cash Collateral, subject to the rights of the parties in interest (other than the Debtor) set forth in this Interim Order, the Debtor permanently and irrevocably admits, stipulates, acknowledges, and agrees, as follows (collectively, the "Debtor's Stipulations"):

(i)    Prepetition Secured Parties.  The Debtor, as borrower, GLAS Trust Company LLC ("GLAS" or the "Prepetition Agent"), as administrative agent and collateral agent, the lenders party thereto (collectively, the "Prepetition Secured Lenders" and, together with GLAS, the "Prepetition Secured Parties"), among others, entered into that certain Credit and Guaranty Agreement dated November 24, 2021 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Prepetition Credit Agreement").

(ii)    Prepetition Collateral.  As security for the prompt and complete payment and performance in full when due of all obligations under the Prepetition Credit Agreement, the Debtor, entered into a pledge and security agreement dated November 24, 2021 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Pledge and Security Agreement")

with GLAS[4] (such collateral, the "<u>Prepetition Collateral</u>" and such liens granted, the "<u>Prepetition Liens</u>").

(iii)    <u>Cash Collateral</u>.  Any and all of the Debtor's cash, including all amounts on deposit or maintained in any banking, checking, or other deposit accounts by the Debtor, any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral or deposited into the Debtor's banking, checking, or other deposit accounts after the Petition Date, and the proceeds of any of the foregoing is the Prepetition Secured Parties' cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").  The Prepetition Secured Parties are entitled to adequate protection of their respective interests in the Cash Collateral, for any Diminution in Value of their respective interests as of the Petition Date resulting from the use of Cash Collateral.

(iv)    <u>Good Faith</u>.  The Prepetition Secured Parties have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the use of Cash Collateral, including in respect of granting the Adequate Protection Liens, any challenges or objections to the use of Cash Collateral, and all documents relating to any and all transactions contemplated by the foregoing.

F.    <u>Cash Collateral</u>.  All of the Debtor's cash, including any cash in deposit accounts of the Debtor, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties. The Prepetition Secured Parties consent to the Debtor's use of the Cash Collateral in accordance with and subject to the terms and conditions provided for in this Interim Order.  The Debtor has agreed to provide each Prepetition Secured Party with adequate protection of its respective interest in the Cash Collateral for any Diminution in Value thereof.

G.    <u>Need for Cash Collateral</u>.  The Debtor has an immediate and critical need to obtain permission to use Cash Collateral (subject to the Approved Budget), in order to, among other things to pay professional fees and to pursue a restructuring for the benefit of the Debtor's

---

[4]    Under the Pledge and Security Agreement, the Debtor granted a security interest in the "Collateral" (as defined in the Pledge and Security Agreement) to GLAS for its benefit and for the benefit of the Prepetition Secured Parties.

stakeholders.  The absence of access to Cash Collateral would immediately and irreparably harm the Debtor, its estate, and parties in interest.  The Debtor does not have sufficient available sources of working capital and financing to preserve the value of its business without the ability to use Cash Collateral.  The Debtor and its estate will be immediately and irreparably harmed if the Debtor is unable to use Cash Collateral.  Entry of this Interim Order is necessary and appropriate to avoid such harm to the Debtor, its estate, and other parties in interest.

H.      In light of the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve Out and to permit the use of their Cash Collateral as set forth herein, upon entry of the Final Order, each Prepetition Secured Party shall be entitled to the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to such parties with respect to the proceeds, products, offspring, or profits of any of the Cash Collateral, as applicable.

I.      Section 506(c).  In light of the Prepetition Secured Parties' agreement to extend credit to the Debtor on the terms described herein, the Prepetition Secured Parties have negotiated for and the Debtor will seek in the Final Order a waiver of the provisions of section 506(c) of the Bankruptcy Code in respect of the Adequate Protection Collateral, subject to the Carve Out.

J.      Good Faith.  The terms and conditions of the use of Cash Collateral were negotiated in good faith and at arm's length among the Debtor and the Prepetition Secured Parties with the assistance and counsel and their respective advisors.  The Prepetition Secured Parties have agreed to the use of Cash Collateral in good faith, and the Prepetition Secured Parties shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is reversed or modified on appeal.

