## Exhibit C

**(October 3, 2023 Hearing Transcript)**

**In the Matter Of:**

GLAS TRUST vs CAMSHAFT CAPITAL FUND

2023-022640-CA-01

---

**HEARING**

*October 03, 2023*

---



800.211.DEPO (3376)
EsquireSolutions.com

1   IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT,
    IN AND FOR MIAMI-DADE COUNTY, FLORIDA
2
    CASE NO.:  2023-022640-CA-01
3

4    GLAS TRUST COMPANY,          )
     LLC,                         )
5                                 )
              Plaintiff,          )
6                                 )
     vs.                          )
7                                 )
     CAMSHAFT CAPITAL FUND,       )
8    LP, et. al.,                 )
                                  )
9              Defendants.        )
    _____/
10

11

12                   Dade County Courthouse
                     73 West Flagler Street
13                   Miami, Florida 33130
                       October 3, 2023
14                   4:15 p.m. 4:50 p.m.

15

16

        The above-entitled case came on for hearing via
17   Zoom platform, before the Honorable THOMAS REBULL,
     Circuit Judge, pursuant to notice.
18

19

20                   _____

21                      PROCEEDINGS
                     _____

22

23

24

25



```
 1   APPEARANCES:

 2

 3   ON BEHALF OF THE PLAINTIFF:

 4           LEON COSGROVE, LLP
             255 Alhambra Circle
 5           Suite 800
             Coral Gables, Florida 33134
 6             BY:  MARCOS JIMENEZ, ESQUIRE
                    mjimenez@leoncosgrove.com
 7                  DIEGO PEREZ ARA, ESQUIRE
                    ANDREW D. ZARON, ESQUIRE
 8

 9   ON BEHALF OF THE DEFENDANT:

10           HOGAN LOVELLS US, LLP
             600 Brickell Avenue
11           Suite 2700
             Miami, FL 33131
12             BY:  DAVID B. MASSEY, ESQUIRE
                    david.massey@hoganlovells.com
13
             KIRKLAND & ELLIS, LLP
14           Three Brickell City Centre
             98 S.E. Seventh Street
15           Suite 700
             Miami, FL 33131
16             BY:  RAVI SUBRAMANIAN SHANKAR, ESQUIRE
                    Ravi.Shankar@kirkland.com
17                  CHRISTINE SHANG, ESQUIRE
                    Christine.Shang@kirkland.com
18

19   ALSO PRESENT:

20           WILL O'LEARY
             UZO DIKE
21           B. SCHARTZ

22

23

24

25
```



1   Thereupon, the following proceedings were had:

2          THE COURT:  Good afternoon.

3          We're here on Glas Trust Company vs. Camshaft

4   Capital Fund and others.

5          If you would like the transcript to reflect

6   your appearance, please put your name in the chat,

7   including who you represent, maybe what firm you're

8   with.

9          We're here on the plaintiff's emergency motion

10   to compel and the defendant's two motions, to vacate

11   ex parte order and to proceed on ordinary schedule,

12   etc.

13          As I set forth in my order, I'm going to give

14   each side equal time, 45 minutes.  I will hear first

15   from the defendants, and then I will hear from the

16   plaintiff.

17          All right.  So who's taking the lead on behalf

18   of the defendants?

19          MR. MASSEY:  Judge, it's David Massey, from

20   Hogan Lovells, on behalf of the Defendants.

21          How are you?

22          THE COURT:  I'm well.

23          Thank you.

24          MR. MASSEY:  Judge, I know you have seen the

25   papers.  Our position is that the ex parte request



1   was not properly handled.  I think we would go so

2   far as to say it was botched badly.

3        You've seen our reasons for that.  It's based

4   on the failure to disclose abundance of facts, that

5   I think any lawyer or any judge would find to be

6   critically important.

7        And I don't the want to take up the Court's

8   time rehashing those in detail.  I know you know

9   what they are, but some of the biggest ones,

10  certainly are the absence of providing the credit

11  agreements.

12       Plaintiffs, I think, have now filed four or

13  five documents replete with exhibits, and your Honor

14  still doesn't have the credit agreement.  The credit

15  agreement is the defining document.

16       The complaint is only like 95 paragraphs long.

17  It's not a tome.

18       THE COURT:  Go ahead, Mr. Massey.

19       MR. MASSEY:  Thank you, Judge.

20       We did sort of an informal inventory, and I

21  think 35 or 40 of the paragraphs refer to the credit

22  agreement, and everything that flows from credit

23  agreement, relates to the unnamed lenders dealings

24  with Byju.

25       So, fine, but your Honor should have the credit



 1  agreement at the very least.  It's no different than

 2  Florida Rule of Civil Procedure 1.130, which

 3  requires, in a breach of contract case, that the

 4  contract be attached to the complaint.

 5      Why?

 6      Because it gives the opportunity to the Court,

 7  No. 1, to know what's going on, and No. 2, to see if

 8  the allegations of the complaint are repugnant to

 9  the contractural provisions, which, as your Honor

10  knows, they often are.

11      That warrants dismissal, Judge.  Cases are

12  dismissed all the time for not attaching the

13  operative agreement.

14      And even though this is not a breach of

15  contract case under 1.130, the principle is exactly

16  the same, your Honor needs to see the credit

17  agreements.  And if you can't see it, you should

18  dismiss the case sua sponte.  So that's No. 1.

19      No. 2, this notion that counsel, in their own

20  words, made a reasoned decision not to advise

21  Camshaft's lawyers, we think is unfortunately -- and

22  I don't want to be (unintelligible), but it's

23  outrageous to not pick up the phone and say, hey,

24  this is what we intend to do, you're entitled to an

25  even playing field, show up, if you want to or not.



1        But to say that they made a recent decision to
2   exclude us, explains why they didn't tell us.  It
3   does not explain why they didn't tell you, why they
4   didn't tell us.  And they don't bother to try and
5   explain that, because there is no explanation for
6   that.
7        So that's obviously about the biggest problem
8   you can encounter, in an ex parte proceeding, is a
9   failure to disclose that you needed a lawyer's word,
10  didn't tell them, and then didn't tell the judge
11  that you didn't tell them.
12       The issue about the other allegations, you've
13  read about it, Byju sued Glas of New York.  Glas has
14  not sought any discovery in that case, to my
15  knowledge.
16       There was a Delaware litigation.  It's
17  mentioned in the complaint, but not in the ex parte
18  motion.
19       I don't know what was discussed at the hearing,
20  because obviously, I wasn't there, but there have
21  been orders on this same discovery.
22       Whatever the rulings were and however they were
23  requested, that's highly relevant.  And to not
24  mention that and the specific rulings in the case
25  and how they relate to what's being requested here,



1   is a huge -- let's call it an oversight.

2        The fact that Glas and these unnamed lenders

3   came to Florida and sought emergency relief for

4   discovery, on a number of days notice, when they

5   have been sitting on Camshaft's identity for months,

6   is something that should have been disclosed.

7        Now, the only explanation we got for that is

8   that there were 200 pages of bank records.

9        Well, I can tell you, Judge, if you have $100

10  million transactions that you're looking for, anyone

11  could do that in half a day.

12       And if you gave them a day, that would be

13  generous.

14       So that's fine.  They got the records.  They

15  knew who Camshaft was.  They continued litigating in

16  Delaware, didn't get what they wanted, sat on their

17  hands, for a couple months, and then came here ex

18  parte, made the recent decision not to tell anybody,

19  including you, just doesn't pass muster.

20       That doesn't even mention the fact that the

21  notice of default that Glas sent to Bejou, was over

22  six months ago.  That was way back in March.  The

23  bank records they got in May.

