## EXHIBIT 2

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) |
|  | ) |
| BYJU'S ALPHA, INC.,[1] | ) Chapter 11 |
|  | ) |
| Debtor. | ) Case No. 24-10140 (JTD) |
|  | ) |
|  | ) **Re:  Docket Nos. 5, 56, 98, & 133** |

**FINAL ORDER (I) AUTHORIZING**
**THE USE OF CASH COLLATERAL, (II) AUTHORIZING**
**THE DEBTOR TO OBTAIN POSTPETITION FINANCING,**
**(III) GRANTING SENIOR POSTPETITION SECURITY INTERESTS, AND**
**ACCORDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS**
**PURSUANT TO SECTIONS 364(C) AND 364(D) OF THE BANKRUPTCY**
**CODE, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING**
**THE AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF**

Upon the Motion (and the *Supplement to Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Authorizing the Debtor to Obtain Postpetition Financing, (III) Granting Senior Postpetition Security Interests, and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 98] (together, the "Motion")[22] filed by the above-captioned debtor and debtor in possession (the "Debtor") for entry of a final order (this "Final Order") pursuant to sections 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004, 9013, and 9014 of the Federal Rules of

---

[1]   The Debtor in this Chapterchapter 11 Casecase, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260).  The location of the Debtor's service address for purposes of this Chapterchapter 11 Casecase is: 20451007 N. Fremont Street Chicago, Illinois 60614Market St. Ste. G20 452, Wilmington, DE 19801..

[22]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the DIP Credit Agreement, as applicable.

Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), among other things:

(a)     authorizing BYJU's Alpha, Inc., in its capacity as borrower (the "DIP Borrower"), to obtain postpetition financing commitments in connection with a senior secured multiple-draw term loan facility in the aggregate principal amount of up to $~~260.0 million~~278,754,477.59 (the "DIP Facility" and, the commitments thereunder, the "DIP Commitments") subject to the terms and conditions set forth in that certain senior secured superpriority debtor-in-possession credit and guaranty agreement~~, dated as of March [●], 2024~~, attached hereto as **Exhibit A** (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the DIP Borrower, as borrower, certain Subsidiaries of the Borrower from time to time party thereto, the lenders from time to time party thereto (the "DIP Lenders"), and GLAS Trust Company LLC, as administrative and collateral agent (in such capacity, together with its successors and permitted assigns, the "DIP Agent" and, together with the DIP Lenders and all holders of all other DIP Obligations (as defined below), the "DIP Secured Parties"), consisting of:

(i)     New Money DIP Loans.  Senior secured multiple-draw term loans in the aggregate principal amount not to exceed $20 million (the "New Money DIP Loan Commitments" and the term loans made thereunder, the "New Money DIP Loans").

(ii)    Roll-Up Loans.  Senior secured term loans in the aggregate principal amount not to exceed $~~215 million~~228,476,093.11, consisting of, subject to the DIP Credit Agreement:

A.     at the sole option of each DIP Lender, for every dollar of New Money DIP Loans and/or Bridge Loans held by such DIP Lender or any of its affiliates at the time of election, such DIP Lender may irrevocably elect to convert up to seven dollars of loans under the Prepetition Credit Agreement held by such DIP Lender or any of its affiliates (whether as a lender of record, by participation, or any other means) at the time of election into an equivalent amount of loans under the DIP Facility;[33] and

---

[33] Upon the occurrence of the effective date of the DIP Credit Agreement (the "Effective Date"), the Bridge Loans and Prepetition Reimbursements outstanding immediately prior to the Effective Date shall be converted on a cashless basis into and deemed to be Term Loans and New Money Term Loans for all purposes under the DIP Credit Agreement and the other Loan Documents and will have identical terms as the New Money Term Loans.



B. at the sole option of each DIP Lender who holds any Prepetition Reimbursements, for every dollar of Prepetition Reimbursement held by such DIP Lender (or any of its affiliates) at the time of election, such DIP Lender may irrevocably elect to convert up to two dollars of loans under the Prepetition Credit Agreement held by such DIP Lender or any of its affiliates (whether as a lender of record, by participation, or by any other means) at the time of election into an equivalent amount of loans under the DIP Facility (the loans rolled up pursuant to subclause (A) and this subclause (B), the "<u>Roll-Up Loans</u>" and together with the New Money DIP Loans and any Bridge Loans and Prepetition Reimbursements that subsequently become DIP Loans pursuant to the terms hereof, the "<u>DIP Loans</u>").[44]

(b) converting the Prepetition Reimbursements into postpetition, debtor-in-possession financing under section 364 of the Bankruptcy Code that shall rank pari passu with the New Money DIP Loans and shall constitute DIP Loans for all purposes hereunder.

(c) converting the Bridge Loans into a postpetition, debtor-in-possession financing under section 364 of the Bankruptcy Code that shall rank pari passu with the New Money DIP Loans and shall constitute DIP Loans for all purposes hereunder.

(d) authorizing the Debtor to execute, deliver, and perform under the DIP Credit Agreement, that certain Subordination and Intercreditor Agreement, ~~dated as of [●], 2024,~~ by and among the Prepetition Agent and the DIP Borrower (the "<u>Intercreditor Agreement</u>"), and any other related documents, including pledge agreements, mortgages, guaranties, promissory notes, certificates, instruments, and such other documents that may be reasonably necessary, desirable or required to implement the DIP Facility and perform thereunder and/or that may be reasonably requested by the DIP Agent (collectively, as such may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "<u>DIP Loan Documents</u>"), each of which

---

[44] As more fully set forth in the DIP Credit Agreement, at any time after the Effective Date but no later than 14 calendar days prior to the Maturity Date, each New Money Term Loan Lender shall have the right in its sole option to submit a Roll-Up Notice with respect to its (or any of its Affiliates' or Approved Funds') Prepetition Term Loans (which such Prepetition Term Loans may be held as a lender of record, by participation, or by any other means) in an amount up to the Applicable Roll-Up Amount. For the avoidance of doubt, a New Money Term Loan Lender may submit a Roll-Up Notice on more than one occasion as long as the aggregate principal amount of Prepetition Term Loans subject to all such Roll-Up Notices does not exceed the Applicable Roll-Up Amount of such New Money Term Loan Lender as of the date of such Roll-Up Notice.

The roll-up options set forth in the DIP Credit Agreement shall be attributable to and travel with (in the case of any assignment, participation, or transfer after the Effective Date) the funded New Money Term Loans, Bridge Loans, and/or Prepetition Reimbursements, as applicable. Any exercise of the roll-up option affiliated with any dollar of New Money Term Loans, Bridge Loans, and/or Prepetition Reimbursements shall be noted by the Administrative Agent on the Register within three Business Days of receiving the relevant Roll-Up Notice.



shall be in form and substance satisfactory to the DIP Agent and the Required DIP Lenders; and to perform such other acts as may be reasonably necessary, desirable or appropriate in connection with the DIP Loan Documents

(e)     granting to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, (a) DIP Liens (as defined below) on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), (c)(3), and (d) of the Bankruptcy Code, which DIP Liens shall be, subject to the Carve Out (as defined below), senior to all liens, security interests, and pledges on the DIP Collateral and (b) DIP Superpriority Claims pursuant to section 364(c)(1) of the Bankruptcy Code, subject and subordinate to the Carve Out;

(f)     authorizing and directing the Debtor to pay all principal, interest, fees, costs, expenses, and other amounts payable under the DIP Loan Documents as such become due and payable, as provided and in accordance therewith;

(g)     authorizing the Debtor to use the Cash Collateral from the date of entry of this Final Order through and including the date of termination of the DIP Credit Agreement;

(h)     authorizing the Debtor to perform such other and further acts as may be necessary or desirable in connection with this Final Order, the DIP Loan Documents (including the DIP Credit Agreement), and the transactions contemplated hereby and thereby, subject to this Final Order and the Approved Budget;

(i)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order;

(j)     granting adequate protection to the Prepetition Secured Parties as provided in this Final Order; and

(k)     providing for the immediate effectiveness of this Final Order and waiving any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

