## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE



**JOHN T. DORSEY**
**CHIEF JUDGE**

**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 533-3169**

August 8, 2024

*Plaintiff's and Defendants' counsel via CM/ECF*

    Re:  In re BYJU's Alpha, Inc., Case No. 24-10140 (JTD)

Dear Counsel,

    This letter is my ruling on *Camshaft's Motion to Dismiss Debtor's Chapter 11 Case* (the "**Motion**"), filed by Camshaft Capital Fund, LP, Camshaft Advisors, LLC, and Camshaft Capital Management (collectively, "**Camshaft**").[1]  For the reasons explained below, the Motion is denied.

## Background

    Debtor, BYJU's Alpha, Inc. ("**Debtor**") is a subsidiary of Think & Learn Pvt Ltd ("**T&L**"), a private limited company under the laws of India.  Debtor is a special purpose vehicle, created to serve as a borrower under a credit agreement (the "**Credit Agreement**") for a $1.2 billion term loan facility (the "**Loan**").  GLAS Trust Company LLC ("**GLAS**") acts as the Administrative and Collateral Agent under the Loan.

    Soon after executing the Credit Agreement, the Debtor and its affiliates defaulted and began transferring money to Camshaft.  Between April and July 2022, the Debtor transferred a total of $533,000,100.00 (the "**Funds**") to Camshaft.[2]  In exchange for the Funds, the Debtor received a limited partnership interest in Camshaft.

    On May 3, 2023, GLAS, at the direction of the lenders it represents, exercised remedies by accelerating the Loan, taking control of the Debtor, and replacing its sole director, Riju

---

[1] D.I. 107.
[2] Declaration of Timothy Pohl in Support of Debtor's Chapter 11 Petition ("**First Day Declaration**"), D.I. 3, ¶ 68.

Ravindran ("**Ravindran**") with Timothy Pohl ("**Pohl**").[3] Ravindran contested the validity of Pohl's appointment and refused to hand over any books and records of the Debtor to Pohl.[4]

On May 3, 2023, Pohl and GLAS filed an action in the Delaware Court of Chancery, seeking a declaration that the Lenders' exercise of remedies and Pohl's appointment were valid (the "**Section 225 Action**"). On May 22, 2023, the Delaware Court issued a *Status Quo Order*, directing Ravindran to immediately provide Pohl with access to the Debtor's accounts and documents and restricting the Debtor's ability to file for bankruptcy at the time (the "**Status Quo Order**").[5]

On September 5, 2024, with the Debtor's support, GLAS commenced an action against Camshaft in Florida (the "**Florida Action**") to avoid the $533 million fraudulent transfer to Camshaft.[6] The Florida Court denied GLAS's emergency motion to compel discovery and ordered that discovery proceed on an ordinary schedule. Camshaft moved to dismiss the action and stay discovery pending resolution of the motion to dismiss, which were set to be heard on February 2, 2024.

On November 2, 2023, the Delaware court announced its decision in the Section 225 Action, upholding the Lenders' exercise of remedies and the appointment of Pohl. On November 13, 2023, the Delaware Court entered its Final Order and Judgment and dissolved its *Status Quo Order*, which had previously restricted Pohl's authority to file the Debtor for bankruptcy.

On December 13, 2023, Ravindran appealed the Delaware Court's decision in the Section 225 Action, seeking to challenge Pohl's authority over the Debtor. *See Ravindran v. GLAS Trust Company LLC*, Case No. 463, 2023 (Del. Supr. 2023).

On February 1, 2024 (the "**Petition Date**"), the Debtor filed this Chapter 11 case. The Chapter 11 filing stayed the appeal of the Section 225 Action and the Florida Action.[7]

On February 2, 2024, the Debtor filed the Adversary Complaint, asserting claims for the avoidance and recovery of the $533 million transferred from the Debtor to Camshaft under both the Bankruptcy Code and Florida law.[8]

Shortly thereafter, Camshaft moved to dismiss the bankruptcy pursuant to Section 1112(b) of the Bankruptcy Code.

---

[3] First Day Declaration ¶¶ 49-50.
[4] First Day Declaration ¶¶ 60, 62, 64, 92.
[5] First Day Declaration ¶ 61.
[6] *Id.* ¶¶ 71-72.
[7] Motion ¶¶ 13-19.
[8] Complaint, Adv. D. I. 1.

**Discussion**

Section 1112(b) of the Bankruptcy Code provides that:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). When a party seeks to dismiss a filing under section 1112(b), the "burden is on the bankruptcy petitioner to establish good faith." *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009) (citation and quotation marks omitted).

The Third Circuit has emphasized two overarching principles when assessing good faith: the petition must serve a "valid bankruptcy purpose" and the bankruptcy cannot be "merely to obtain tactical litigation advantage. *In re SureFunding, LLC*, Nos. 20-10953 (LSS), 34, 2020 Bankr. LEXIS 1485, at *19 (Bankr. D. Del. June 2, 2020) (citing *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004)). An acceptable objective within the scope of bankruptcy includes maximizing property available to satisfy creditors. *In re Am. Cap. Equip., LLC,* 296 Fed. App'x. 270, 273 (3d Cir. 2008).

