## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BYJU'S ALPHA, INC.,[1] | ) | Case No. 24-10140 (JTD) |
|  | ) |  |
|  | ) | **Re: Docket Nos. 5, 56 & 160** |
| Debtor. | ) |  |
|  | ) | **Proposed Hearing Date (Intercreditor Amendment Only) October 31, 2024, at 11:00 a.m. (ET)** |
|  | ) |  |
|  | ) | **Proposed Obj. Deadline (Intercreditor Amendment Only): At the Hearing** |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO (I)(A) AMEND THE DIP CREDIT AGREEMENT AND (B) AMEND THE INTERCREDITOR AGREEMENT, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor (the "<u>Debtor</u>") respectfully represents as follows in support of this motion:

### <u>Relief Requested</u>

1.      The Debtor seeks entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, authorizing the Debtor to enter into that certain *Amended and Restated Subordination and Intercreditor Agreement* (the "<u>Intercreditor Amendment</u>"), attached as <u>Exhibit 1</u> to **<u>Exhibit A</u>** hereto.  As set forth in the *Motion to Shorten Regarding Debtor's Motion for Entry of an Order Authorizing the Debtor to (i)(a) Amend the Dip Credit Agreement and (b) Amend the Intercreditor Agreement, and (ii) Granting Related Relief* filed contemporaneously herewith, the Debtor is requesting that the Intercreditor Amendment be approved at the omnibus hearing scheduled in the *In re Epic! Creations, Inc.*, Case No. 24-11161 (JTD) for October 31, 2024, at 11:00 a.m. (ET) (the "<u>Hearing</u>").  In addition, the Debtor seeks entry of an order, substantially in the form attached

---

[1]      The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260).  The location of the Debtor's service address is 16192 Coastal Highway, Lewes, Delaware 19958.

hereto as **Exhibit B**, authorizing the Debtor to enter into that certain *Amendment No. 1 to Superpriority Debtor-in-Possession Credit and Guaranty Agreement* (the "DIP Amendment"), attached as <u>Exhibit 1</u> to **Exhibit B** hereto, to (A) increase the size of the Debtor's debtor-in-possession financing facility (the "DIP Facility") by approximately $3.25 million, effective as of April 9, 2024, and (B) make certain technical modifications to the Roll-Up Loans without increasing the size thereof.[2]  The Debtor proposes to address scheduling issues regarding the DIP Amendment at the Hearing.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor confirms its consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Intercreditor Amendment, the DIP Amendment, or the Final DIP Order (as defined herein), as applicable.  The facts and circumstances supporting this motion and the relief requested herein can be found in the *Declaration of Timothy R. Pohl, Director, CEO, and Secretary of BYJU's Alpha, Inc., in Support of the Debtor's Chapter 11 Petition* [Docket Nos. 3 (sealed), 7 (redacted)] (the "First Day Declaration").

4.      The bases for the relief requested herein are sections 105(a), 363(b), and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 4001(c) and (d), 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 4001-2.

**Background**

5.      On February 1, 2024 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code (this "Chapter 11 Case") in the Court.  The Debtor is authorized to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committee has been appointed in this Chapter 11 Case, and no request has been made for the appointment of a trustee or an examiner.  Additional information regarding the Debtor, its capital structure, and the circumstances leading to the filing of this Chapter 11 Case is set forth in the First Day Declaration.

6.      On February 2, 2024, the Debtor filed a motion [Docket No. 5] (the "DIP Motion") seeking approval of the DIP Facility and use of cash collateral.  On February 8, 2024, the Court entered an interim order [Docket No. 56] authorizing the Debtor to, among other things, use cash collateral and provide adequate protection.  On April 8, 2024, the Court entered a final order [Docket No. 160] (the "Final DIP Order") authorizing, among other things, the Debtor to (a) incur up to approximately $278.75 million in postpetition financing on a final basis pursuant to that certain *Senior Secured Superpriority Debtor-in-Possession Credit and Guaranty Agreement* (the "DIP Credit Agreement"), attached to the Final DIP Order as Exhibit A, and (b) enter into the Intercreditor Agreement (and other DIP Loan Documents).