K.      Notice.  Notice of the interim relief requested in the Motion and the Interim Hearing

has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local

Rules, whether by facsimile, email, overnight courier, and/or hand delivery, to certain parties in

interest, including:  (a) the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against

the Debtor (on a consolidated basis, as an if identified); (c) the office of the attorney general for

each of the states in which the Debtor operates; (d) the United States Attorney's Office for the

District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and

Exchange Commission; (g) the United States Department of Justice; (h) the Prepetition Agent and

counsel thereto; (i) the Prepetition Secured Lenders and counsel thereto; (j) Think and Learn

Private Limited and counsel thereto; (k) BYJU's Pte. Ltd.; (l) Great Learning Education Pte. Ltd.;

(m) Epic! Creations Inc.; (n) Neuron Fuel Inc.; (o) Tangible Play, Inc.; (p) Whitehat Education

Technology LLC; (q) shareholders to Think and Learn Private Limited; (r) Camshaft Capital Fund,

LP, Camshaft Capital Management, and Camshaft Capital Advisors, and counsel thereto; and (s)

any party that has requested notice pursuant to Bankruptcy Rule 2002.  No other or further notice

of the Motion with respect to the relief requested at the Interim Hearing or entry of this Interim

Order is or shall be required.

L.      Immediate Entry.  The Debtor has requested immediate entry of this Interim Order

pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and 6003.  Absent entry of this Interim

Order, the Debtor's business and its estate would be immediately and irreparably harmed.  This

Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and

stakeholders and sufficient cause exists for immediate entry of this Interim Order.

Based upon the foregoing findings and conclusions, the Motion and the record before the

Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      <u>Interim Approval</u>.  The Motion is GRANTED on an interim basis as set forth herein.

2.      <u>Objections Overruled</u>.  Any objections, reservations of rights, or other statements with respect to entry of the Interim Order, to the extent not withdrawn or resolved, are OVERRULED on the merits.

3.      <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order and in accordance with the budget (the "<u>Approved Budget</u>") attached hereto as **<u>Exhibit 1</u>**, the Debtor is hereby authorized to use the Cash Collateral from the date of entry of this Interim Order through and including the date of termination of the DIP Credit Agreement; *provided* that, notwithstanding anything to the contrary in this Interim Order, the maximum amount of Cash Collateral that the Debtor is authorized to use pursuant to this Interim Order shall be capped at a maximum of $75,000.

4.      In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted solely to the extent necessary to perform all acts and to make, execute, and deliver all instruments and documents, and to pay all fees that may be reasonably required or necessary for the Debtor's performance of its obligations set forth in this Interim Order.

5.      Subject to paragraph 28 of this Interim Order, all payments or proceeds remitted to or on behalf of any Prepetition Secured Parties pursuant to the provisions of this Interim Order, or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability, including any such claim or charge arising out of or based on, directly or indirectly, section 506(c) or the "equities of the case" exception of section 552(b) of the

Bankruptcy Code (and, solely in the case of waivers of rights under sections 506(c) and the "equities of the case" exception of section 552(b), in each case subject to the entry of the Final Order granting such relief).

6.      The cash proceeds of the Bridge Loan are held, and shall remain, in the GLAS Account until and upon the date on which the Final Order is entered.  Upon entry of the Final Order, the Debtor shall transfer all such Cash Collateral from the GLAS Account to the Postpetition Bank Account.

7.      Approved Budget.  The proceeds of the Cash Collateral shall be used solely in accordance with the Approved Budget.  In the event the Debtor deems it necessary to use cash that constitutes Cash Collateral outside the amounts permitted under the Approved Budget, the Debtor may make such request to the Prepetition Agent.  Any variation or modification to the Approved Budget shall be subject in all respects to the Prepetition Agent's consent in consultation with the Prepetition Secured Lenders.

8.      Adequate Protection for the Prepetition Secured Parties.  In consideration of the stipulations and consents set forth herein, the Debtor has agreed to provide the Prepetition Secured Parties adequate protection of their interests in the Cash Collateral, solely to the extent of and in an amount equal to the aggregate diminution in value of such interests from and after the Petition Date (each such diminution, a "Diminution in Value"), resulting from the imposition of the Carve Out, the Debtor's use of the Cash Collateral, the imposition of the automatic stay, or any other decline in value that constitutes diminution in value under applicable law (each Prepetition Secured Party's claim against the Debtor for such Diminution in Value, an "Adequate Protection Claim").