24       We still don't know who the unnamed lenders

25  are.



1      That's unusual and I would consider that a red

2   flag, that we've got this entity, whose status we

3   don't understand, but for a self-serving one-liner

4   in the complaint, veering down on a half of billion

5   dollars, on behalf of unnamed lenders and we don't

6   have the credit agreement to know what their status

7   is, what their rights are, who their named lenders

8   are.  That to me, Judge, is one of the biggest red

9   flags in the whole case and one of the biggest

10  reasons you need the credit agreement and one of the

11  biggest reasons you haven't been provided with it.

12      And we understand, from other statements under

13  oath in the Delaware case, that some of those other

14  lenders are dealers in distressed debt.  And so this

15  administrative agent is acting on behalf of dealers

16  distressed debt, which is not permitted by the

17  credit agreement.

18      Again, you don't have the credit agreement, so

19  that's a problem.

20      And so, Judge, just to kind of pivot to where

21  we are, obviously, Judge, you're the decisionmaker.

22  I am not -- I think the ship has kind of sailed on

23  the ex parte relief.  It was -- we view the

24  disclosure, the a lack of disclosure, that's

25  problematic, and at the same time, you know, time

1   has passed.

2       They've serve all the entities.  As you know,

3   there were issues with service.  We corrected them.

4       THE COURT:  I was going to ask you about that.

5       There's no longer any service of process

6   issues, every defendant has now made an appearance?

7       MR. MASSEY:  Yes, you probably heard the

8   backstory that the formation lawyer flubbed it, I

9   guess you could say, and put the registered agent

10  legally on a document, but they never actually

11  engaged them.  But that was back in 2020, before any

12  of this happened.  So it was not nefarious.

13      And your Honor, in our motion to vacate the

14  emergency relief, we attached an affidavit under

15  oath from the formation attorney, saying that he

16  flubbed it.  So it is, what it is.

17      As soon as we found that out, we had our debt

18  defendant clients appoint CT Corporation, and they

19  were all served immediately, so.

20      I mean, it was sort of exemplary about how you

21  can get things done, if you pick up the phone and

22  call your opposing lawyers.  Especially, you know, I

23  don't want to toot our own horn, but Hogan Lovells,

24  David Massey and Marty Steinberg, are usually going

25  to handle things appropriately, in the best manner

1  that we can.  So picking up the phone to call, is

2  usually a pretty good start to a solution.

3       And so, you know, let's set the ex parte relief

4  aside for a moment.

5       Where are we?

6       The clock is ticking on discovery deadlines,

7  and we intend to defend the case, as we would defend

8  any case.

9       What does that mean?

10      Obviously, Judge, it means a motion to dismiss.

11  And I'll preview a couple issues for you and these

12  all, again, relate back to the credit agreement,

13  which you must have to litigate this case.

14      If you don't have the credit agreement, you

15  might as well just dismiss it without prejudice and

16  wait for the case to be re-filed, because nothing's

17  going to get done without it.

18      As I previewed a moment ago, we don't believe

19  Glas has standing.  We don't believe the credit

20  agreement will establish that Glas has standing.

21      Standing is obviously the most fundamental

22  threshold issue in any case, that needs to be

23  addressed, and we intend to raise that in a motion

24  to dismiss.

25      We do not believe that the credit agreement has



1  any restrictions on the use of those borrowed funds,

2  that would limit the types of investments Byju made,

3  that are at issue in this case.  We think the credit

4  agreement will bear that out.

5      And if there are no restrictions on this type

6  of investment, then it could not by definition be a

7  fraudulent transfer.  We intend to address that at a

8  motion to dismiss.

9      The credit agreement has an extraordinarily

10  broad New York forum selection clause, but we're

11  litigating in Florida.  We intend to raise that

12  likely in a motion to transfer, based on improper

13  venue.

14      The credit agreement has a very broad New York

15  choice of law provision.  That's a key issue in this

16  case, because the only counts in the complaint, are

17  Florida statutory counts.  Well, if you have a very

18  broad New York choice of law provision, obviously

19  you can't sue under Florida law, especially Florida

20  statutory law.  It's obviously a key motion to

21  dismiss issue.

22      All of the Florida statutes that they are suing

23  under, if you look at them, all refer to the debtor,

24  the debtor being the fraudulent transferor.  They

25  don't talk about a fraudulent transferee.  So



1  there's going to be a failure to state a claim issue

2  here, because the statutes don't apply to the

3  underlying conduct that's being alleged.

4      There are other failure to state a claim

5  issues, based on the insufficieny of the pleadings.

6  And any one of these grounds for dismissal,

7  individually or collectively, wouldn't warrant the

8  granting of a motion to stay discovery.  Because the

9  law in Florida is, those motions, although, they are

10  at the discretion of the trial court, are deemed to

11  be granted, if there is a dispositive motion that

12  could dispose of the entire case.

13      Well, standing would depose of the entire case.

14  Choice of law would dispose of the entire case.

15  Improper venue disposes the entire case.  A statute

16  that's unrelated to the alleged conduct, would

17  dispose of the entire case, and you can go down the

18  list.

19      So Judge, the point is we intend to defend the

20  case, as we would defend any case.  And I guess, if

21  we would bring the ex parte motion back into play,

22  there is no reason to grant anyone special relief

23  here.  We'll defend the case as we would defend any

24  case.

25      The playing field should be level.  Your Honor



1   should impose the procedures and timing and

2   guidelines and rules, that would be applied in any

3   complex case.

4       And that sort of makes this for today a little

5   bit of a nothing sandwich, if all we're going to do

6   is continue to litigate the case, as it ought to be

7   litigated under the rules, and that's all we're

8   asking for.  Really, we don't have any other

9   affirmative relief, other than that, Judge.

10      And we don't want to overplay our hands here,

11  but you know, we do think that there have been some

12  serious mistakes made.  I think it's fair to address

13  those.

14      I think we had asked for attorney's fees in our

15  motion to vacate.  I think that request, under these

16  circumstances, should be certainly considered and

17  that motion is pending.  And your Honor, can

18  obviously deal with it, you know, however your Honor

19  believes is proper.

20      I think, if there is one other small order of

21  business, I think you saw a sur-reply filed today.

22  Again, we're not obsessing over it.  It is, what it

23  is.  Obviously, I think it's important to follow the

24  rules.  I find that litigants early on don't play by

25  the rules, it ends up being a problem later in the



1  case.

2      So in abundance of caution, we move to strike

3  that sur-reply, which was filed without leave of the

4  Court, and that may help in nipping those types of

5  issues in the bud.

6      So Judge, that's kind of our position, and we

7  don't need to take up the remainder of our time,

8  unless your Honor would like to hear more from us,

9  after our colleague's presentation.

10     THE COURT:  Okay.  Thank you very much.

11     Mr. Jimenez.

12     Hold on.  You've got to un-mute yourself.

13     MR. JIMENEZ:  Yes, Judge, I didn't want to make

14 any noise.

15     Can you hear me okay?

16     THE COURT:  Yes.

17     MR. JIMENEZ:  Sorry, my voice is a little

18 horse.

19     I am hear today with my partners, Andy Zaron

20 and Diego Perez Ara, from Leon Cosgrove Jimenez,

21 along as well, my colleague Ravi Shankar -- I hope

22 I'm pronouncing his name correctly -- from Kirkland

23 and Ellis, and some others are on as well.

24     Let me start by saying this, Mr. Massey made a

25 number of completely incorrect statements, but to



1   use his words, the biggest red flag, is that he did

2   not mention the biggest red flag and the biggest

3   problem in this case and why we filed this action

4   and why we seek and we sought emergency relief, in

5   the way we did.