Having considered the Motion, the *Declaration of Timothy R. Pohl, Director, CEO, and Secretary of BYJU's Alpha, Inc., in Support of the Debtor's Chapter 11 Petition* [Docket No. 3] (the "First Day Declaration"), ~~the *Declaration of Timothy R. Pohl in Support of Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Authorizing the Debtor to Obtain Postpetition Financing, (III) Granting Senior Postpetition Security Interests, and According Superpriority Administrative Expense Status Pursuant to*~~



4

*Sections 364(c) and 364(d) of the Bankruptcy Code, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. [●]] (the "Pohl Declaration"),and the evidence submitted or proffered at the hearing on the Motion held on February 5, 2024 (the "Interim Hearing"), and evidence submitted or proffered at the hearing on the Motion held on March 6, 2024 (the "Final Hearing"); and the Court having entered the Interim Order on February 8, 2024 [Docket No. 56]; and the Court having entered the *Second Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 133]; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having determined that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having considered the Motion, and the First Day Declaration, the Pohl Declaration, and the arguments of counsel at the Final Hearing; and the Court having found that the final relief as approved in this Final Order is in the best interests of the Debtor and its estate, creditors, and other parties in interest; and it appearing that the Debtor's entry into the DIP Facility is a sound and prudent exercise of the Debtor's business judgment; and the Court having found that proper and adequate notice of the Motion and the Final Hearing thereon has been given under the circumstances and that no other or further notice is necessary for the relief requested in the Motion; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation to the Motion



and all of the proceedings had before the Court in connection with the Motion, **THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[5][5]

A. <u>Petition Date</u>.  On February 1, 2024 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>"), commencing the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>").

B. <u>Debtor in Possession</u>.  The Debtor continues to operate its business as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case.

C. <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought herein are sections 361, 362, 363, 364, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 9013, and 9014, and Local Rules 2002-1, 4001-1, 4001-2, and 9013-1.

D. <u>Committee</u>.  As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") has not appointed an official committee ("<u>Committee</u>")

---

[3]   Where appropriate in this Final Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.



in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

E.    <u>Debtor's Stipulations</u>.    In requesting the DIP Facility and the use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lenders and the Prepetition Secured Parties to agree to provide, or consent to, the DIP Facility, the Debtor's access to the Cash Collateral, and subordination of the Prepetition Liens to the Carve Out and the DIP Liens (which DIP Liens shall be subject to the Carve Out), and as a condition to providing financing under the DIP Facility and consenting to the use of Cash Collateral, subject to the rights of the parties in interest (other than the Debtor) set forth in this Final Order, the Debtor permanently and irrevocably admits, stipulates, acknowledges, and agrees, as follows (collectively, the "<u>Debtor's Stipulations</u>"):

(i)    <u>Prepetition Secured Parties</u>.    The Debtor, as borrower, GLAS Trust Company LLC ("<u>GLAS</u>" or the "<u>Prepetition Agent</u>"), as administrative agent and collateral agent, the lenders party thereto (collectively, the "<u>Prepetition Secured Lenders</u>" and, together with GLAS, the "<u>Prepetition Secured Parties</u>"), among others, entered into that certain Credit and Guaranty Agreement dated November 24, 2021 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "<u>Prepetition Credit Agreement</u>").

(ii)    <u>Prepetition Secured Obligations</u>.    As of the Petition Date, the Debtor was justly and lawfully indebted and liable to the Prepetition Secured Parties, without defense, counterclaim, or offset of any kind, in the aggregate amount of not less than $1,189,513,685.0 attributable to principal of loans outstanding under the Prepetition Credit Agreement, plus approximately $267,548,427.0 in outstanding accrued and unpaid premium, interest, fees, and expenses, and other amounts, contingent or otherwise, whenever arising or accruing, that may be due, owing, or chargeable in respect thereof, in each case, to the extent provided in the Prepetition Credit Agreement or the Loan Documents (as defined in the Prepetition Credit Agreement) (the "<u>Prepetition Secured Obligations</u>").

(iii)    <u>Prepetition Collateral</u>.    As security for the prompt and complete payment and performance in full when due of all Prepetition Secured Obligations, the Debtor, entered into a pledge and security agreement dated November 24, 2021 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "<u>Pledge and</u>

---



[66]    Under the Pledge and Security Agreement, the Debtor granted a security interest in the "Collateral" (as defined in the Pledge and Security Agreement) to GLAS for the benefit and for the benefit of the Prepetition Secured

Collateral" and such liens granted, the "Prepetition Liens").  As of the Petition Date, the Prepetition Liens:  (A) have been properly recorded and are valid, binding, enforceable, non-avoidable and fully perfected liens and security interests in the Prepetition Collateral; (B) are not subject to any offset, contest, objection, recovery, recoupment, reduction, defense, counterclaim, subordination, recharacterization, disgorgement, disallowance, avoidance, challenge, or any other claim or cause of action of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law, or other applicable law; (C) were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations or consideration secured or obtained thereby; (D) without giving effect to this Final Order, are senior with priority over any and all other liens on or security interests in the Prepetition Collateral; (E) encumber all of the Prepetition Collateral, as the same existed on the Petition Date; (F) are entitled to adequate protection as set forth herein; and are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

(iv)     Cash Collateral.  Any and all of the Debtor's cash, including all amounts on deposit or maintained in any banking, checking, or other deposit accounts by the Debtor, any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral or deposited into the Debtor's banking, checking, or other deposit accounts after the Petition Date, and the proceeds of any of the foregoing is the Prepetition Secured Parties' cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").  The Prepetition Secured Parties are entitled to adequate protection of their respective interests in the Cash Collateral, for any Diminution in Value of their respective interests as of the Petition Date resulting from the use of Cash Collateral.

(v)      Good Faith.  The Prepetition Secured Parties and the DIP Secured Parties have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of granting the DIP Liens and the Adequate Protection Liens, any challenges or objections to the use of Cash Collateral, and all documents relating to any and all transactions

---

in the Pledge and Security Agreement) to GLAS for its benefit and for the benefit of the Prepetition Secured Parties.



contemplated by the foregoing.

(vi)    <u>No Challenges/Claims</u>.  No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including impairment, set-off, avoidance, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (equitable or otherwise), attack, offset, defense, counterclaims or cross-claims pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The Debtor and its estate have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the facility extended under the Prepetition Credit Agreement, the Obligations (as defined in the Prepetition Credit Agreement), the Prepetition Liens, or otherwise, whether arising at law or at equity, including any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents.

(vii)    <u>Default</u>.  The Debtor is in default under the Prepetition Credit Agreement, and at least one event of default has occurred and is continuing under the Prepetition Credit Agreement.

F.    <u>Cash Collateral</u>.  All of the Debtor's cash, including any cash in deposit accounts of the Debtor, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties. The Prepetition Secured Parties consent to the Debtor's use of the Cash Collateral in accordance with and subject to the terms and conditions provided for in this Final Order.  The Debtor has agreed to provide each Prepetition Secured Party with adequate protection of its respective interest in the Cash Collateral for any Diminution in Value thereof.

G.    <u>Findings Regarding Postpetition Financing and Use of Cash Collateral</u>.

(a)    The Debtor has requested from each of the DIP Lenders, and the DIP Lenders are willing to provide financing to the Debtor subject to:  (i) this Final Order; (ii) Court



approval of the terms and conditions of the DIP Facility and the DIP Loan Documents; (iii) satisfaction or waiver of the closing conditions and the funding conditions set forth in the DIP Loan Documents; and (iv) findings by this Court that the DIP Facility is essential to the Debtor's estate, that the DIP Secured Parties are extending credit to the Debtor pursuant to the DIP Loan Documents in good faith, and that the DIP Secured Parties' claims, superpriority claims, security interests, and liens and other protections granted pursuant to this Final Order and the DIP Loan Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(b)    The Debtor has an immediate and critical need to obtain (i) postpetition financing pursuant to the DIP Facility and (ii) permission to use Cash Collateral (subject to the Approved Budget), in order to, among other things to pay professional fees and to pursue a restructuring for the benefit of the Debtor's stakeholders.   The absence of access to Cash Collateral would immediately and irreparably harm the Debtor, its estate, and parties in interest. The Debtor does not have sufficient available sources of working capital and financing to preserve the value of its business without the ability to borrow under the DIP Facility and use Cash Collateral.   The Debtor and its estate will be immediately and irreparably harmed if financing under the DIP Facility is not obtained pursuant to the terms of this Final Order and, as applicable, the DIP Loan Documents, or if the Debtor is unable to use Cash Collateral.   Entry of this Final Order is necessary and appropriate to avoid such harm to the Debtor, its estate, and other parties in interest.