Ultimately, "[w]hether the good faith requirement has been satisfied is a 'fact intensive inquiry' in which the court must examine 'the totality of facts and circumstances' and determine where a 'petition falls along the spectrum ranging from the clearly acceptable to the patently abusive.'" *In re Integrated Telecom Express, Inc.*, 384 F.3d at 118 (quoting *Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.)*, 324 F.3d 197, 211 (3d Cir. 2001). "The focus of the inquiry is whether the petitioner sought 'to achieve objectives outside the legitimate scope of the bankruptcy laws' when filing for protection under Chapter 11." *Primestone Inv. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Inv. Partners L.P.)*, 272 B.R. 554, 557 (D. Del. 2001) (quoting *In re SGL Carbon*, 200 F.3d at 165). In conducting this inquiry, courts consider a number of factors, including whether the debtor: (a) has only a single asset; (b) has few unsecured creditors; (c) has no ongoing business or employees; (d) filed the petition on the eve of foreclosure; (e) is engaged in a two-party dispute which can be resolved in pending state court action; (f) has no cash or income; (g) has no pressure from non-moving creditors; (h) has filed a previous bankruptcy petition; (i) has engaged in improper prepetition conduct; (j) has no possibility of reorganization; (k) was formed immediately prepetition; or (l) filed solely to create automatic stay. *See Primestone Inv. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Inv. Partners L.P.)*, 272 B.R. 554, 557 (D. Del. 2002) (applying the above factors); *see also In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 298-99 (Bankr. D. Del. 2011) (same). Additionally, although a debtor's subjective intent is considered, good faith depends "more on [an] objective analysis of whether the debtor has sought to step outside the 'equitable limitations' of Chapter 11." *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 165 (3d Cir. 1999).

Camshaft argues that the balance of the factors weighs in favor of a finding of bad faith here, including that the Debtor only has a single asset, has few unsecured creditors, has no ongoing business, no pressure from non-moving creditors, and no cash or income. But Camshaft's primary argument is that this bankruptcy is nothing more than a two-party dispute that should be resolved in state court.  Specifically, Camshaft argues that the Debtor's chapter 11 case should be dismissed because it was filed for the sole purpose of obtaining a litigation advantage.[9]  In support of its position, Camshaft points to the fact that the Debtor filed its petition the day before a hearing was scheduled in the Florida Action.  Camshaft cites to *In re HBA E., Inc.*, where the court noted that "the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of filing was a litigation tactic, the petition may be dismissed[.]" 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988).  Camshaft further notes that the fraudulent transfer claims asserted here are the same as those asserted against Camshaft in the Florida Action and that the discovery sought in both actions is substantially the same.

The Debtor counters that the case was filed in good faith.  First, Debtor argues, the evidence shows that the Debtor was in financial distress.  It was left insolvent following the transfer of the Funds and its only viable source of funding was a DIP credit facility.  Second, the Debtor argues, the filing serves a valid bankruptcy purpose because it maximizes the value of the estate by staying ongoing litigation and allowing for the entry of a preliminary injunction that precludes further dissipation of assets.  Lastly, the Debtor argues, the balance of the *Primestone* factors weigh in favor of a finding of good faith here.  Specifically, Debtor notes that there is a possibility of reorganization, the petition was not filed on the eve of foreclosure, there was no previous bankruptcy petition, no improper prepetition conduct, and nothing suggesting the subjective intent of the debtor was to act in bad faith.  I agree.

The evidence before me establishes that the petition serves a valid bankruptcy purpose and was not merely filed to obtain a litigation advantage.  As noted above, the record suggests that the Debtor was in financial distress at the time of filing.[10] Camshaft has put forth no evidence to dispute that conclusion. As the Debtor's sole director, Mr. Pohl, explained, given the Debtor's insolvency and the total lack of cooperation from Debtor's former management, parent company, and Camshaft, filing for bankruptcy was a necessity as it was the only means available to obtain the funding and discovery needed to both get a complete understanding of what happened and access all available remedial options.[11]  Without it, the Debtor could not continue its investigation, its participation in existing litigation, or even its administration of the assets that remain.[12]  The bankruptcy will also allow for resolution of all issues regarding the Debtor's assets in a single forum, which will maximize efficiency and minimize the depletion of available assets.

---

[9] Motion, D.I. 107, at 11.
[10] First Day Declaration at 21-22.
[11] *Id.*
[12] *Id.*

The evidence also does not support the conclusion that the primary purpose of the Debtor's chapter 11 petition was to obtain a litigation advantage.  As Mr. Pohl testified, discussions regarding a potential bankruptcy began as soon as the restrictions contained in the Status Quo Order prohibiting a bankruptcy filing were lifted.[13]  Additionally, while there are some similarities between the bankruptcy and the Florida Action, the two cases are not the same.  Importantly, the Debtor is not even a party to the Florida Action. Furthermore, there is little evidence to support the assertion that Florida was likely to be an unfavorable forum for the Debtor, aside from the Florida Court's denial of GLAS's motion to expedite discovery.  The Florida Action was in its infancy when the Debtor's bankruptcy petition was filed and an inability to fast-track discovery simply does not evince the subjective bad faith intent that Camshaft suggests.

For these reasons, I find that the Debtor has established that this case was filed in good faith.  The Motion is therefore denied.[14]  The parties should submit an appropriate form of order under certification of counsel.

Sincerely,

*[signature]*

John T. Dorsey  
United States Bankruptcy Judge

---

[13] D.I. 3 at 28.

[14] Debtor also objected to the Motion on the basis that Camshaft lacked standing.  However, as a contingent creditor, Camshaft is a party in interest and has a right to be heard.  See *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 144 S. Ct. 1414 (2024) (discussing the meaning of the phrase "party in interest" and holding that "[t]he plain meaning of the phrase thus refers to entities that are potentially concerned with or affected by a proceeding.").