7.      On June 4, 2024, certain DIP Lenders filed involuntary petitions under chapter 11 of the Bankruptcy Code against Epic! Creations, Inc., Neuron Fuel, Inc., and Tangible Play, Inc. (collectively, the "Epic! Debtors") in the United States Bankruptcy Court for the District of

Delaware (the "Epic! Court").  On September 16, 2024, the Epic! Court entered the *Order for Relief in Involuntary Cases and Appointing Chapter 11 Trustee* [Epic! Docket No. 147] (the "Order for Relief") commencing the chapter 11 cases of the Epic! Debtors (the "Epic! Cases") and ordering the appointment of a chapter 11 trustee (the "Epic! Trustee").  Pursuant to the Order for Relief and upon the *Application of the United States Trustee for Entry of an Order Approving the Appointment of Claudia Z. Springer as Chapter 11 Trustee* [Epic! Docket No. 151], the Epic! Court entered the *Order Approving the Appointment of Claudia Z. Springer as Chapter 11 Trustee* [Epic! Docket No. 180].

### The DIP Amendment

8.     Under Section 10.2(b) of the DIP Credit Agreement, the DIP Credit Agreement may be amended or modified "pursuant to an agreement . . . in writing entered into by the Borrower and the Required Lenders or by the Borrower and the Administrative Agent with the consent of the Required Lenders . . . ."  The Borrower and the Administrative Agent, at the direction of the Required Lenders, have agreed to enter into the DIP Amendment, subject to this Court's approval, whereby the parties agreed to (a) upsize the DIP Facility by $3,250,352.64 consisting of (i) $1,083,450.88 in Prepetition Reimbursements converted into postpetition DIP Loans, effective as of April 9, 2024 (the "Effective Date" of the DIP Credit Agreement), and (ii) $2,166,901.76 of Roll-Up Loan capacity to be available in the event that a Roll-Up Notice is delivered in accordance with the terms of the DIP Credit Agreement, and (b) make certain technical modifications to the Roll-Up Loans in a manner that does not increase the size thereof or otherwise affect the rights of the Debtor.

**Local Rule 4001-2(a)(i) Summary of Principal Terms of the DIP Amendment**

| DIP Facility/Borrowing Limits<br>*Bankruptcy Rule 4001(c)(1)(B)* | DIP Facility upsized by approximately $3.25 million to approximately $282 million<br><br>Roll-Up Loans deemed to apply in accordance with and in the order set forth in Section 8.2 of the Prepetition Credit Agreement |
| --- | --- |

## I.    The DIP Upsize

9.    A central component of the DIP Credit Agreement was the conversion of Prepetition Reimbursements—amounts that the DIP Lenders expended on collection and enforcement efforts pursuant to that certain Cooperation Agreement, dated as of August 1, 2023 (the "Cooperation Agreement") prior to the closing of the DIP Facility—into postpetition DIP Loans on a dollar-for-dollar basis.  Recently, the DIP Lenders determined that $1,083,450.88 in Prepetition Reimbursements were not accounted for in the initial conversion of Prepetition Reimbursements into DIP Loans due to a timing issue.  More specifically, DIP Facility allocations were based on Prepetition Reimbursements funded by an established record date, but such reimbursements were not actually due in the ordinary course under the Cooperation Agreement until a later date.  Accordingly, certain DIP Lenders did not fund the Prepetition Reimbursements in time to be accounted for in the DIP Facility allocations, although each such DIP Lender did fund its pro rata share of the Prepetition Reimbursements shortly thereafter.  Such DIP Lenders, therefore, did not receive the benefit of those Prepetition Reimbursements under the DIP Facility despite having expended such amounts under the Cooperation Agreement—*i.e.*, such DIP Lenders did not receive the full benefit of the bargain they struck to provide postpetition financing in this Chapter 11 Case.

10.    The Debtor believes the upsize contemplated by the DIP Amendment is appropriate and in the best interests of its estate because the DIP Facility was negotiated with the DIP Secured Parties on the basis that all Prepetition Reimbursements—expenditures that the Debtor benefited

from through, among other things, the DIP Secured Parties' investigation and litigation work in advance of the Debtor filing the adversary proceeding (perhaps the estate's most valuable asset)— would be converted into DIP Loans.  Moreover, the ability of the DIP Lenders to elect to convert other obligations of the Debtor into Roll-Up Loans was an essential incentive to the DIP Lenders and a key component of the bargain between the DIP Secured Parties and the Debtor.  The DIP Amendment, therefore, will ensure that all parties obtain the benefit of their original bargain.