9.      Adequate Protection Collateral.  "Adequate Protection Collateral" shall mean, collectively, all of the Debtor's property and assets (whether now owned or after-acquired, and

whether real or personal, tangible, or intangible), including, without limitation:  the Debtor's Prepetition Collateral; all rights, interests, and obligations in and to any cause of action of the Debtor with respect to fraud, fraudulent conveyance, or breach of fiduciary duties and any proceeds thereof (collectively, the "Litigation Claims"); postpetition revenues; insurance; bank accounts and other security or deposit accounts of the Debtor (including, for the avoidance of doubt, any accounts opened prior to, on, or after the Petition Date); all equity interests; all intercompany claims, accounts, and receivables (and all rights associated therewith); and any and all proceeds, products, rents, and profits of all of the foregoing; *provided* that the Debtor's rights, interests, and obligations in and to any cause of action with respect to avoidance actions under the Bankruptcy Code, including the Litigation Claims, may not be subject to an Adequate Protection Lien until entry of the Final Order.

10.    <u>Adequate Protection Liens</u>.  Subject to paragraph 28 of this Interim Order, as security against the Debtor for any Diminution in Value of the Prepetition Collateral, subject and subordinate only to (a) the Carve Out and (b)(i) any valid, perfected and unavoidable liens, if any, existing as of the Petition Date that are senior to the liens or security interests of the Prepetition Secured Parties as of the Petition Date by operation of law or permitted by the Prepetition Credit Agreement and (ii) any liens that are perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code, each Prepetition Secured Party is hereby granted additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens on the Adequate Protection Collateral as of the date of this Interim Order (collectively, the "<u>Adequate Protection Liens</u>"), without the necessity of the execution by the Debtor (or recordation or other filing), of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.

Subject to paragraph 28 of this Interim Order and the Carve Out, the Adequate Protection Liens and the Adequate Protection Claims granted to the Prepetition Secured Parties pursuant to this Interim Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest, or administrative claim under section 364 of the Bankruptcy Code or otherwise.

11.    Adequate Protection Superpriority Claims.  Subject to paragraph 28 of this Interim Order, as further adequate protection, and to the fullest extent provided by sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, the Adequate Protection Claims shall be, subject and subordinate to the Carve Out, allowed superpriority administrative expense claims against the Debtor in the Chapter 11 Case ("Adequate Protection Superpriority Claims").

12.    Right to Seek Additional Adequate Protection.  This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtor or any other party to contest such request.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Cash Collateral during the Chapter 11 Case.

13.    Cash Management.  The Debtor shall maintain its cash management arrangements in a manner consistent with the Court order approving the Debtor's cash management motion or any further Court order.

14.    Reporting.  The Debtor shall comply with the reporting requirements set forth in the Prepetition Credit Agreement.

15.     Carve Out. Each of the Prepetition Liens, Adequate Protection Liens, and Adequate Protection Claims shall each be subject to and subordinate to payment of the Carve Out.  The Carve Out shall have such priority claims and liens over all assets of the Debtor.

16.     As used in this Interim Order, the "Carve Out" means the sum of (a) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (c) below); (b) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (c) below); (c) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and an official committee of unsecured creditors (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Prepetition Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (d) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1 million incurred after the first business day following delivery by the Prepetition Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (d) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Agent to the Debtor, its lead restructuring counsel, the U.S. Trustee, and counsel to the Committee (if any), which notice may be delivered following the Carve

Out Trigger Notice Date (as defined below), stating that the Post-Carve Out Trigger Notice Cap has been invoked.

17.  <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by the Prepetition Agent to the Debtor with a copy to counsel to the Committee (if any) (the "<u>Carve Out Trigger Notice Date</u>"), the Carve Out Trigger Notice shall constitute a demand to the Debtor to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtor shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "<u>Pre-Carve Out Trigger Notice Reserve</u>") prior to any and all other claims.  On the Carve Out Trigger Notice Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtor shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "<u>Post-Carve Out Trigger Notice Reserve</u>" and, together with the Pre-Carve Out Trigger Notice Reserve, the "<u>Carve Out Reserves</u>") prior to any and all other claims. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (a) through (c) of the definition of Carve Out set forth above (the "<u>Pre-Carve Out Amounts</u>"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Parties, unless such obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtor's creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (d) of the definition of Carve Out set forth above (the "<u>Post-Carve Out Amounts</u>"),

and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Lenders, unless such obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtor's creditors in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the Loan Documents (as defined in the Prepetition Credit Agreement) or this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 14, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 14, prior to making any payments to the Prepetition Agent or any of the Debtor's creditors, as applicable. Notwithstanding anything to the contrary in the Loan Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the Prepetition Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtor until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Prepetition Agent for application in accordance with the Loan Documents. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtor from the Carve Out Reserves shall not constitute loans under the Prepetition Credit Agreement or increase or reduce the obligations under the Loan Documents, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtor. For the avoidance of doubt and

notwithstanding anything to the contrary in this Interim Order or in the Loan Documents, the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the Loan Documents.