6       The borrower admitted that they had transferred

7   half a billion dollars on purpose, to hide money

8   from the lenders, and they transferred it to

9   Mr. Massey's client.

10      Mr. Massey said, during his presentation, that

11  we did not mention the Delaware litigation in the

12  motion, but we did in the complaint.  That's

13  completely wrong.

14      I'm reading from page 3 of the motion, and what

15  we said in that motion -- and we did not have a

16  hearing.  The Court granted our motion without a

17  hearing.

18      In the motion, we said that the founder of the

19  borrower said, the money is some place the lenders

20  will never find.

21      Days later, in earlier litigation filed in

22  Delaware, borrower's counsel admitted in open court

23  that the borrower had moved the funds, to remove

24  them from the reach of the lenders, based on fear of

25  the lenders acting expeditiously.  That's what this



1  case is about and that's what we presented in our

2  motion and that's what we presented in our

3  complaint.

4       You have a questionable -- to use a charitable

5  word -- hedge fund that is founded by a 20-year old

6  or 23-year old, with essentially no clients.  And

7  they get half a billion dollars in transfers, from a

8  borrower who admits that openly that it's hiding

9  funds from the lenders.

10       This is a borrower, a hedge fund, that has the

11  claims that -- they appointed an incorrect

12  registered agent in Delaware, that permits two

13  Florida affiliates had P.O. Boxes, which is contrary

14  to Florida law.  And that's why we moved for ex

15  parte relief, because we anticipated that we would

16  have problems serving them, and we did.

17       After we filed the complaint, they ran around

18  and they changed all their registers agents, to show

19  that these are not legitimate entities, these are

20  companies that are working in concert with the

21  borrower, to hide money from the lenders.

22       To address some of the other points, your

23  Honor, the credit agreement is not part of our case.

24  It may be something they want to raise as some

25  defense, but our complaint is simply for fraudulent



1  transfer.  That's all it is under Florida law.

2      We are not suing on the credit agreement.  We

3  are suing the transferee for receiving half a

4  million dollars or half a billion dollars,

5  $533 million in funds, that the borrower is actively

6  hiding from the lenders admittedly.

7      And to address the attacks on our firm and the

8  adjectives that were used, like botched and in their

9  papers, lack of candor, you know, I don't want to

10 play tit for tat.  But I will say this, what

11 happened in the Delaware litigation, is not an

12 unfavorable fact for us.  It's the opposite.  It's a

13 favorable fact, which is why counsel for Camshaft

14 misrepresented, in their opposition that they filed

15 last night, that the exact same issues are involved

16 in that case.

17     Well, that's completely the opposite of what

18 its client, the borrower, argued in the Delaware

19 case, and the court --

20     Judge, you can read their opposition in

21 Delaware and you can read the court's ruling.  The

22 Delaware case was a narrow proceeding to determine

23 whether or not an individual, that had been

24 appointed by the lenders, was the proper officer and

25 director.  It's a Section 225 proceeding under



1   Delaware law.

2       And they pestiferously opposed discovery about

3   the transfers, which by the way, we only learned

4   when the borrower's CEO openly bragged about it and

5   said, hey, we're hiding this money from you.

6       But they basically said, no, you can't go into

7   that issue, because -- or those transfers, because

8   that's not consistent with the issue in Delaware,

9   which is whether or not this individual is properly

10  the officer and director.

11      And the court -- they cited case law in

12  Delaware and the court agreed.

13      The other thing that you haven't been told, is

14  that we didn't find out about Camshaft until after

15  that ruling in Delaware.

16      And you know, they claim we had the bank

17  records back in May.  That's not true.  We can get

18  into that, if the Court wants, but we had account

19  numbers in May.

20      Our agent -- well, they say he's our agent, but

21  he's the officer and director of the borrower now,

22  appointed by us, he did not receive the bank

23  statements until July, and then requested investment

24  account statements from JPMorgan, which was not

25  received until August.



1       And it wasn't until late August, that we put

2   two and two together and figured out that more than

3   half the billion dollars had been transferred to

4   what I would consider, a fly-by-night hedge fund in

5   Florida, with, you know, incorrect registered

6   agents.

7       And just shortly thereafter is when we

8   sought -- we filed our complaint.  We sought

9   emergency relief.  We sought very limited relief.

10  We just want expedited discovery.

11      What you've heard today is a recitation of all

12  the reasons why you should not allow any discovery

13  in this case, and that's the point.  That's what we

14  anticipated.  That's what they're all about.

15  They're all about the hiding the ball and hiding

16  where the money went.

17      And we have properly filed fraudulent transfer

18  actions.  We have sought discovery about them, and

19  the Court should stick to the schedule that it

20  originally set in this case.

21      They've had three weeks.  It's not complicated.

22  We did not serve many discovery requests.  They were

23  very limited, very narrow.  We just want to know

24  where the money went and where the money is now and

25  Camshaft knows.  Camshaft has that information, and



1   just as quickly as they claim we can discovery the

2   information, they can produce the records.

3       So it's not complicated.  They could file all

4   the motions to dismiss they want, but they're not

5   entitled -- they haven't moved to stay discovery.

6   They haven't moved to dismiss.  They're just

7   previewing for you all the reasons why they want to

8   continue to try to hide the ball here, and it's as

9   simple as that.

10      And that's what we would ask, that the Court

11  stick to the original order and impose a deadline

12  for them to actually produce discovery, not file a

13  million objections and move to stay discovery and do

14  all the things that they are previewing for you

15  today.

16      THE COURT:  Okay.  Mr. Massey, did you want to

17  say anything?

18      MR. MASSEY:  Judge, I'll keep it to 60 seconds

19  or less.

20      With respect, what I took away from my

21  colleague's presentation, is he has it on good

22  authority that this young man is too young and vague

23  and unproven suspicions, ought to be the reason my

24  client is not entitled to defend this case.

25      THE COURT:  Well, let me play devil's advocate



1   here with you for a second.

2       Leaving aside -- I mean, even if were to -- and

3   I'm playing devil's advocate here and your response

4   to this.

5       Even if I were to vacate the ex parte order,

6   for the reasons that you set forth and now we had a

7   full-blown hearing on their motion to, Judge,

8   shorten the time for them to tell us -- to produce

9   evidence of where the money is, okay, how does that

10  harm any of your arguments regarding the merits of

11  the case?

12      You know, I understand your contention that I'm

13  assuming you're going to argue that the choice of

14  law and venue provision and the credit agreement,

15  are broad enough to encompass these fraudulent

16  transfer agreements or because the complaint in this

17  action references the credit agreement, you know,

18  some kind of argument like that.

19      But assuming that all to be true -- and as I

20  think you've pointed out, the trial courts have

21  discretion to decide whether to stay discovery,

22  while those matters are pending, and I also

23  recognize that the devil's in the details, you made

24  an argument about, you know, whether discovery is

25  narrow or not narrow and you know, you can quibble

1    over those issues.

2         But I guess it's a longwinded way of me asking

3    why should I not order the defendants to produce

4    enough -- even assuming what you're saying is true,

5    that it's very broad and we can have another

6    hearing, where we examine the language of the

7    request and we can engage in that exercise, where

8    you produce, on a rolling basis, some evidence of

9    where the money is, if it's in possession, custody

10   or control of the defendants -- why is that harmless

11   to all of the other issues, that you intend to argue

12   on the merits, including standing and everything

13   else?

14        MR. MASSEY:  Sure, Judge, I guess I'll needle

15   your hypothetical, if I may?

16        THE COURT:  Sure, I'm inviting you to.

17        MR. MASSEY:  The only motion that was standing,

18   was an ex parte motion to shorten the deadline.