(c)    The Debtor is unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the terms of the DIP Facility.   The Debtor is unable to obtain, pursuant to sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code,



(i) unsecured credit allowable under section 503(b) of the Bankruptcy Code as an administrative expense, (ii) credit secured solely by a lien on property of the Debtor and its estate that is not otherwise subject to a lien, or (iii) credit secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien.  The Debtor is further unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without as provided for herein (1) granting to the DIP Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Superpriority Claim (as defined below) and (2) granting the Prepetition Secured Parties the rights, remedies, privileges, benefits, and protections provided herein, including the Adequate Protection Liens.  The Roll-Up Loans are an integral part of the DIP Facility, without which the DIP Lenders would be unwilling to extend the New Money DIP Loan Commitments.

(d)     The DIP Facility and this Final Order have been negotiated in good faith and at arm's length among the Debtor and the DIP Secured Parties, and all of the Debtor's obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Loan Documents, including all loans made to and guarantees issued by the Debtor pursuant to the DIP Loan Documents and all other obligations under the DIP Loan Documents (collectively, the "DIP Obligations") shall be deemed to have been extended by the DIP Secured Parties in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated or reversed or modified on appeal, and any liens or claims granted to, or payments made to, the DIP Agent or the DIP Lenders hereunder arising prior to the effective



date of any such reversal or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

(e)    Subject to paragraph 8 of this Final Order, the Debtor has agreed to provide to the Prepetition Secured Parties pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, adequate protection of their respective interests in the Prepetition Collateral, including Cash Collateral, for any diminution in the value thereof.

(f)    Subject to paragraph 8 of this Final Order, in light of the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the DIP Obligations and the Carve Out and to permit the use of their Cash Collateral as set forth herein, upon entry of this Final Order, each Prepetition Secured Party shall be entitled to the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to such parties with respect to the proceeds, products, offspring, or profits of any of the DIP Collateral or such Prepetition Collateral, as applicable.

(g)    The Prepetition Secured Parties have consented to, conditioned on the entry of this Final Order, the Debtor's incurrence of the DIP Facility, and proposed use of Cash Collateral on the terms and conditions set forth in this Final Order, including the terms of the adequate protection provided for in this Final Order.

H.    <u>Section 506(c)</u>.  In light of the DIP Secured Parties' agreement to extend credit to the Debtor on the terms described herein, the DIP Secured Parties have negotiated for and the Debtor and the DIP Secured Parties seek in this Final Order a waiver of the provisions of section 506(c) of the Bankruptcy Code in respect of the DIP Collateral, subject to the Carve Out.



I.      <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.  The terms and conditions of the DIP Facility, the DIP Loan Documents, and the fees paid and to be paid thereunder to the DIP Secured Parties, are fair, reasonable, and the best available to the Debtor under the circumstances, are ordinary and appropriate for secured postpetition financing to debtors in possession, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Good cause has been shown for entry of this Final Order, and entry of this Final Order is in the best interests of the Debtor and its estate, creditors, and other stakeholders.  The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arm's length among the Debtor, the DIP Secured Parties, and the Prepetition Secured Parties with the assistance and counsel of their respective advisors.  Credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Secured Parties within the meaning of section 364(e) of the Bankruptcy Code and shall be entitled to the full protection of section 364(e).  The Prepetition Secured Parties have agreed to the use of Cash Collateral in good faith, and the Prepetition Secured Parties shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Final Order or any provision hereof is reversed or modified on appeal.  Based on the Motion~~,~~ <u>and</u> the First Day Declaration~~, the Pohl Declaration, and on the record presented at the Final Hearing~~, the terms of the DIP Facility are fair and reasonable, reflect the Debtor's prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration.

J.      <u>Notice</u>.  Notice of the relief requested in the Motion and the Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, whether by facsimile, email, overnight courier, and or hand delivery, to certain parties in



interest, including:  (a) the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor (on a consolidated basis, as and if identified); (c) the office of the attorney general for each of the states in which the Debtor operates; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice; (h) the Prepetition Agent and counsel thereto; (i) the Prepetition Secured Lenders and counsel thereto; (j) Think and Learn Private Limited and counsel thereto; (k) BYJU's Pte. Ltd.; (l) Great Learning Education Pte. Ltd.; (m) Epic! Creations Inc.; (n) Neuron Fuel Inc.; (o) Tangible Play, Inc.; (p) Whitehat Education Technology LLC; (q) shareholders to Think and Learn Private Limited; (r) Camshaft Capital Fund, LP, Camshaft Capital Management, and Camshaft Capital Advisors, and counsel thereto; and (s) any party that has requested notice pursuant to Bankruptcy Rule 2002.  No other or further notice of the Motion with respect to the relief requested at the Final Hearing or entry of this Final Order is or shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.    <u>Financing Approved</u>.  The Motion is GRANTED on a final basis as set forth herein.

2.    <u>Objections Overruled</u>.  Any objections, reservations of rights, or other statements with respect to entry of this Final Order, to the extent not withdrawn or resolved, are OVERRULLED on the merits.



3.      <u>Authorization of the DIP Facility and the DIP Loan Documents</u>.

(a)      The DIP Borrower is hereby immediately authorized and empowered, on a final basis, to enter into, and execute and deliver, the DIP Loan Documents, including the DIP Credit Agreement, and such additional documents, instruments, certificates, and agreements as may be reasonably required or requested by the DIP Secured Parties or the Prepetition Secured Parties to implement the terms or effectuate the purposes of this Final Order and the DIP Loan Documents and to effectuate the funding of the New Money DIP Loans and/or the Roll-Up Loans and deemed repayment of a corresponding amount of Prepetition Secured Obligations.  To the extent not entered into as of the date hereof, the Debtor and the DIP Secured Parties shall negotiate the DIP Loan Documents in good faith, and in all respects such DIP Loan Documents shall be, subject to the terms of this Final Order, consistent with the terms of the DIP Credit Agreement and otherwise reasonably acceptable to the DIP Agent (acting at the direction of the "Required Lenders" (as defined in the DIP Credit Agreement) under and pursuant to the DIP Credit Agreement (collectively, the "<u>Required DIP Lenders</u>")) and the Required DIP Lenders. Upon entry of this Final Order, the DIP Credit Agreement and other DIP Loan Documents shall govern and control the DIP Facility.  The DIP Agent is hereby authorized to execute and enter into its respective obligations under the DIP Loan Documents, subject to the terms and conditions set forth therein and this Final Order.  Upon execution and delivery thereof, the DIP Loan Documents shall constitute valid and binding obligations of the Debtor enforceable in accordance with their terms.  To the extent there exists any conflict among the terms and conditions of the DIP Loan Documents and this Final Order, the terms and conditions of this Final Order shall govern and control.



(b)     Upon entry of this Final Order, the DIP Borrower is hereby authorized to borrow the DIP Loans subject to, and in accordance with, this Final Order.

(c)     Pursuant to the terms of this Final Order and the DIP Loan Documents, proceeds of the DIP Loans shall be used solely for the purposes permitted under the DIP Loan Documents and this Final Order, and in accordance with the Approved Budget, subject to any permitted variance as set forth in this Final Order and the DIP Loan Documents.  Attached as Exhibit 1 to the Interim Order and incorporated herein by reference is a budget prepared by the Debtor and approved by the Required DIP Lenders in accordance with the DIP Credit Agreement (the "Approved Budget").