11.    In addition, the DIP Amendment will ensure that the Debtor maintains its productive working relationship with the DIP Secured Parties, which will be important because, among other things, adversary proceeding litigation remains underway, including collection of any judgment obtained therefrom, and it is likely there will be a future need for new money funding. Moreover, the DIP Amendment solely converts prepetition secured claims—which sit at the top of the Debtor's prepetition capital structure—into postpetition DIP Loans, thereby altering the priorities of these amounts among the lender group—which has consented to the DIP Amendment—without otherwise impacting other stakeholders.

## II.    The Roll-Up Loans Modification

12.    Pursuant to the Final DIP Order, each DIP Lender is entitled to convert (a) for every dollar of New Money DIP Loans and/or Bridge Loans held by such DIP Lender, up to seven dollars of Prepetition Secured Obligations held by such DIP Lender into Roll-Up Loans and (b) for every dollar of Prepetition Reimbursements held by such DIP Lender, up to two dollars of Prepetition Secured Obligations held by such DIP Lender into Roll-Up Loans, in each case if such DIP Lender delivers one or more Roll-Up Notices in accordance with the DIP Credit Agreement.

13.    The DIP Secured Parties have determined that it is necessary to modify the DIP Credit Agreement to clarify that, to the extent that a DIP Lender elects to deliver a Roll-Up Notice, the Prepetition Secured Obligations of such DIP Lender rolled up in connection therewith shall be

deemed to apply in accordance with and in the order set forth in Section 8.2 of the Prepetition Credit Agreement (Application of Funds). Specifically, no reduction of the Prepetition Secured Obligations of a lower priority set forth in Section 8.2 of the Prepetition Credit Agreement owing to such DIP Lender shall be deemed to have occurred until all Prepetition Secured Obligations of a higher priority owing to such DIP Lender have been rolled up in full. The Debtor believes that this technical modification to the Roll-Up Loans in the DIP Amendment does not affect its rights or obligations in any way, as the size of the Roll-Up Loans, and therefore the maximum DIP Obligations owing on account thereof, will be unchanged.

### The Intercreditor Amendment

14. As a separate matter, the Debtor understands that an agreement in principle has been reached between the Epic! Trustee, on behalf of the Epic! Debtors, and certain lenders (the "Epic! DIP Lenders")—largely encompassing the same population of lenders that makes up the DIP Lenders in this Chapter 11 Case—regarding the provision of postpetition financing in the Epic! Cases (the "Epic! DIP Facility"), subject to the approval of the Epic! Court. The Debtor understands that the Epic! Trustee's access to this financing is critical to fund the ongoing operating expenses of the Epic! Debtors and avoid immediate and irreparable harm.

15. In connection with entry into the Epic! DIP Facility, the Debtor understands that the DIP Lenders require that the Intercreditor Agreement—to which the Debtor is a signatory—be amended in a manner agreeable to the requisite Prepetition Secured Lenders, DIP Lenders, and Epic! DIP Lenders. Modifications to the Intercreditor Agreement require the consent of all parties thereto, including the Debtor. At a high level, the Intercreditor Amendment sets forth a revised distribution waterfall agreed among the requisite lenders that ensures that new money obligations arising in both this Chapter 11 Case and the Epic! Cases have the highest payment priority, roll-

up obligations arising in both cases have the next highest payment priority, and remaining prepetition obligations have the lowest payment priority.

16.     The Debtor has reviewed the proposed changes to the Intercreditor Agreement contemplated by the Intercreditor Amendment and has determined that such changes solely address intercreditor matters, specifically the relative distribution priorities of any recoveries in this Chapter 11 Case, the Epic! Cases, or otherwise in connection with the lenders' enforcement of the Prepetition Credit Agreement.  While the Intercreditor Amendment will affect the rights of the DIP Secured Parties (who have provided the requisite approval for the amendment), it does *not* seek to otherwise alter the terms and conditions of the DIP Credit Agreement, as approved by the Final DIP Order, and it will not alter the rights or obligations of the Debtor or other stakeholders. Accordingly, the Debtor requests authority to enter into the Intercreditor Amendment to facilitate the provision of the Epic! DIP Facility in the Epic! Cases.[3]

### Basis for Relief

**I.      Entry into the DIP Amendment and the Intercreditor Amendment Is a Reasonable Exercise of the Debtor's Business Judgment and Is in the Debtor's Best Interests.**