18.     <u>Payment of Allowed Professional Fees Prior to the Carve Out Trigger Notice Date</u>.  Any payment or reimbursement made prior to the occurrence of the Carve Out Trigger Notice Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

19.     <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Case or any successor case(s) under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

20.     <u>Payment of Carve Out On or After the Carve Out Trigger Notice Date</u>.  Any payment or reimbursement made on or after the occurrence of the Carve Out Trigger Notice Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

21.     <u>No Third-Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

22.     <u>Section 507(b) Reservation</u>.  Subject only to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the

adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their interests in Cash Collateral, respectively, during the Chapter 11 Case. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties, respectively, against any Diminution in Value, as applicable, of their respective interests in the Cash Collateral.

23. <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the Prepetition Agent or the Prepetition Secured Parties to exercise rights and remedies under this Interim Order or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

24. <u>Perfection of the Adequate Protection Liens</u>. With respect to the Adequate Protection Liens, the Prepetition Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments against the Debtor in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder. Subject to paragraph 28 of this Interim Order, whether the Prepetition Agent shall (at the direction of the applicable required lenders) choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments against the Debtor, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination. If the Prepetition Agent (at the direction of the applicable required lenders) determines to file or execute any financing statements, agreements, notice of liens, or similar instruments against the Debtor, the Debtor shall cooperate and assist in any such execution and/or filings as reasonably requested by the Prepetition Agent (at the direction of the applicable

required lenders), and the automatic stay shall be modified solely to allow such filings as provided for in this Interim Order.

25.     A certified copy of this Interim Order may (at the direction of the applicable required lenders) be filed with or recorded in filing or recording offices by the Prepetition Agent in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording; *provided*, *however*, that notwithstanding the date of any such filing, the date of such perfection shall be the date of entry of this Interim Order.

26.     <u>Marshaling</u>.  Subject to entry of the Final Order, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Adequate Protection Collateral.

27.     <u>Survival of Interim Order</u>.  The provisions of this Interim Order, including all findings herein, shall be binding upon and inure to the benefit of all parties in interest in the Chapter 11 Case, including the Prepetition Secured Parties, the Debtor, any official committee appointed in the Chapter 11 Case, and their respective successors and assigns, including any chapter 11 trustee appointed during the Chapter 11 Case or upon a conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Chapter 11 Case to chapter 7, dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise, or confirming or consummating any plan of reorganization.

28.     <u>Challenge Period</u>.  Subject to the Challenge Period (as defined herein), the stipulations, admissions, waivers, and releases contained in this Interim Order, including the Debtor's Stipulations, shall be binding upon the Debtor, its estate, and any of its respective

successors in all circumstances and for all purposes , and the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date; provided, however, that the Debtor's stipulations, admissions, agreements, releases, and waivers contained in this Interim Order shall not apply to a chapter 7 or chapter 11 trustee until the Challenge Period Termination Date (defined below).  The stipulations, admissions, and waivers contained in this Interim Order, including the Debtor's Stipulations, shall be binding upon all other parties in interest, including any Committee and any other person acting on behalf of the Debtor's estate, unless and to the extent that a party in interest with proper standing granted by order of the Court, has timely and properly filed an adversary proceeding or contested matter under the Bankruptcy Rules (a) seeking to avoid, object to, or otherwise challenge the findings or the Debtor's Stipulations, including regarding:  (i) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of any of the Prepetition Secured Parties; (ii) the validity, enforceability, allowability, priority, secured status, or amount of the Obligations (as defined in the Prepetition Credit Agreement); (iii) asserting or prosecuting any so-called "lender liability" claims, avoidance actions, or any other claim, counter claim, cause of action, objection, contest or defense, of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable law, or otherwise, against any of the Prepetition Secured Parties or their respective representatives (any such claim, a "Challenge") and (b) in which the Court enters a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed Challenge.  A Challenge must be filed on or prior to 75 days following entry of this Interim Order (the "Challenge Period" and the date of expiration of the Challenge Period, the "Challenge Period Termination Date").  If this Chapter 11 Case converts to chapter 7, or if a chapter 11 trustee is appointed, prior to the Challenge Period Termination Date, the Challenge Period Termination Date