19   That has been ruled on, and that means the order has

20   been resolved.

21        Now, it's up to you about whether you want to

22   vacate the order, but whether you do or not, there's

23   no motion pending to do anything.

24        So with aside, to more directly address your

25   hypothetical --



1    THE COURT:  Well, I mean, I don't disagree with

2  you that I would have preferred to know about some

3  things.  But I want to elevate substance over form,

4  because if I said to Mr. Jimenez, file a motion to

5  shorten the time tomorrow or the next day, we'd

6  probably have a motion to shorten the time and we'd

7  have a hearing and we'd be back here.

8    And I'm trying to elevate substance over form.

9    MR. MASSEY:  I understand that, and if that

10  were to happen, we would ask to stay on the normal

11  briefing schedule and by the time --

12    THE COURT:  Which is what you've asked for in

13  another motion.

14    MR. MASSEY:  That was fully briefed.

15    Since I will not be shortening it, there is no

16  deadline, based on the service date would have

17  passed, because that time is already ticking, right?

18    It's a difference of let's say one week or two

19  weeks.  I think we have two weeks left to respond to

20  the discovery requests, probably can get 30 days for

21  a reason.  Because it takes time to work with your

22  clients and work through your clients, to get

23  discovery objections and responses formulated.

24    We've been chasing our tails, for the last two

25  weeks, dealing with this hearing, and that's fine.



1       But to shorten it even further, especially

2    under circumstances like these and that the

3    difference a week or two weeks, I think it gives at

4    least our side the impression that the playing field

5    is not even, and we're not sure why.

6       We don't see an emergency, and it's up to the

7    Court to decide whether there is one or not, but --

8       THE COURT:  Well, I mean --

9       MR. MASSEY:  -- but the point -- the most

10   important point I wanted to make, Judge --

11      THE COURT:  Well, let me just say this, okay, I

12   get other ex parte motions.

13      And if this one had asked for it, I would have

14   denied it, where they say, Judge, we're requesting

15   an injunction to order them to freeze money and not

16   transfer money.

17      I would have said absolutely not, because the

18   law is clear, unless it's a constructive trust, it's

19   not irreparable harm and it's not arrest and it's

20   not that type of a case.  This is a money damages

21   case.  Okay.  I would have denied it.

22      But because the request was -- and again, I'm

23   not in any way minimizing the issues that you point

24   out in your motion to vacate.  I'm not.

25      But because ultimately what we're talking about



1    is produce documents and information that tell us

2    where the money is, I think it's materially

3    different than an ex parte order that was entered,

4    ordering your clients to freeze the money and not do

5    anything with the money.

6         Do you understand what I'm saying?

7         MR. MASSEY:  Yes, and I'll respond directly to

8    that, because I think that hits at the core of your

9    question.

10        Our position is that a specious lawsuit, and

11   it's up to you to decide whether there's enough

12   smoke to draw that conclusion, should not be used as

13   a vehicle to obtain discovery.

14        And if there is a missing contract, that it's

15   completely under -- the entire complaint, obvious

16   issues, if that credit agreement has anything to do

17   with this case -- and again, that's a serious

18   question -- venue issues, choice of law issues, how

19   do you prove a fraudulent transfer case, without the

20   fraudulent transferor?

21        First of all, you'd have to have a trial within

22   a trial, to determine if the transfer was

23   fraudulent, and then determine what to do with the

24   transferee.

25        But the transferor, is not even a party to this



1  case, so you've got an indispensable party problem.

2  And so --

3      THE COURT:  Am I understanding it -- and pardon

4  my ignorance, if I missed it -- but am I

5  understanding that this same plaintiff has sued the

6  borrower, in a different proceeding for default,

7  under the credit agreement?

8      MR. MASSEY:  In New York, Byju has sues Glas,

9  and in Delaware, Glas has sued Byju and --

10     THE COURT:  But not for breach of the credit

11  agreement or a default or --

12     MR. MASSEY:  I think the counts are slightly

13  different.  They have to do with tortious

14  interference and ancillary that relate -- ancillary

15  claims related to the same issues.

16     We can get you that complaint, Judge, for you

17  to view it, but --

18     MR. JIMENEZ:  I can answer that question, your

19  Honor.

20     MR. MASSEY:  May I finish, please?

21     I do want to point out that if you go to

22  paragraph 81 of this complaint, it asked for an

23  injunction and a receivership over the Byju assets.

24  So I don't know how we're going to get anywhere

25  towards that, without Byju in the case.



1      But the point is, Judge -- and I'll wrap

2   here -- a specious lawsuit should not be a vehicle

3   to stay discovery.  And if there's enough smoke,

4   then it's up to the Court to decide whether to

5   figure out whether it is, in fact, specious, before

6   allowing that type of a vehicle, to be a vehicle to

7   obtain discovery.

8      That's my answer to your question, Judge.

9      THE COURT:  Okay.  But I want to make sure that

10  I understood your answer.

11     So there is not a proceeding pending somewhere

12  where Glas is directly suing the borrower, for

13  breach of the credit agreement, and demanding

14  repayment of loaned moneys or forwarded moneys?

15     That proceeding is not existing anymore?

16     MR. MASSEY:  My understanding, Judge, is that

17  Byju is suing Glas, and their related claims have to

18  do with the same loan, but the claims are different.

19     So I leave it to -- we'd be happen to submit th

20  complaint, Judge.  I think we have it and we can --

21     THE COURT:  Well, I mean, I was just asking

22  what your take on it is, and I think you're saying

23  no, but I'm not sure.

24     MR. MASSEY:  Honestly, Judge, I haven't studied

25  that litigation.



1      THE COURT:  Well, because my next question

2  would have been, if they are suing the borrower, for

3  breach of the credit agreement, then, in that same

4  action, arguably they could sue the alleged

5  fraudulent transferees, right, which is sort of your

6  point?

7      MR. MASSEY:  Well, there's no reason that they

8  couldn't ask for this discovery in New York.  That's

9  where the credit agreement, choice of law and

10  selection clause is.

11      But my understand is in that case, Glas has not

12  sought any discovery and I don't know why.  I

13  couldn't answer that.

14      MR. JIMENEZ:  Can I -- you want me to --

15      THE COURT:  Yes, go ahead.

16      MR. JIMENEZ:  Yes, your Honor.

17      And I'm sorry, because I moved maybe a little

18  too quickly through the background, during my

19  presentation.  The Delaware action, as I mentioned

20  before, was the first and only action filed by Glas.

21      It was filed in early May, and it was five days

22  after, that the borrower CEO bragged.  And we've got

23  a copy of the note that substantiates it, that he

24  was hiding the $533 million of the lenders.  That

25  was a narrow 225 proceeding --



1       THE COURT:  But can you answer my question

2  then?

3       Is there --

4       MR. JIMENEZ:  Yes.

5       THE COURT:  Is there a case where Glas is

6  suing, as a representative of the lenders, for

7  default?

8       MR. JIMENEZ:  That's the only case -- I thought

9  I said that's the only case that Glas has filed.

10       THE COURT:  In that Delaware case, Glas --

11       MR. JIMENEZ:  No.

12       THE COURT:  -- is demanding repayment of the

13  fund loan?

14       MR. JIMENEZ:  No, it's a narrow proceeding

15  under the Delaware code.

16       THE COURT:  So my next question is, why not?

17       MR. JIMENEZ:  Because it has not decided to

18  exercise that remedy yet.