(d)     In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted solely to the extent necessary to perform all acts and to make, execute, and deliver all instruments and documents (including the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby or by the DIP Credit Agreement), and to pay all fees (including all amounts owed to the DIP Lenders and the DIP Agent under the DIP Loan Documents) that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Facility, including:

(i)     the execution, delivery, and performance of the DIP Loan Documents, including the DIP Credit Agreement, the Security Agreement (as defined in the DIP Credit Agreement), and any other Security Documents (as defined in the DIP Credit Agreement);

(ii)    the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents (in each case in accordance with the terms of the applicable DIP Loan Documents and in form and substance acceptable to the Debtor, the DIP Agent, and the Required DIP Lenders), it being understood that no further Court approval shall be required for non-material amendments, waivers,

consents, or other modifications to and under the DIP Loan Documents or the DIP Obligations ~~that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder~~;

(iii)    the non-refundable payment to each of and/or on behalf of the DIP Secured Parties, as applicable, of the fees referred to in the DIP Loan Documents, including all fees and other amounts owed to the DIP Agent; and

(iv)    the performance of all other acts required under or in connection with the DIP Loan Documents.

(e)    Upon entry of this Final Order and subject and subordinate to the Carve Out, such DIP Loan Documents, the DIP Obligations, and the DIP Liens shall constitute valid, binding, and non-avoidable obligations of the Debtor enforceable against the Debtor in accordance with their respective terms and the terms of this Final Order for all purposes during the Chapter 11 Case and any other proceeding superseding or relating thereto (each, a "Successor Case").  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, or this Final Order, subject to paragraph 8 of this Final Order, shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.  All payments or proceeds remitted (i) to or on behalf of the DIP Agent on behalf of any DIP Secured Parties or (ii) subject to paragraph 8 of this Final Order, to or on behalf of any Prepetition Secured Parties, in each case, pursuant to the DIP Loan Documents, the provisions of this Final Order, or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability, including any such claim or charge arising out of or based on, directly or



indirectly, section 506(c) or the "equities of the case" exception of section 552(b) of the Bankruptcy Code.

(f)    Upon entry of this Final Order, the Debtor shall transfer the proceeds of the Bridge Loan from the GLAS Account to the Postpetition Bank Account.

4.    <u>Approved Budget</u>.  The proceeds of the DIP Facility and Cash Collateral shall be used solely in accordance with the Approved Budget.  In the event the Debtor deems it necessary to use DIP Loans or cash that constitutes Cash Collateral outside the amounts permitted under the Approved Budget, the Debtor may make such request to the DIP Agent.  Any variation or modification to the Approved Budget shall be subject in all respects to the DIP Agent's consent in consultation with the DIP Lenders.

5.    <u>Inspection Rights</u>.  In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Prepetition Credit Agreement, upon reasonable prior written notice (email being sufficient) and during normal business hours, the Debtor shall permit representatives, agents, an employees of the Prepetition Secured Parties and the DIP Secured Parties to (a) have reasonable access to and inspect and copy the Debtor's books and records, including all records and files of the Debtor pertaining to the Prepetition Collateral and the Adequate Protection Collateral, (b) have reasonable access to and inspect the Debtor's properties, and (c) discuss the Debtor's affairs, finances, and condition with the Debtor's officers and financial advisors.

6.    <u>DIP Superpriority Claims</u>.  Subject and subordinate only to the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims of the DIP Secured Parties against the Debtor's estate (the "<u>DIP Superpriority Claims</u>") to the extent set forth in the Bankruptcy Code,



with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise to the extent allowable under the Bankruptcy Code, which allowed claims shall for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof, including any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "Avoidance Actions").

7.     DIP Liens.  As security for the DIP Obligations, effective and perfected upon the date of this Final Order, and without the necessity of the execution, recordation of filings by the Debtor of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Agent or any DIP Lender of, or over, any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtor to the DIP Agent, for the benefit of the DIP Secured Parties (all property identified in clause (a) and (b) below being collectively referred to as the "DIP Collateral"), subject and subordinate only to (x) valid, perfected and unavoidable liens, if any, existing as of the Petition Date, or that relate back pursuant to section 546(b) of the Bankruptcy Code, that are senior to the liens or security interests of the Prepetition Secured Parties as of the Petition Date by operation of law or permitted by the Prepetition Credit



19

~~Agreement, liens on assets that did not constitute Prepetition Collateral~~, and (y) the Carve Out (all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Lenders, pursuant to this Final Order and the DIP Loan Documents, the "<u>DIP Liens</u>"):

(a)    <u>First Priority Lien on Any Unencumbered Property</u>.    Subject and subordinate only to the Carve Out, <u>and subject to paragraph 10 of this Final Order,</u> pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically, and properly perfected first priority senior security interest in and lien upon all property of the Debtor, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to Prepetition Liens, including, but not limited to:    the Debtor's Prepetition Collateral; postpetition revenues; insurance; bank accounts and other security or deposit accounts of the Debtor (including, for the avoidance of doubt, any accounts opened prior to, on, or after the Petition Date); all equity interests; all intercompany claims, accounts, and receivables (and all rights associated therewith); all rights, interests, and obligations in and to any cause of action of the Debtor with respect to fraud, fraudulent conveyance, or breach of fiduciary duties (collectively, the "<u>Litigation Claims</u>"); and any and all proceeds, products, rents, and profits of all of the foregoing.

(b)    <u>Liens Priming the Prepetition Liens</u>.  Subject and subordinate only to the Carve Out, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all assets and property of the Debtor, subject to paragraph (c) below.

(c)    <u>Liens Junior to Certain Other Liens</u>.  Subject and subordinate only to the Carve Out, pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing,



enforceable, fully perfected first priority senior security interest in and lien upon all prepetition and postpetition property of the Debtor (other than the property described in clauses (a) or (b) of this paragraph 7, as to which the liens and security interests in favor of the DIP Lenders will be as described in such clauses).

(d)     <u>Adequate Protection</u>.    Subject to paragraph 8 below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, the Debtor has agreed to provide the Prepetition Secured Parties adequate protection of their interests in the Prepetition Collateral (including Cash Collateral), solely to the extent of and in an amount equal to the aggregate diminution in value of such interests from and after the Petition Date (each such diminution, a "<u>Diminution in Value</u>"), resulting from the imposition of the priming DIP Liens on the Prepetition Collateral, the Carve Out, and the Debtor's use of the Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay (each Prepetition Secured Party's claim for such Diminution in Value, an "<u>Adequate Protection Claim</u>").

(e)     <u>Adequate Protection Collateral</u>.    "<u>Adequate Protection Collateral</u>" shall mean, collectively, all of the Debtor's property and assets (whether now owned or after-acquired, and whether real or personal, tangible, or intangible), including, without limitation:  the Debtor's Prepetition Collateral; the Litigation Claims; postpetition revenues; insurance; bank accounts and other security or deposit accounts of the Debtor (including, for the avoidance of doubt, any accounts opened prior to, on, or after the Petition Date); all equity interests; all intercompany claims, accounts, and receivables (and all rights associated therewith); and any and all proceeds, products, rents, and profits of all of the foregoing.



(f)      <u>Adequate Protection Liens</u>.  As security for any Diminution in Value of the Prepetition Collateral, subject and subordinate only to (a) the Carve Out, (b)(i) any valid, perfected and unavoidable liens, if any, existing as of the Petition Date that are senior to the liens or security interests of the Prepetition Secured Parties as of the Petition Date by operation of law or permitted by the Prepetition Credit Agreement and (ii) any liens that are perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code, or (c) the DIP Liens, additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the date of this Final Order (collectively, the "<u>Adequate Protection Liens</u>"), without the necessity of the execution by the Debtor (or recordation or other filing), of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all DIP Collateral.

(g)      <u>Adequate Protection Superpriority Claims</u>.   As further adequate protection, and to the fullest extent provided by sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, the Adequate Protection Claims shall be, subject and subordinate to the Carve Out, allowed superpriority administrative expense claims against the Debtor in the Chapter 11 Case ("<u>Adequate Protection Superpriority Claims</u>").