17.     Section 364 of the Bankruptcy Code governs a debtor's ability to secure postpetition financing.  11 U.S.C. § 364.  The Court has already approved the DIP Facility and determined that it satisfies the requirements of sections 364(c) and (d) of the Bankruptcy Code. The DIP Amendment (a) increases the size of the DIP Facility to properly account for the conversion of all Prepetition Reimbursements into postpetition DIP Loans and (b) makes certain technical clarifications regarding the application of the Roll-Up Loans without changing the size

---

[3]     To that end, the Debtor further notes Judge Shannon's offer at the status conference held in the Epic! Cases on October 7, 2024, to coordinate with this Court on the "strongly related" cases to the extent necessary, and believes this matter is ripe for coordination to ensure the efficient administration of both cases.  *See* 10/7/2024 Hr'g Tr. at 14:4–25, 15:1–16.  A copy of the status conference transcript is attached hereto as **Exhibit C**.

thereof or the Debtor's obligations in connection therewith.  These modifications have been accepted by the Debtor and the DIP Secured Parties to ensure a proper sizing of the DIP Facility and to provide administrative convenience to the DIP Secured Parties, in each case while maintaining goodwill between the parties and not otherwise impacting other stakeholders outside of the lender group.

18.    In a sound exercise of its business judgment, the Debtor has determined that the DIP Amendment will minimize potential disruptions and thereby maximize value for its estate, especially given that the Court has already approved the terms of the existing DIP Facility and use of cash collateral.  *See In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

19.    Moreover, section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code grants bankruptcy judges "broad authority," *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007), and should be interpreted "liberally" so long as any action taken pursuant thereto is "consistent with the rest of the Bankruptcy Code."  *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995).  Section 105(a) of

the Bankruptcy Code permits bankruptcy courts to "fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code." *In re Sadkin*, 36 F.3d 473, 478 (5th Cir. 1994) (citing *Chiasson v. Bingler (In re Oxford Management Inc.),* 4 F.3d 1329, 1333 (5th Cir. 1993)). The Debtor submits that approval of the DIP Amendment is justified under section 105(a) of the Bankruptcy Code because it will enable the Debtor to provide the DIP Secured Parties with the benefit of their bargain and build goodwill without negatively impacting other stakeholders. Accordingly, the Debtor respectfully requests that the Court approve the DIP Amendment.

20.     The Debtor further submits that approval of its entry into the Intercreditor Amendment is justified in its business judgment and pursuant to section 105(a) of the Bankruptcy Code because it will (a) ensure that the Epic! DIP Facility can be put in place in furtherance of enforcement and collection efforts under the Prepetition Credit Agreement, which was the impetus for the commencement of this Chapter 11 Case, (b) further inure to the goodwill between the Debtor and the DIP Lenders, which have directed the DIP Agent to approve the Intercreditor Amendment, and (c) allow for effective coordination across this Chapter 11 Case and the "strongly related" Epic! Cases, in each case without substantively changing any rights or obligations of the Debtor.

## II.     Waiver of Stay Period Under Bankruptcy Rule 6004(h) Is Appropriate.

21.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtor submits that there is no reason to delay the effectiveness of the order approving this motion.  The upsized DIP Facility will ensure that the DIP Secured Parties receive the benefit of the bargain originally contemplated under the DIP Facility without impacting stakeholders outside of the lender group.  Accordingly, waiver of the 14-day stay period under Bankruptcy Rule 6004(h) is appropriate.

**<u>Notice</u>**

22.     The Debtor will provide notice of this motion to: (a) Office of the United States Trustee for the District of Delaware; (b) counsel to GLAS; (c) counsel to the Epic! Trustee; and (d) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.


[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtor respectfully requests entry of the proposed orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: October 29, 2024
Wilmington, Delaware

/s/Kenneth J. Enos

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (Del. No. 2847)
Kenneth J. Enos (Del. No. 4544)
Jared W. Kochenash (Del. No. 6557)
Timothy R. Powell (Del. No. 6894)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
kenos@ycst.com
jkochenash@ycst.com
tpowell@ycst.com

- and -

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Susheel Kirpalani (admitted pro hac vice)
Benjamin Finestone (admitted pro hac vice)
Daniel Holzman (admitted pro hac vice)
Jianjian Ye (admitted pro hac vice)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel.: (212) 849 7000
susheelkirpalani@quinnemanuel.com
benjaminfinestone@quinnemanuel.com
danielholzman@quinnemanuel.com
jianjianye@quinnemanuel.com

*Co-Counsel to the Debtor*