shall be extended for the Chapter 7 or Chapter 11 trustee to 14 days after their appointment. If this Chapter 11 Case converts to chapter 7 following the commencement of a timely Challenge by a Committee appointed in the Chapter 11 Case, then the chapter 7 trustee may continue such Challenge in lieu of, and as successor to, the Committee. Upon the occurrence of the Challenge Period Termination Date without the filing of a Challenge (or if any such Challenge is withdrawn or filed and overruled): (w) any and all such Challenges by any party (including the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in this Chapter 11 Case, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any successor case) shall be deemed to be forever barred; (x) the Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Debtor's Chapter 11 Case and any successor case; (y) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected liens and security interests, not subject to recharacterization, subordination, or avoidance; and (z) all of the Debtor's stipulations and admissions contained in this Interim Order, including the Debtor's Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Secured Parties' claims, liens, and interests contained in this Interim Order shall be of full force and effect and forever binding upon the Debtor, the Debtor's estate, and all creditors, interest holders, and other parties in interest in this Chapter 11 Case and any successor case. Furthermore, if any such Challenge is timely and properly filed under the Bankruptcy Rules then (a) any claim or action that is not brought shall forever be barred and (b) the stipulations and admissions contained in this Interim Order, including the Debtor's Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the

extent that such stipulations and admissions were expressly challenged in such Challenge prior to

the Challenge Period Termination Date (and solely as to the plaintiff party that timely filed such

Challenge and not, for the avoidance of doubt, any other party in interest). Nothing in this Interim

Order vests or confers on any person (as defined in section 101 of the Bankruptcy Code), including

any Committee appointed in the Chapter 11 Case, standing or authority to pursue any cause of

action belonging to the Debtor or its estates, including any challenges (including a Challenge) with

respect to the Prepetition Liens and the Obligations, and a separate order of the Court conferring

such standing on any Committee or other party in interest shall be a prerequisite for the prosecution

of a Challenge by such Committee or such other party in interest; *provided*, *however*, that nothing

herein prohibits the Prepetition Secured Parties from contesting any request to obtain standing on

any other grounds permitted by applicable law.

29.     Proofs of Claim.  Neither the Prepetition Agent nor the Prepetition Secured Parties

will be required to file proofs of claim in the Chapter 11 Case, and the Debtor's Stipulations shall

be deemed to constitute a timely filed proof of claim against the Debtor.

30.     Inspection Rights.  In addition to, and without limiting, whatever rights to access

the Prepetition Secured Parties have under the Prepetition Credit Agreement, upon reasonable prior

written notice (email being sufficient) and during normal business hours, the Debtor shall permit

representatives, agents, an employees of the Prepetition Secured Parties to (a) have reasonable

access to and inspect and copy the Debtor's books and records, including all records and files of

the Debtor pertaining to the Prepetition Collateral and the Adequate Protection Collateral, (b) have

reasonable access to and inspect the Debtor's properties, and (c) discuss the Debtor's affairs,

finances, and condition with the Debtor's officers and financial advisors.

31.    <u>Final Hearing</u>.  The Final Hearing on the Motion will be held on **March 6, 2024, at 3:00 p.m., prevailing Eastern Time**.  Any objections or responses to entry of the Final Order shall be filed on or before **4:00 p.m., prevailing Eastern Time, on February 28,  2024**, and shall be served on:  (a) proposed counsel to the Debtor (i) Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn:  Benjamin I. Finestone and Brian Holzman and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N King St, Wilmington, DE 19801, Attn:  Robert Brady and Kenneth Enos; (b) counsel to the Prepetition Agent, (i) Kirkland & Ellis LLP, 300 N La Salle Dr., Chicago, IL 60654, Attn:  Patrick J. Nash, P.C., and 601 Lexington Ave., New York, NY 10022, Attn:  Brian Schartz, P.C., and Andrew Townsell, (ii) Pachulski Stang Ziehl & Jones, 919 N Market St # 1700, Wilmington, DE 19801, Attn:  Laura Davis Jones and Peter J. Keane, and (iii) Reed Smith, 599 Lexington Avenue, New York, NY, 10022, Attn: David Pisciotta and Nicholas Vislocky; and (c) counsel to the Prepetition Secured Lenders (i) Cahill Gordon &Reindel LLP, 32 Old Slip, New York, NY 10005, Attn:  Joel Moss and Jordan Wishnew and (ii) Cole Schotz, 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn:  G. David Dean.

32.    <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon entry of this Interim Order.

33.    Bankruptcy Rule 6003(b) has been satisfied.

34.    The requirements of Bankruptcy Rule 6004(a) are waived or are inapplicable due to Bankruptcy Rules 4001(b)(2) and (c)(2).

35.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon entry of this Interim Order.

36.     The Debtor is authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

37.     <u>Headings</u>.   All paragraph headings used in this Interim Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

38.     <u>Retention of Jurisdiction</u>.   The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

**Dated: February 8th, 2024**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

31249635.2