19       What happened is, 30 days later, Byju's filed

20  in New York a case, claiming that there was not a

21  default, and we are in the process of moving to

22  dismiss.  We don't believe any discovery is

23  warranted in that case of any kind.  So that case is

24  going to be a subject of Glas's motion to dismiss.

25       The only case that Glas has filed, where it is



1   the plaintiff, is this case in Florida against --

2        THE COURT:  What I'm confused about is that

3   Glas asserts, in its papers, that the borrower --

4   that it has accelerated the loan, that the --

5        MR. JIMENEZ:  Yes.

6        THE COURT:  -- borrower has defaulted under the

7   loan, but yet hasn't sued the borrower for -- I

8   don't understand that.

9        MR. JIMENEZ:  Well, it did sue the borrower to

10  take control, through the 225 proceeding in

11  Delaware.  And it is defending in New York, but it

12  is seeking to recover the money that was

13  fraudulently transferred to Camshaft, here in

14  Florida, against the transferee, and that's a proper

15  action.  You can bring a fraudulent transfer against

16  a transferee.  You don't need the transferor.

17       They can try to make that argument, but we have

18  set forth clearly in our papers, that this was a

19  fraudulent transfer.

20       They've admitted -- they've admitted that this

21  money was fraudulent transferred away from the

22  borrower, to these Camshaft defendants, in order to

23  remove the money from the original lenders.  So we

24  are seeking to recover that money here in this case,

25  against these defendants.



1        THE COURT:  All right.  Thank you all very

2   much.

3        Okay.  I'm going to respectfully grant the

4   defendant's motion to vacate the ex parte order.

5   I'm going to grant the defendant's motion on

6   ordinary schedule and respectfully deny the

7   plaintiff's motion, emergency motion to compel.

8        All right.  So each side, each movant can

9   prepare a proposed order memorializing those

10   rulings.

11        All right.  Thank you all so much for making

12   yourselves available on such short notice.

13        Okay.  Thank you.

14        MR. JIMENEZ:  Thank you.

15        (Proceedings adjourned 4:50 p.m.)

16        _____

17            _____

18

19

20

21

22

23

24

25



1                         CERTIFICATE

2
     STATE OF FLORIDA
3    COUNTY OF MIAMI-DADE

4              I, JANE D'ONOFRIO, a Court Reporter, do

5    hereby certify that the case of GLAS TRUST COMPANY,

6    LLC, is the Plaintiff, and CAMSHAFT CAPITAL FUND, LP,

7    et. al., are the Defendants, pending in the Circuit

8    Court of the 11th Judicial Circuit, in and for

9    Miami-Dade County, Florida, Case No.

10   2023-022640-CA-01, was heard before The Honorable

11   Thomas Rebull, Circuit Judge, October 3, 2023; that I

12   was authorized to and did report in shorthand the

13   proceedings and evidence in said hearing via Zoom

14   platform, to the best of my ability; and that the

15   foregoing pages, numbered from 1 to 32, inclusive,

16   constitute a true and correct transcription of my

17   shorthand report of the proceedings of said case.

18             IN WITNESS WHEREOF, I have hereunto affixed

19   my hand this 10th day of October, 2023.

20

21                     _____

22                     JANE D'ONOFRIO
                       Notary Public-State of Florida
23                     My Commission No.:  HH 014593
                       Expires:  July 8, 2024

24

25



**$**

**$100**
  7:9

**$533**
  17:5
  28:24

**1**

**1**
  5:7,18

**1.130**
  5:2,15

**2**

**2**
  5:7,19

**20-year**
  16:5

**200**
  7:8

**2020**
  9:11

**225**
  17:25
  28:25
  30:10

**23-year**
  16:6

**3**

**3**
  15:14

**30**
  23:20
  29:19

**35**
  4:21

**4**

**40**
  4:21

**45**
  3:14

**4:50**
  31:15

**6**

**60**
  20:18

**8**

**81**
  26:22

**9**

**95**
  4:16

**A**

**absence**
  4:10

**absolutely**
  24:17

**abundance**
  4:4 14:2

**accelerated**
  30:4

**account**
  18:18,24

**acting**
  8:15
  15:25

**action**
  15:3
  21:17
  28:4,19,
  20 30:15

**actions**
  19:18

**actively**
  17:5

**address**
  11:7
  13:12
  16:22
  17:7
  22:24

**addressed**
  10:23

**adjectives**
  17:8

**adjourned**
  31:15

**administrat
ive**
  8:15

**admits**
  16:8

**admitted**
  15:6,22
  30:20

**admittedly**
  17:6

**advise**
  5:20

**advocate**
  20:25
  21:3

**affidavit**

  9:14

**affiliates**
  16:13

**affirmative**
  13:9

**afternoon**
  3:2

**agent**
  8:15 9:9
  16:12
  18:20

**agents**
  16:18
  19:6

**agreed**
  18:12

**agreement**
  4:14,15,
  22,23
  5:1,13
  8:6,10,
  17,18
  10:12,14,
  20,25
  11:4,9,14
  16:23
  17:2
  21:14,17
  25:16
  26:7,11
  27:13
  28:3,9

**agreements**
  4:11 5:17
  21:16

**ahead**
  4:18
  28:15

**allegations**
  5:8 6:12

**alleged**
  12:3,16

  28:4

**allowing**
  27:6

**ancillary**
  26:14

**Andy**
  14:19

**anticipated**
  16:15
  19:14

**anymore**
  27:15

**appearance**
  3:6 9:6

**applied**
  13:2

**apply**
  12:2

**appoint**
  9:18

**appointed**
  16:11
  17:24
  18:22

**appropriate
ly**
  9:25

**Ara**
  14:20

**arguably**
  28:4

**argue**
  21:13
  22:11

**argued**
  17:18

**argument**
  21:18,24
  30:17



arguments
  21:10

arrest
  24:19

asserts
  30:3

assets
  26:23

assuming
  21:13,19
  22:4

attached
  5:4 9:14

attaching
  5:12

attacks
  17:7

attorney
  9:15

attorney's
  13:14

August
  18:25
  19:1

authority
  20:22

───────────

**B**

───────────

back
  7:22 9:11
  10:12
  12:21
  18:17
  23:7

background
  28:18

backstory
  9:8

badly
  4:2

ball
  19:15
  20:8

bank
  7:8,23
  18:16,22

based
  4:3 11:12
  12:5
  15:24
  23:16

basically
  18:6

basis
  22:8

bear
  11:4

behalf
  3:17,20
  8:5,15

Bejou
  7:21

believes
  13:19

biggest
  4:9 6:7
  8:8,9,11
  15:1,2

billion
  8:4 15:7
  16:7 17:4
  19:3

bit
  13:5

borrowed
  11:1

borrower
  15:6,19,

23 16:8,
10,21
17:5,18
18:21
26:6
27:12
28:2,22
30:3,6,7,
9,22

borrower's
  15:22
  18:4

botched
  4:2 17:8

bother
  6:4

Boxes
  16:13

bragged
  18:4
  28:22

breach
  5:3,14
  26:10
  27:13
  28:3

briefed
  23:14

briefing
  23:11

bring
  12:21
  30:15

broad
  11:10,14,
18 21:15
22:5

bud
  14:5

business
  13:21

Byju
  4:24 6:13
  11:2
  26:8,9,
  23,25
  27:17

Byju's
  29:19

───────────

**C**

───────────

call
  7:1 9:22
  10:1

Camshaft
  3:3 7:15
  17:13
  18:14
  19:25
  30:13,22

Camshaft's
  5:21 7:5

candor
  17:9

Capital
  3:4

case
  5:3,15,18
  6:14,24
  8:9,13
  10:7,8,
  13,16,22
  11:3,16
  12:12,13,
  14,15,17,
  20,23,24
  13:3,6
  14:1 15:3
  16:1,23
  17:16,19,
  22 18:11
  19:13,20
  20:24