(h)      <u>Adequate Protection Payments</u>.   As further adequate protection, the Debtor is authorized, but not directed, to pay in accordance with the terms of paragraph 17 of this Final Order, all reasonable and documented fees and expenses (the "<u>Adequate Protection Fees</u>") of the Prepetition Secured Parties, whether incurred before or after the Petition Date, to the extent not duplicative of any fees and/or expenses paid pursuant to paragraph 3(d)(iii) hereof, including all reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Loan Documents and this Final Order, including, for the



avoidance of doubt, of: (i) Kirkland & Ellis LLP, as counsel to the DIP Agent, and Prepetition Agent, (ii) Pachulski Stang Ziehl & Jones LLP, as counsel to the DIP Agent and Prepetition Agent, and (iii) Reed Smith, as counsel to the DIP Agent and Prepetition Agent (collectively, the "Adequate Protection Payments"). None of the Adequate Protection Fees or Adequate Protection Payments shall be subject to separate approval by this Court or the U.S. Trustee Guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.

(i)    Right to Seek Additional Adequate Protection. This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtor or any other party to contest such request. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Case.

(j)    Cash Management. The Debtor shall maintain their cash management arrangements in a manner consistent with the Court order approving the Debtor's cash management motion or any further Court order.

(k)    Reporting Requirements. As additional adequate protection to the Prepetition Secured Parties, the Debtor shall comply with all reporting requirements set forth in the DIP Credit Agreement and shall provide all such reports, documents, and other information to the Prepetition Agent and the DIP Agent.

8.    Carve Out.



(a)      <u>Priority of Carve Out</u>.  Each of the Prepetition Liens, Adequate Protection Liens, Adequate Protection Claims, DIP Liens, and DIP Superpriority Claims shall each be subject to and subordinate to payment of the Carve Out.  The Carve Out shall have such priority claims and liens over all assets of the Debtor, including any DIP Collateral and Prepetition Collateral.

(b)      <u>Definition of Carve Out</u>.  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and an official committee of unsecured creditors (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1 million incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "<u>Post-Carve Out Trigger Notice Cap</u>").  For purposes of the



foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtor, its lead restructuring counsel, the U.S. Trustee, and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.  For the avoidance of doubt and notwithstanding anything to the contrary, until the later to occur of (i) the date that is six years following the end of the Chapter 11 Case and (ii) the date of any final and binding resolution of any litigation pending against Timothy R. Pohl prior to the date in clause (i) for which he is entitled to indemnification under the Indemnification Termination Date,Obligations (as defined in the DIP Credit Agreement) with the DIP Borrower the DDTL Tranche 2 proceeds in the Escrow Account shall remain available exclusively to pay any indemnification obligationsIndemnification Obligations of the DIP Borrower owed to Timothy R. Pohl in accordance with the requirements of the indemnification agreement between the DIP Borrower and Mr. Pohl and subject to the IndemnityEscrow Tail Agreement (as defined in the DIP Credit Agreement).

(c)     Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtor with a copy to counsel to the Committee (if any) (the "Termination Declaration Date"), the Carve Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing with respect to the DDTL Tranche 1 proceeds in the Escrow Account by the Debtor for Delayed Draw Term Loans under the Delayed Draw Term Loan Commitment (each, as defined in the DIP Credit Agreement) (on a pro rata basis based on the then outstanding Delayed Draw Term Loan Commitments), in an amount equal to the then unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced shall



constitute Delayed Draw Term Loans) and (ii) also constitute a demand to the Debtor to utilize all cash on hand as of such date and any available cash thereafter held by the Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtor shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also (i) be deemed a request by the Debtor for Delayed Draw Term Loans under the Delayed Draw Term Loan Commitment (on a pro rata basis based on the then outstanding Delayed Draw Term Loan Commitments), in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute Delayed Draw Term Loans) and (ii) constitute a demand to the Debtor to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtor shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  On the first business day after the DIP Agent gives such notice to such Delayed Draw Term Lenders (as defined in the DIP Credit Agreement), notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, the failure of the Debtor to satisfy any or all of the conditions precedent for Delayed Draw Term Loans under the Delayed Draw Term Facility, any termination of the Delayed Draw Term Loan Commitments following an Event of Default, or the occurrence of the



Maturity Date, each Delayed Draw Term Lender with an outstanding Commitment (on a pro rata basis based on the then outstanding Commitments) shall make available to the DIP Agent such Delayed Draw Term Lender's pro rata share with respect to such borrowing in accordance with the Delayed Draw Term Facility.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the DIP Loan Documents, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 8, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 8, prior to making any payments to the DIP Agent



or the Prepetition Secured Parties, as applicable. Notwithstanding anything to the contrary in the DIP Loan Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtor until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Loan Documents. Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtor from the Carve Out Reserves shall not constitute Term Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtor. For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the DIP Facility, or in any prepetition facilities under the Prepetition Credit Agreement, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and the 507(b) claim, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations.

(d)     <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)     <u>No Direct Obligation To Pay Allowed Professional Fees</u>. None of the DIP



Agent, DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Case or any Successor Case under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

(f)     Payment of Carve Out on or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

9.     Reservation of Rights.  The failure or delay of the Prepetition Agent, the DIP Agent, the Prepetition Secured Parties, or the Prepetition Agent to exercise rights and remedies under this Final Order or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

10.     Challenge ~~Period~~Periods.  Subject to the Challenge ~~Period~~Periods (as defined herein), the stipulations, admissions, waivers, and releases contained in this Final Order, including the Debtor's Stipulations, shall be binding upon the Debtor, its estate, and any of its respective successors in all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date;



*provided*, *however*, that the Debtor's stipulations, admissions, agreements, releases, and waivers contained in this Final Order shall not apply to a chapter 7 or chapter 11 trustee until the Known Creditor Challenge Period Termination Date (defined below).  The stipulations, admissions, and waivers contained in this Final Order, including the Debtor's Stipulations, shall be binding upon all other parties in interest, including any Committee and any other person acting on behalf of the Debtor's estate, unless and to the extent that a party in interest with proper standing granted by order of the Court, has timely and properly filed an adversary proceeding or contested matter under the Bankruptcy Rules (a) seeking to avoid, object to, or otherwise challenge the findings or the Debtor's Stipulations, including regarding: (i) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of any of the Prepetition Secured Parties; (ii) the validity, enforceability, allowability, priority, secured status, or amount of the Obligations; (iii) asserting or prosecuting any so-called "lender liability" claims, avoidance actions, or any other claim, counter claim, cause of action, objection, contest or defense, of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable law, or otherwise, against any of the Prepetition Secured Parties or their respective representatives (any such claim, a "Challenge") and (b) in which the Court enters a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed Challenge.  ~~A~~

11.    With respect to parties that are served with a copy of this Final Order, and any Committee, a Challenge must be filed on or prior to 75 days following entry of the Interim Order (the "Known Creditor Challenge Period" and the date of expiration of the Known Creditor Challenge Period, the "Known Creditor Challenge Period Termination Date").  With respect to parties that are not served with a copy of this Final Order, a Challenge must be filed on or prior to 60 days following entry of this Final Order (the "Unknown Creditor Challenge Period" and



the date of expiration of the Unknown Creditor Challenge Period, the "Unknown Creditor Challenge Period Termination Date").[7]   The Debtor shall publish notice of the Unknown Creditor Challenge Period Termination Date, substantially in the form attached hereto as **Exhibit B** with any necessary modifications for ease of publication, within five days of the entry of this Final Order, in the national edition of The Wall Street Journal.

12.     If this Chapter 11 Case converts to chapter 7, or if a chapter 11 trustee is appointed, prior to the Known Creditor Challenge Period Termination Date, the Known Creditor Challenge Period Termination Date shall be extended for the chapter 7 or chapter 11 trustee to 14 days after their appointment.  If this Chapter 11 Case converts to chapter 7 following the commencement of a timely Challenge by a Committee appointed in the Chapter 11 Case, then the chapter 7 trustee may continue such Challenge in lieu of, and as successor to, the Committee. Upon the occurrence of the Challenge Period Termination ~~Date~~Dates without the filing of a Challenge (or if any such Challenge is withdrawn or filed and overruled):  (w) any and all such Challenges by any party (including the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in this Chapter 11 Case, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever barred; (x) the Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Debtor's Chapter 11 Case and any Successor Case; (y) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid,

---

[7]    The Known Creditor Challenge Period, together with the Unknown Creditor Challenge Period, shall collectively be referred to as the "Challenge Periods."   The Known Creditor Challenge Period Termination Date, together with the Unknown Creditor Challenge Period Termination Date, shall collectively be referred to as the "Challenge Period Termination Dates."