21:11
24:20,21
25:17,19
26:1,25
28:11
29:5,8,9,
10,20,23,
25 30:1,
24

Cases
  5:11

caution
  14:2

CEO
  18:4
  28:22

changed
  16:18

charitable
  16:4

chasing
  23:24

chat
  3:6

choice
  11:15,18
  12:14
  21:13
  25:18
  28:9

circumstanc
es
  13:16
  24:2

cited
  18:11

Civil
  5:2

claim
  12:1,4
  18:16



20:1

claiming
  29:20

claims
  16:11
  26:15
  27:17,18

clause
  11:10
  28:10

clear
  24:18

client
  15:9
  17:18
  20:24

clients
  9:18 16:6
  23:22
  25:4

clock
  10:6

code
  29:15

colleague
  14:21

colleague's
  14:9
  20:21

collectivel
y
  12:7

companies
  16:20

Company
  3:3

compel
  3:10 31:7

complaint
  4:16 5:4,

8 6:17
8:4 11:16
15:12
16:3,17,
25 19:8
21:16
25:15
26:16,22
27:20

completely
  14:25
  15:13
  17:17
  25:15

complex
  13:3

complicated
  19:21
  20:3

concert
  16:20

conclusion
  25:12

conduct
  12:3,16

confused
  30:2

considered
  13:16

consistent
  18:8

constructiv
e
  24:18

contention
  21:12

continue
  13:6 20:8

continued
  7:15

contract
  5:3,4,15
  25:14

contractura
l
  5:9

contrary
  16:13

control
  22:10
  30:10

copy
  28:23

core
  25:8

Corporation
  9:18

corrected
  9:3

correctly
  14:22

Cosgrove
  14:20

counsel
  5:19
  15:22
  17:13

counts
  11:16,17
  26:12

couple
  7:17
  10:11

court
  3:2,22
  4:18 5:6
  9:4 12:10
  14:4,10,
  16 15:16,
  22 17:19
  18:11,12,

18 19:19
20:10,16,
25 22:16
23:1,12
24:7,8,11
26:3,10
27:4,9,21
28:1,15
29:1,5,
10,12,16
30:2,6
31:1

court's
  4:7 17:21

courts
  21:20

credit
  4:10,14,
  21,22,25
  5:16 8:6,
  10,17,18
  10:12,14,
  19,25
  11:3,9,14
  16:23
  17:2
  21:14,17
  25:16
  26:7,10
  27:13
  28:3,9