31

binding, and perfected liens and security interests, not subject to recharacterization, subordination, or avoidance; and (z) all of the Debtor's stipulations and admissions contained in this Final Order, including the Debtor's Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Secured Parties' claims, liens, and interests contained in this Final Order shall be of full force and effect and forever binding upon the Debtor, the Debtor's estate, and all creditors, interest holders, and other parties in interest in this Chapter 11 Case and any Successor Case. Furthermore, if any such Challenge is timely and properly filed under the Bankruptcy Rules then (a) any claim or action that is not brought shall forever be barred and (b) the stipulations and admissions contained in this Final Order, including the Debtor's Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such Challenge prior to the Challenge Period Termination ~~Date~~Dates (and solely as to the plaintiff party that timely filed such Challenge and not, for the avoidance of doubt, any other party in interest). Nothing in this Final Order vests or confers on any person (as defined in section 101 of the Bankruptcy Code), including any Committee appointed in the Chapter 11 Case, standing or authority to pursue any cause of action belonging to the Debtor or its estates, including any challenges (including a Challenge) with respect to the Prepetition Liens and the Obligations, and a separate order of the Court conferring such standing on any Committee or other party in interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party in interest; *provided*, *however*, that nothing herein prohibits the Prepetition Secured Parties from contesting any request to obtain standing on any other grounds permitted by applicable law.  In the event a Committee is later appointed, the Debtor will negotiate the terms of an investigation budget



acceptable to the Debtor and the Committee.  For the avoidance of doubt, the roll up under the DIP Credit Agreement is subject in its entirety to the Challenge.

13.    11. Termination Declaration Date.  On the Termination Declaration Date, (a) all DIP Obligations shall be immediately due and payable and all New Money DIP Loan Commitments will terminate; (b) all authority to use Cash Collateral shall cease; *provided*, *however*, that during the Remedies Notice Period (as defined below), the Debtor may use Cash Collateral solely to fund the Carve Out and pay payroll and other expenses critical to the administration of the Debtor's estate strictly in accordance with the Approved Budget; and (c) the DIP Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Loan Documents in accordance with this Final Order.

14.    12. Events of Default.  The occurrence of any of the following events, unless waived by the Required DIP Lenders in accordance with the terms of the DIP Loan Documents, shall constitute an event of default (collectively, the "Events of Default"):  (a) the failure of the Debtor to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order, (b) the failure of the Debtor to comply with any of the Required Milestones (as defined below), or (c) the occurrence of an "Event of Default" under the DIP Credit Agreement, in each case unless waived by the Required DIP Lenders or DIP Agent, as applicable.

15.    13. Milestones.   The Debtor's failure to comply with those certain case milestones referred to in the definition of "In-Court Milestones" in the DIP Credit Agreement (collectively, the "Required Milestones") shall constitute an "Event of Default" in accordance with the terms of the DIP Credit Agreement unless waived by the Required DIP Lenders in accordance with the terms of the DIP Loan Documents.



16.    14.  Rights and Remedies Upon Event of Default.    Immediately upon the occurrence and during the continuation of an Event of Default or the Termination Declaration Date, unless such Event of Default has been waived by the DIP Agent or Required DIP Lenders, as applicable, of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from, the Court, subject to the terms of this Final Order and the Remedies Notice Period (defined below), (a) the DIP Agent may send a Carve Out Trigger Notice to the parties set forth in paragraph 8(b) declaring (i) all DIP Obligations owing under the DIP Loan Documents to be immediately accelerated and due and payable for all purposes, rights, and remedies, without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the Debtor, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtor to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Loan Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens, DIP Superpriority Claims or the DIP Obligations, (iv) the Carve Out shall be triggered, (v) the DIP Lenders shall be paid the DIP Termination Payment as provided in the DIP Loan Documents, and (vi) interest under the DIP Facility shall accrue at the default rate, as provided in the DIP Loan Documents and (b) subject to paragraph 8, the Prepetition Agent may declare a termination, reduction or restriction on the ability of the Debtor to use Cash Collateral. The automatic stay in the Chapter 11 Case otherwise applicable to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties is hereby modified so that five (5) business days after the Termination Declaration Date (the "Remedies Notice Period"):  (a) the DIP Agent shall be entitled to exercise its rights and remedies in accordance with the DIP Loan Documents and this Final Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject



to the Carve Out; and (b) subject to the foregoing clause (a), the applicable Prepetition Secured Parties shall be entitled to exercise their respective rights and remedies to the extent available in accordance with the Prepetition Credit Agreement and this Final Order with respect to the Debtor's use of Cash Collateral. During the Remedies Notice Period, the Debtor, the Committee (if any), and any other party in interest may seek relief from the Court with respect to whether an Event of Default has occurred or is occurring.

17.   ~~15.~~ Limitation on Charging Expenses Against Collateral.   No expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from (a) the DIP Collateral (except to the extent of the Carve Out), the DIP Agent, or the DIP Lenders or (b) the Prepetition Collateral (except to the extent of the Carve Out) or the Prepetition Secured Parties, in each case, pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties.

18.   ~~16.~~ Use of Cash Collateral.   Subject to the terms and conditions of this Final Order and in accordance with the Approved Budget, the Debtor is hereby authorized to use the Cash Collateral from the date of entry of this Final Order through and including the date of termination of the DIP Credit Agreement.

19.   ~~17.~~ Expenses and Indemnification.

(a)   The Debtor is hereby authorized to pay, in accordance with this Final Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP



Loan Documents as such amounts become due and without need to obtain further Court approval, including closing, arrangement, or commitment payments (including all payments and other amounts owed to the DIP Lenders), administrative agent's fees and collateral agent's fees (including all fees and other amounts owed to the DIP Agent and the Prepetition Agent), the reasonable and documented fees and disbursements of counsel and other professionals to the extent set forth in paragraph 3(d)(iii) and 7(h) of this Final Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Final Order or the DIP Loan Documents.  Notwithstanding the foregoing, the Debtor is authorized to pay on the Effective Date all reasonable and documented fees, costs, and expenses, including the fees and expenses of counsel to the DIP Lenders, the DIP Agent, the Prepetition Agent, and the Prepetition Secured Lenders, incurred on or prior to such date without the need for any professional engaged by the DIP Lenders, the DIP Agent, the Prepetition Agent, or the Prepetition Secured Lenders to be subject to the procedures set forth in paragraph 17(c).

(b)     The Debtor shall be obligated to pay all fees and expenses described above, which obligations owed to the DIP Secured Parties shall constitute DIP Obligations.  The Debtor shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in paragraphs 3(d)(iii) and 7(h) of this Final Order (collectively, the "<u>Lender Professionals</u>" and each, a "<u>Lender Professional</u>") no later than ten business days (the "<u>Review Period</u>") after the receipt by counsel for the Debtor, the Committee (if any), or the U.S. Trustee of each of the invoices therefor (the "<u>Invoiced Fees</u>") and without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines, including such amounts arising before the Petition Date.  Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of



the Chapter 11 Cases, and such invoice summary shall not be required to contain time entries, but shall include a ~~general, brief~~reasonably detailed description of the ~~nature of the matters for which~~ services ~~were performed~~provided and the expenses incurred by the applicable professional, which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.

(c)     The Debtor, the Committee (if any), or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, the Debtor, the Committee (if any), or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten days' prior written notice to the submitting party of any hearing on such motion or other pleading). Any hearing to consider such an objection to the payment of any fees, costs, or expenses set forth in a professional fee invoice hereunder shall be limited to the reasonableness of the fees, costs, and expenses that are the subject of the objection. For the avoidance of doubt, the Debtor shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

(d)     In addition, the Debtor hereby indemnifies and holds harmless the Prepetition Secured Parties and the DIP Secured Parties (and each of their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors,



controlling persons, and members of each of the foregoing) in respect of any claim or liability incurred in or related to negotiating, implementing, documenting, or obtaining requisite approvals of the DIP Facility or the use of Cash Collateral, including in respect of the granting of the Adequate Protection Liens and all documents related to and all transactions contemplated by the foregoing.

20. 18. **No Third-Party Rights**.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

21. 19. **Section 507(b) Reservation**.  This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtor or any other party to contest such request.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Cash Collateral during the Chapter 11 Case.