critically
  4:6

CT
  9:18

custody
  22:9

─────────

D

damages
  24:20

date
  23:16

David
  3:19 9:24

day
  7:11,12
  23:5

days
  7:4 15:21
  23:20
  28:21
  29:19

deadline
  20:11
  22:18
  23:16

deadlines
  10:6

deal
  13:18

dealers
  8:14,15

dealing
  23:25

dealings
  4:23

debt
  8:14,16
  9:17

debtor
  11:23,24

decide
  21:21
  24:7
  25:11
  27:4

decided
  29:17

decision
  5:20 6:1



7:18

**decisionmaker**
8:21

**deemed**
12:10

**default**
7:21
26:6,11
29:7,21

**defaulted**
30:6

**defend**
10:7
12:19,20,
23 20:24

**defendant**
9:6,18

**defendant's**
3:10
31:4,5

**defendants**
3:15,18,
20 22:3,
10 30:22,
25

**defending**
30:11

**defense**
16:25

**defining**
4:15

**definition**
11:6

**Delaware**
6:16 7:16
8:13
15:11,22
16:12
17:11,18,
21,22

18:1,8,
12,15
26:9
28:19
29:10,15
30:11

**demanding**
27:13
29:12

**denied**
24:14,21

**deny**
31:6

**depose**
12:13

**detail**
4:8

**details**
21:23

**determine**
17:22
25:22,23

**devil's**
20:25
21:3,23

**Diego**
14:20

**difference**
23:18
24:3

**directly**
22:24
25:7
27:12

**director**
17:25
18:10,21

**disagree**
23:1

**disclose**

4:4 6:9

**disclosed**
7:6

**disclosure**
8:24

**discovery**
6:14,21
7:4 10:6
12:8 18:2
19:10,12,
18,22
20:1,5,
12,13
21:21,24
23:20,23
25:13
27:3,7
28:8,12
29:22

**discretion**
12:10
21:21

**discussed**
6:19

**dismiss**
5:18
10:10,15,
24 11:8,
21 20:4,6
29:22,24

**dismissal**
5:11 12:6

**dismissed**
5:12

**dispose**
12:12,14,
17

**disposes**
12:15

**dispositive**
12:11

**distressed**
8:14,16

**document**
4:15 9:10

**documents**
4:13 25:1

**dollars**
8:5 15:7
16:7 17:4
19:3

**draw**
25:12

───────────

**E**
───────────

**earlier**
15:21

**early**
13:24
28:21

**elevate**
23:3,8

**Ellis**
14:23

**emergency**
3:9 7:3
9:14 15:4
19:9 24:6
31:7

**encompass**
21:15

**encounter**
6:8

**ends**
13:25

**engage**
22:7

**engaged**
9:11

**entered**
25:3

**entire**
12:12,13,
14,15,17
25:15

**entities**
9:2 16:19

**entitled**
5:24
20:5,24

**entity**
8:2

**equal**
3:14

**essentially**
16:6

**establish**
10:20

**evidence**
21:9 22:8

**exact**
17:15

**examine**
22:6

**exclude**
6:2

**exemplary**
9:20

**exercise**
22:7
29:18

**exhibits**
4:13

**existing**
27:15

**expedited**
19:10



**expeditiously**
15:25

**explain**
6:3,5

**explains**
6:2

**explanation**
6:5  7:7

**extraordinarily**
11:9

---

**F**

**fact**
7:2,20
17:12,13
27:5

**facts**
4:4

**failure**
4:4  6:9
12:1,4

**fair**
13:12

**favorable**
17:13

**fear**
15:24

**fees**
13:14

**field**
5:25
12:25
24:4

**figure**
27:5

**figured**
19:2

**file**
20:3,12
23:4

**filed**
4:12
13:21
14:3
15:3,21
16:17
17:14
19:8,17
28:20,21
29:9,19,25

**find**
4:5  13:24
15:20
18:14

**fine**
4:25  7:14
23:25

**finish**
26:20

**firm**
3:7  17:7

**flag**
8:2  15:1,2

**flags**
8:9

**Florida**
5:2  7:3
11:11,17,19,22
12:9
16:13,14
17:1  19:5
30:1,14

**flows**
4:22

**flubbed**
9:8,16

**fly-by-night**
19:4

**follow**
13:23

**form**
23:3,8

**formation**
9:8,15

**formulated**
23:23

**forum**
11:10

**forwarded**
27:14

**found**
9:17

**founded**
16:5

**founder**
15:18

**fraudulent**
11:7,24,25  16:25
19:17
21:15
25:19,20,23  28:5
30:15,19,21

**fraudulently**
30:13

**freeze**
24:15
25:4

**full-blown**
21:7

**fully**
23:14

**fund**
3:4  16:5,10  19:4
29:13

**fundamental**
10:21

**funds**
11:1
15:23
16:9  17:5

---

**G**

**gave**
7:12

**generous**
7:13

**give**
3:13

**Glas**
3:3  6:13
7:2,21
10:19,20
26:8,9
27:12,17
28:11,20
29:5,9,10,25
30:3

**Glas's**
29:24

**good**
3:2  10:2
20:21

**grant**
12:22
31:3,5

**granted**
12:11
15:16

**granting**

12:8

**grounds**
12:6

**guess**
9:9  12:20
22:2,14

**guidelines**
13:2

---

**H**

**half**
7:11  8:4
15:7  16:7
17:3,4
19:3

**handle**
9:25

**handled**
4:1

**hands**
7:17
13:10

**happen**
23:10
27:19

**happened**
9:12
17:11
29:19

**harm**
21:10
24:19

**harmless**
22:10

**hear**
3:14,15
14:8,15,19

**heard**



9:7 19:11

**hearing**
6:19
15:16,17
21:7 22:6
23:7,25

**hedge**
16:5,10
19:4

**hey**
5:23 18:5

**hide**
15:7
16:21
20:8

**hiding**
16:8 17:6
18:5
19:15
28:24

**highly**
6:23

**hits**
25:8

**Hogan**
3:20 9:23

**Hold**
14:12

**Honestly**
27:24

**Honor**
4:13,25
5:9,16
9:13
12:25
13:17,18
14:8
16:23
26:19
28:16

**hope**

14:21

**horn**
9:23

**horse**
14:18

**huge**
7:1

**hypothetica
l**
22:15,25

────────

**I**
────────

**identity**
7:5

**ignorance**
26:4

**immediately**
9:19

**important**
4:6 13:23
24:10

**impose**
13:1
20:11

**impression**
24:4

**improper**
11:12
12:15

**including**
3:7 7:19
22:12

**incorrect**
14:25
16:11
19:5

**indispensab
le**
26:1

**individual**
17:23
18:9

**individuall
y**
12:7

**informal**
4:20

**information**
19:25
20:2 25:1

**injunction**
24:15
26:23

**insufficien
y**
12:5

**intend**
5:24
10:7,23
11:7,11
12:19
22:11

**interferenc
e**
26:14

**inventory**
4:20

**investment**
11:6
18:23

**investments**
11:2

**inviting**
22:16

**involved**
17:15

**irreparable**
24:19

**issue**

6:12
10:22
11:3,15,
21 12:1
18:7,8

**issues**
9:3,6
10:11
12:5 14:5
17:15
22:1,11
24:23
25:16,18
26:15

────────

**J**
────────

**Jimenez**
14:11,13,
17,20
23:4
26:18
28:14,16
29:4,8,
11,14,17
30:5,9
31:14

**JPMORGAN**
18:24

**judge**
3:19,24
4:5,19
5:11 6:10
7:9 8:8,
20,21
10:10
12:19
13:9
14:6,13
17:20
20:18
21:7
22:14
24:10,14

26:16
27:1,8,
16,20,24

**July**
18:23

────────

**K**
────────

**key**
11:15,20

**kind**
8:20,22
14:6
21:18
29:23

**Kirkland**
14:22

**knew**
7:15

**knowledge**
6:15

────────

**L**
────────

**lack**
8:24 17:9

**language**
22:6

**late**
19:1

**law**
11:15,18,
19,20
12:9,14
16:14
17:1
18:1,11
21:14
24:18
25:18
28:9



**lawsuit**
25:10
27:2

**lawyer**
4:5 9:8

**lawyer's**
6:9

**lawyers**
5:21 9:22

**lead**
3:17

**learned**
18:3

**leave**
14:3
27:19

**Leaving**
21:2

**left**
23:19

**legally**
9:10

**legitimate**
16:19

**lenders**
4:23 7:2,
24 8:5,7,
14 15:8,
19,24,25
16:9,21
17:6,24
28:24
29:6
30:23

**Leon**
14:20

**level**
12:25

**limit**
11:2

**limited**
19:9,23

**list**
12:18

**litigants**
13:24

**litigate**
10:13
13:6

**litigated**
13:7

**litigating**
7:15
11:11

**litigation**
6:16
15:11,21
17:11
27:25

**loan**
27:18
29:13
30:4,7

**loaned**
27:14

**long**
4:16

**longer**
9:5

**longwinded**
22:2

**Lovells**
3:20 9:23

─────────────
      **M**
─────────────

**made**
5:20 6:1
7:18 9:6
11:2

**13:12**
14:24
21:23

**make**
14:13
24:10
27:9
30:17

**makes**
13:4

**making**
31:11

**man**
20:22

**manner**
9:25

**March**
7:22

**Marty**
9:24

**Massey**
3:19,24
4:18,19
9:7,24
14:24
15:10
20:16,18
22:14,17
23:9,14
24:9 25:7
26:8,12,
20 27:16,
24 28:7

**Massey's**
15:9

**materially**
25:2

**matters**
21:22

**means**
10:10

**22:19**

**memorializi
ng**
31:9

**mention**
6:24 7:20
15:2,11

**mentioned**
6:17
28:19

**merits**
21:10
22:12

**million**
7:10
17:4,5
20:13
28:24

**minimizing**
24:23

**minutes**
3:14

**misrepresen
ted**
17:14

**missed**
26:4

**missing**
25:14

**mistakes**
13:12

**moment**
10:4,18

**money**
15:7,19
16:21
18:5
19:16,24
21:9 22:9
24:15,16,
20 25:2,

**4,5**
30:12,21,
23,24

**moneys**
27:14

**months**
7:5,17,22

**motion**
3:9 6:18
9:13
10:10,23
11:8,12,
20 12:8,
11,21
13:15,17
15:12,14,
15,16,18
16:2 21:7
22:17,18,
23 23:4,
6,13
24:24
29:24
31:4,5,7

**motions**
3:10 12:9
20:4
24:12

**movant**
31:8

**move**
14:2
20:13

**moved**
15:23
16:14
20:5,6
28:17

**moving**
29:21

**muster**
7:19



## N

named
  8:7

narrow
  17:22
  19:23
  21:25
  28:25
  29:14

needed
  6:9

needle
  22:14

nefarious
  9:12

night
  17:15

nipping
  14:4

noise
  14:14

normal
  23:10

note
  28:23

nothing's
  10:16

notice
  7:4,21
  31:12

notion
  5:19

number
  7:4 14:25

numbers
  18:19

## O

oath
  8:13 9:15

objections
  20:13
  23:23

obsessing
  13:22

obtain
  25:13
  27:7

obvious
  25:15

officer
  17:24
  18:10,21

one-liner
  8:3

open
  15:22

openly
  16:8 18:4

operative
  5:13

opportunity
  5:6

opposed
  18:2

opposing
  9:22

opposite
  17:12,17

opposition
  17:14,20

order
  3:11,13
  13:20
  20:11

21:5
22:3,19,
22 24:15
25:3
30:22
31:4,9

ordering
  25:4

orders
  6:21

ordinary
  3:11 31:6

original
  20:11
  30:23

originally
  19:20

outrageous
  5:23

overplay
  13:10

oversight
  7:1

## P

p.m.
  31:15

P.O.
  16:13

pages
  7:8

papers
  3:25 17:9
  30:3,18

paragraph
  26:22

paragraphs
  4:16,21

pardon
  26:3

part
  16:23

parte
  3:11,25
  6:8,17
  7:18 8:23
  10:3
  12:21
  16:15
  21:5
  22:18
  24:12
  25:3 31:4