22. 20. **Perfection of the DIP Liens and the Adequate Protection Liens**.  With respect to the DIP Liens and the Adequate Protection Liens, the Prepetition Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments against the Debtor in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder.  Subject to paragraph 8 of this Final Order, whether the Prepetition Agent or the DIP Agent shall (at the direction of the applicable required lenders) choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments against



the Debtor, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination. If the Prepetition Agent or the DIP Agent (in each case at the direction of the applicable required lenders) determines to file or execute any financing statements, agreements, notice of liens, or similar instruments against the Debtor, the Debtor shall cooperate and assist in any such execution and/or filings as reasonably requested by the Prepetition Agent or the DIP Agent (in each case at the direction of the applicable required lenders), and the automatic stay shall be modified solely to allow such filings as provided for in this Final Order.

23.    21. A certified copy of this Final Order may (at the direction of the applicable required lenders) be filed with or recorded in filing or recording offices by the Prepetition Agent or the DIP Agent in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording; *provided*, *however*, that notwithstanding the date of any such filing, the date of such perfection shall be the date of entry of this Final Order.

24.    22. Preservation of Rights Granted Under this Final Order. In the event this Final Order or any provision hereof is reversed or modified on appeal, any liens or claims granted to the DIP Secured Parties or the respective Prepetition Secured Parties hereunder arising prior to the effective date of any such reversal or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the respective Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits afforded in section 364(e) of the Bankruptcy Code.



25.    ~~23.~~ Notwithstanding any order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a case under chapter 7 entered at any time, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, the Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations are indefeasibly paid in full in cash (otherwise satisfied in a manner agreed to by the Required DIP Lenders and the DIP Agent (acting at the direction of the Required DIP Lenders)).  To the fullest extent permitted by law, the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in the foregoing sentence.

26.    ~~24.~~ Subject to paragraph 8 of this Final Order and to the Carve Out, none of the DIP Liens or Adequate Protection Liens shall be made subject to or *pari passu* with any lien or security interest granted in any of the Chapter 11 Case or arising after the Petition Date, and none of the DIP Liens or the Adequate Protection Liens shall be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code.

27.    ~~25.~~ Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Cash Collateral.  Notwithstanding anything to the contrary set forth in this Final Order, none of the DIP Facility, the DIP Collateral, the Prepetition Collateral (including Cash Collateral), or the Carve Out or proceeds thereof may be used:  (a) to investigate (including by way of examinations or discovery proceedings), analyze, initiate, assert, prosecute, join, commence, threaten, support, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other



（header omitted）

litigation of any type (i) against any of the DIP Secured Parties or the Prepetition Secured Parties (each in their capacities as such), and each of their respective affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including any so-called "lender liability" claims and causes of action, or seeking relief that would impair the rights and remedies of the DIP Secured Parties or the Prepetition Secured Parties (each in their capacities as such) under the DIP Loan Documents, the Prepetition Credit Agreement, the Loan Documents, or this Final Order, including for the payment of any services rendered by the professionals retained by the Debtor or the Committee in connection with the assertion of or joinder in any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the DIP Secured Parties or the Prepetition Secured Parties to recover on the DIP Collateral, the Prepetition Collateral, or seeking affirmative relief against any of the DIP Secured Parties or the Prepetition Secured Parties related to the DIP Obligations or the Obligations; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Obligations or the Obligations, or the DIP Agent's, the DIP Lenders', or the Prepetition Secured Parties' liens or security interests in the DIP Collateral or the Prepetition Collateral, as applicable; or (iii) for monetary, injunctive, or other affirmative relief against the DIP Secured Parties or the Prepetition Secured Parties, or the DIP Agent's, the DIP Lenders', or the Prepetition Secured Parties' respective liens on or security interests in the DIP Collateral or the Prepetition Collateral, as applicable, that would impair the ability of any of the DIP Secured



Parties or the Prepetition Secured Parties, as applicable, to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations or the Obligations, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of each of the Prepetition Secured Parties related to the Obligations, respectively, or by or on behalf of the DIP Agent and the DIP Lenders related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any Avoidance Actions related to the DIP Obligations, the DIP Liens, the Obligations, or the Prepetition Liens; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of:  (x) any of the DIP Liens or any other rights or interests of the DIP Agent or the DIP Lenders related to the DIP Obligations or the DIP Liens or (y) any of the Prepetition Liens or any other rights or interests of any of the Prepetition Secured Parties related to the Obligations or the Prepetition Liens.

28.    26.  Reservation of Rights Under the Intercreditor Agreement.    Except as expressly provided in this Final Order, nothing in this Final Order shall amend, modify, or waive the terms or provisions of the Intercreditor Agreement, and all parties' rights and remedies under the Intercreditor Agreement are preserved.

29.    27. Conditions Precedent.  No DIP Lender shall have any obligation to make any DIP Loan under the respective DIP Loan Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Loan Documents have been satisfied in full or waived in accordance with such DIP Loan Documents.



30.    28. Use of DIP Facility Proceeds.  From and after the Petition Date, the Debtor shall be permitted to use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final Order and the DIP Loan Documents, and only in compliance with the Approved Budget, if required by the DIP Loan Documents, and the terms and conditions in this Final Order and the DIP Loan Documents.

31.    29. Repayment of DIP Superpriority Claims.  Notwithstanding anything to the contrary herein or in the other DIP Loan Documents, the Debtors shall indefeasibly pay to each holder of a DIP Superpriority Claim cash equal to the full amount of such DIP Superpriority Claim on the effective date of a chapter 11 plan, unless such holder of a DIP Superpriority Claim consents to a different treatment with respect to such DIP Superpriority Claim.    The requirements set forth in this paragraph 29 may not be amended without the prior written consent of each holder of a DIP Superpriority Claim adversely affected thereby.

32.    30. Proceeds of Subsequent Financing.  If the Debtor, any trustee, any examiner, or any responsible officer subsequently appointed in these Chapter 11 Case or any Successor Case, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations (other than unasserted contingent obligations that expressly survive termination of the DIP Loan Documents) and the termination of the DIP Lenders' obligations to extend credit under the DIP Facility, then, after satisfaction of the Carve Out, and unless otherwise agreed by the DIP Secured Parties, all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Secured Parties to be distributed in accordance with this Final Order and the DIP Loan Documents.



33.    31. Payments Held in Trust.  Except as expressly permitted in this Final Order or the DIP Loan Documents, including in respect of the Carve Out, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral or receives any DIP Collateral or any proceeds of DIP Collateral prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Loan Documents, and termination of the DIP Facility in accordance with the DIP Credit Agreement, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral and shall immediately turn over such proceeds to the DIP Secured Parties, for application in accordance with the DIP Credit Agreement and this Final Order.

34.    32. Binding Effect; Successors and Assigns.  The DIP Loan Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in this Chapter 11 Case, including the Debtor, the DIP Secured Parties, the Prepetition Secured Parties, any official committee appointed in the Chapter 11 Case, and each of their respective successors and permitted assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtor or with respect to the property of the estate of any of the Debtor in the Chapter 11 Case, any Successor Case, or upon dismissal of any Chapter 11 Case or Successor Case) to the extent permitted by applicable law and shall inure to the benefit of the DIP Secured Parties and the applicable Prepetition Secured Parties; *provided* that, except to the extent expressly set forth in this Final Order, the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the Debtor's estate.



35.    33. Limitation of Liability.  In determining to make any loan under the DIP Loan Documents or permitting the use of Cash Collateral, the DIP Secured Parties and the Prepetition Secured Parties shall not, solely by reason thereof, be deemed in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Further, nothing in this Final Order or in the DIP Loan Documents shall in any way be construed or be interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any Prepetition Secured Parties of any liability for any claims arising from the pre- or postpetition activities of the Debtor.

36.    34. Proofs of Claim.  Neither the Prepetition Agent, the Prepetition Secured Parties, the DIP Agent, nor the DIP Secured Parties will be required to file proofs of claim in the Chapter 11 Case, and the Debtor's Stipulations shall be deemed to constitute a timely filed proof of claim against the Debtor.