partners
  14:19

party
  25:25
  26:1

pass
  7:19

passed
  9:1 23:17

pending
  13:17
  21:22
  22:23
  27:11

Perez
  14:20

permits
  16:12

permitted
  8:16

pestiferous
ly
  18:2

phone
  5:23 9:21
  10:1

pick
  5:23 9:21

picking
  10:1

pivot
  8:20

place
  15:19

plaintiff
  3:16 26:5
  30:1

plaintiff's
  3:9 31:7

Plaintiffs
  4:12

play
  12:21
  13:24
  17:10
  20:25

playing
  5:25
  12:25
  21:3 24:4

pleadings
  12:5

point
  12:19
  19:13
  24:9,10,
  23 26:21
  27:1 28:6

pointed
  21:20

points
  16:22

position
  3:25 14:6
  25:10

possession



22:9

**preferred**
23:2

**prejudice**
10:15

**prepare**
31:9

**presentatio
n**
14:9
15:10
20:21
28:19

**presented**
16:1,2

**pretty**
10:2

**preview**
10:11

**previewed**
10:18

**previewing**
20:7,14

**principle**
5:15

**problem**
6:7 8:19
13:25
15:3 26:1

**problematic**
8:25

**problems**
16:16

**Procedure**
5:2

**procedures**
13:1

**proceed**
3:11

**proceeding**
6:8
17:22,25
26:6
27:11,15
28:25
29:14
30:10

**proceedings**
3:1 31:15

**process**
9:5 29:21

**produce**
20:2,12
21:8
22:3,8
25:1

**pronouncing**
14:22

**proper**
13:19
17:24
30:14

**properly**
4:1 18:9
19:17

**proposed**
31:9

**prove**
25:19

**provided**
8:11

**providing**
4:10

**provision**
11:15,18
21:14

**provisions**
5:9

**purpose**
15:7

**put**
3:6 9:9
19:1

────────────

**Q**

────────────

**question**
25:9,18
26:18
27:8 28:1
29:1,16

**questionabl
e**
16:4

**quibble**
21:25

**quickly**
20:1
28:18

────────────

**R**

────────────

**raise**
10:23
11:11
16:24

**ran**
16:17

**Ravi**
14:21

**re-filed**
10:16

**reach**
15:24

**read**
6:13
17:20,21

**reading**
15:14

**reason**

12:22
20:23
23:21
28:7

**reasoned**
5:20

**reasons**
4:3 8:10,
11 19:12
20:7 21:6

**receive**
18:22

**received**
18:25

**receivershi
p**
26:23

**receiving**
17:3

**recent**
6:1 7:18

**recitation**
19:11

**recognize**
21:23

**records**
7:8,14,23
18:17
20:2

**recover**
30:12,24

**red**
8:1,8
15:1,2

**refer**
4:21
11:23

**references**
21:17

**reflect**

3:5

**registered**
9:9 16:12
19:5

**registers**
16:18

**rehashing**
4:8

**relate**
6:25
10:12
26:14

**related**
26:15
27:17

**relates**
4:23

**relevant**
6:23

**relief**
7:3 8:23
9:14 10:3
12:22
13:9 15:4
16:15
19:9

**remainder**
14:7

**remedy**
29:18

**remove**
15:23
30:23

**repayment**
27:14
29:12

**replete**
4:13

**represent**
3:7



representative
29:6

repugnant
5:8

request
3:25
13:15
22:7
24:22

requested
6:23,25
18:23

requesting
24:14

requests
19:22
23:20

requires
5:3

resolved
22:20

respect
20:20

respectfully
31:3,6

respond
23:19
25:7

response
21:3

responses
23:23

restrictions
11:1,5

rights
8:7

rolling

22:8

Rule
5:2

ruled
22:19

rules
13:2,7,
24,25

ruling
17:21
18:15

rulings
6:22,24
31:10

───────────

─────── S

sailed
8:22

sandwich
13:5

sat
7:16

schedule
3:11
19:19
23:11
31:6

seconds
20:18

Section
17:25

seek
15:4

seeking
30:12,24

selection
11:10
28:10

self-
serving
8:3

serve
9:2 19:22

served
9:19

service
9:3,5
23:16

serving
16:16

set
3:13 10:3
19:20
21:6
30:18

Shankar
14:21

ship
8:22

short
31:12

shorten
21:8
22:18
23:5,6
24:1

shortening
23:15

shortly
19:7

show
5:25
16:18

side
3:14 24:4
31:8

simple
20:9

simply
16:25

sitting
7:5

slightly
26:12

small
13:20

smoke
25:12
27:3

solution
10:2

sort
4:20 9:20
13:4 28:5

sought
6:14 7:3
15:4
19:8,9,18
28:12

special
12:22

specific
6:24

specious
25:10
27:2,5

sponte
5:18

standing
10:19,20,
21 12:13
22:12,17

start
10:2
14:24

state
12:1,4

statements

8:12
14:25
18:23,24

status
8:2,6

statute
12:15

statutes
11:22
12:2

statutory
11:17,20

stay
12:8
20:5,13
21:21
23:10
27:3

Steinberg
9:24

stick
19:19
20:11

strike
14:2

studied
27:24

sua
5:18

subject
29:24

submit
27:19

substance
23:3,8

substantiates
28:23

sue
11:19



28:4 30:9

**sued**
6:13
26:5,9
30:7

**sues**
26:8

**suing**
11:22
17:2,3
27:12,17
28:2 29:6

**sur-reply**
13:21
14:3

**suspicions**
20:23

————————
**T**
————————

**tails**
23:24

**takes**
23:21

**taking**
3:17

**talk**
11:25

**talking**
24:25

**tat**
17:10

**thing**
18:13

**things**
9:21,25
20:14
23:3

**thought**
29:8

**threshold**
10:22

**ticking**
10:6
23:17

**time**
3:14 4:8
5:12 8:25
14:7 21:8
23:5,6,
11,17,21

**timing**
13:1

**tit**
17:10

**today**
13:4,21
14:19
19:11
20:15

**told**
18:13

**tome**
4:17

**tomorrow**
23:5

**toot**
9:23

**tortious**
26:13

**transaction
s**
7:10

**transcript**
3:5

**transfer**
11:7,12
17:1
19:17
21:16
24:16

25:19,22
30:15,19

**transferee**
11:25
17:3
25:24
30:14,16

**transferees**
28:5

**transferor**
11:24
25:20,25
30:16

**transferred**
15:6,8
19:3
30:13,21

**transfers**
16:7
18:3,7

**trial**
12:10
21:20
25:21,22

**true**
18:17
21:19
22:4

**trust**
3:3 24:18

**type**
11:5
24:20
27:6

**types**
11:2 14:4

————————
**U**
————————

**ultimately**
24:25

**un-mute**
14:12

**underlying**
12:3

**understand**
8:3,12
21:12
23:9 25:6
28:11
30:8

**understandi
ng**
26:3,5
27:16

**understood**
27:10

**unfavorable**
17:12

**unintelligi
ble**
5:22

**unnamed**
4:23 7:2,
24 8:5

**unproven**
20:23

**unrelated**
12:16

**unusual**
8:1

————————
**V**
————————

**vacate**
3:10 9:13
13:15
21:5
22:22
24:24
31:4

**vague**
20:22

**veering**
8:4

**vehicle**
25:13
27:2,6

**venue**
11:13
12:15
21:14
25:18

**view**
8:23
26:17

**voice**
14:17

————————
**W**
————————

**wait**
10:16

**wanted**
7:16
24:10

**warrant**
12:7

**warranted**
29:23

**warrants**
5:11

**week**
23:18
24:3

**weeks**
19:21
23:19,25
24:3

**word**
6:9 16:5



**words**
  5:20 15:1

**work**
  23:21,22

**working**
  16:20

**wrap**
  27:1

**wrong**
  15:13

─────────

**Y**

─────────

**York**
  6:13
  11:10,14,
  18 26:8
  28:8
  29:20
  30:11

**young**
  20:22

─────────

**Z**

─────────

**Zaron**
  14:19