37.    35. No Marshaling.  The DIP Agent and the DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

38.    36. Equities of the Case.  The Prepetition Secured Parties shall be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code and have negotiated for, and the Debtor believes that Prepetition Secured Parties are entitled to, a waiver of the "equities of the case" exception under section 552(b) of the Bankruptcy Code, which shall not apply to the



Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the DIP Collateral (including the Prepetition Collateral).

39.    37. Necessary Actions.  The Debtor is authorized to take any and all actions as are reasonable or appropriate to implement the terms of this Final Order.

40.    38. Effect of this Final Order.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

41.    39. The requirements of Bankruptcy Rule 6004(a) are waived or are inapplicable due to Bankruptcy Rules 4001(b)(2) and (c)(2).

42.    40. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon entry of this Final Order.

43.    41. Headings.  All paragraph headings used in this Final Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

44.    42. Retention of Jurisdiction.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.



**<u>Exhibit A</u>**

**DIP Credit Agreement**

**Exhibit B**

**Publication Notice of Unknown Creditor**
**Challenge Period Termination Date**

*[Different first page link-to-previous setting changed from off in original to on in modified.].*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) |
| BYJU'S ALPHA, INC.,[1] | )     Case No. 24-10140 (JTD) |
| | ) |
| Debtor. | ) |
| | ) |

**NOTICE OF FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (III) GRANTING SENIOR POSTPETITION SECURITY INTERESTS, AND ACCORDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTIONS 364(C) AND 364(D) OF THE BANKRUPTCY CODE, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that, on March 26, 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered its *Final Order (i) Authorizing the Use of Cash Collateral, (ii) Authorizing the Debtor to Obtain Postpetition Financing, (iii) Granting Senior Postpetition Security Interests, and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, and (vi) Granting Related Relief* [Docket No. []] (the "Final DIP Order").[2]

**PLEASE TAKE FURTHER NOTICE**, that the Final DIP Order contains certain stipulations, admissions, waivers, and releases that were binding on the Debtor, its estate, and any of its respective successors in all circumstances and for all purposes, and the Debtor was deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date; *provided*, *however*, that the Debtor's stipulations, admissions, agreements, releases, and waivers contained in the Final DIP Order shall not apply to a chapter 7 or chapter 11 trustee until the Known Creditor Challenge Period Termination Date (defined below).  The stipulations, admissions, and waivers contained in the Final DIP Order, including the Debtor's Stipulations, shall be binding upon all other parties in interest, including any Committee and any other person acting on behalf of the Debtor's estate, unless and to the extent that a party in interest with proper standing granted by order of the Court, has timely and properly filed an adversary proceeding or contested matter under the Bankruptcy Rules (a) seeking to avoid, object to, or otherwise challenge the findings or the Debtor's Stipulations, including regarding:  (i) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of any of the Prepetition Secured Parties; (ii) the validity, enforceability, allowability, priority, secured status, or amount of the Obligations; (iii) asserting or prosecuting any so-called "lender liability" claims, avoidance actions, or any other claim, counter claim, cause of action, objection, contest or defense, of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable law, or otherwise, against any of the Prepetition Secured Parties or their respective representatives (any such claim, a "Challenge") and

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260).  The location of the Debtor's service address for purposes of this chapter 11 case is: 1007 N. Market St. Ste. G20 452, Wilmington, DE 19801..

[2] Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Final DIP Order.

*[Different first page link-to-previous setting changed from off in original to on in modified.].*

*[Link-to-previous setting changed from off in original to on in modified.].*
~~*[Different first page setting changed from off in original to on in modified.].*~~

(b) in which the Court enters a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed Challenge.

With respect to parties that were previously served with a copy of the Final DIP Order, and any Committee, a Challenge must be filed on or prior to 75 days following entry of the Interim Order (the "Known Creditor Challenge Period" and the date of expiration of the Known Creditor Challenge Period, the "Known Creditor Challenge Period Termination Date").  With respect to parties that were not served with a copy of the Final DIP Order, a Challenge must be filed on or prior to [May [], 2024] (the "Unknown Creditor Challenge Period" and the date of expiration of the Unknown Creditor Challenge Period, the "Unknown Creditor Challenge Period Termination Date").[3]

Upon the occurrence of the Challenge Period Termination Dates without the filing of a Challenge (or if any such Challenge is withdrawn or filed and overruled):  (w) any and all such Challenges by any party (including the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in the Chapter 11 Case, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever barred; (x) the Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Chapter 11 Case and any Successor Case; (y) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected liens and security interests, not subject to recharacterization, subordination, or avoidance; and (z) all of the Debtor's stipulations and admissions contained in the Final DIP Order, including the Debtor's Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Secured Parties' claims, liens, and interests contained in the Final DIP Order shall be of full force and effect and forever binding upon the Debtor, the Debtor's estate, and all creditors, interest holders, and other parties in interest in the Chapter 11 Case and any Successor Case.  Furthermore, if any such Challenge is timely and properly filed under the Bankruptcy Rules then (a) any claim or action that is not brought shall forever be barred and (b) the stipulations and admissions contained in the Final DIP Order, including the Debtor's Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such Challenge prior to the Challenge Period Termination Dates (and solely as to the plaintiff party that timely filed such Challenge and not, for the avoidance of doubt, any other party in interest).  Nothing in the Final DIP Order vests or confers on any person (as defined in section 101 of the Bankruptcy Code), including any Committee appointed in the Chapter 11 Case, standing or authority to pursue any cause of action belonging to the Debtor or its estates, including any challenges (including a Challenge) with respect to the Prepetition Liens and the Obligations, and a separate order of the Court conferring such standing on any Committee or other party in interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party in interest; *provided, however,* that nothing herein prohibits the Prepetition Secured Parties from contesting any request to obtain standing on any other grounds permitted by applicable law. For the avoidance of doubt, the roll up under the DIP Credit Agreement is subject in its entirety to the Challenge.

A copy of the Final DIP Order is may be downloaded from the Court's website at http://www.deb.uscourts.gov/.  A login and password to the Bankruptcy Court's Public Access to

---

[3]   The Known Creditor Challenge Period, together with the Unknown Creditor Challenge Period, shall collectively be referred to as the "Challenge Periods."  The Known Creditor Challenge Period Termination Date, together with the Unknown Creditor Challenge Period Termination Date, shall collectively be referred to as the "Challenge Period Termination Dates."

*[Link-to-previous setting changed from off in original to on in modified.].*

~~31332888.1~~
31332888.3

4895-6746-2493 v.2

*[Link-to-previous setting changed from off in original to on in modified.].*
*[Different first page setting changed from off in original to on in modified.].*

Electronic Records ("PACER") are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.gov.

Dated: March [], 2024                          **YOUNG CONAWAY STARGATT & TAYLOR,**
        Wilmington, Delaware                    **LLP**

                                                */s/* _____
                                                Robert S. Brady (Del. No. 2847)
                                                Kenneth J. Enos (Del. No. 4544)
                                                Jared W. Kochenash (Del. No. 6557)
                                                Timothy R. Powell (Del. No. 6894)
                                                1000 North King Street
                                                Wilmington, Delaware 19801
                                                Telephone: (302) 571-6600
                                                Facsimile: (302) 571-1253
                                                rbrady@ycst.com
                                                kenos@ycst.com
                                                jkochenash@ycst.com
                                                tpowell@ycst.com

                                                -and-

                                                QUINN EMANUEL URQUHART & SULLIVAN,
                                                LLP
                                                Susheel Kirpalani (admitted *pro hac vice*)
                                                Benjamin Finestone (admitted *pro hac vice*)
                                                Daniel Holzman (admitted *pro hac vice*)
                                                Jianjian Ye (admitted *pro hac vice*)
                                                51 Madison Avenue, 22nd Floor
                                                New York, New York 10010
                                                Tel.: (212) 849 7000
                                                susheelkirpalani@quinnemanuel.com
                                                benjaminfinestone@quinnemanuel.com
                                                danielholzman@quinnemanuel.com
                                                jianjianye@quinnemanuel.com

                                                *Counsel for the Debtor*

*[Link-to-previous setting changed from off in original to on in modified.].*
31332888.1
31332888.3
4895-6746-2493 v.2