# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BYJU'S ALPHA, INC.,[1] | Case No. 24-10140 (BLS) |
| Debtor. | |

## DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN FOR BYJU'S ALPHA, INC.

---

[1]    The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case is 1007 N. Market St. Ste. G20 452, Wilmington, DE 19801.

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

BACKGROUND .............................................................................................................4

I.  Procedural History. ................................................................................................4

II.  The Solicitation Process and Voting Results. ......................................................6

JURISDICTION AND VENUE .....................................................................................7

adequate notice of combined hearing .........................................................................7

ARGUMENT .................................................................................................................8

I.  The Disclosure Statement Should Be Approved on a Final Basis........................8

II.  The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code and
    Should Be Confirmed. ........................................................................................11

    A.  The Plan Meets All Applicable Requirements of the Bankruptcy Code. ..............11

        1.  The Plan Complies with the Applicable Provisions of the
            Bankruptcy Code (Section 1129(a)(1)).......................................................12

    B.  The Debtor Has Complied with the Applicable Provisions of the
        Bankruptcy Code (Section 1129(a)(2)).......................................................24

        1.  The Debtor Complied with the Disclosure and Solicitation
            Requirements of Section 1125. ................................................................25

        2.  The Debtor Satisfied the Plan Acceptance Requirements of Section
            1126.......................................................................................................26

    C.  The Plan Is Proposed in Good Faith and Not by Any Means Forbidden by
        Law (Section 1129(a)(3))........................................................................28

    D.  The Debtor Seeks to Pay Certain Professional Fees and Expenses Subject
        to Court Approval (Section 1129(a)(4)). .................................................29

    E.  The Debtor Complied with the Bankruptcy Code's Governance Disclosure
        Requirement (Section 1129(a)(5)). .........................................................29

    F.  The Plan Does Not Require Governmental Approval of Rate Changes
        (Section 1129(a)(6))...............................................................................30

    G.  The Plan Is in The Best Interests of Creditors and Interest Holders
        (Section 1129(a)(7))...............................................................................31

H.     The Plan can be Confirmed Notwithstanding the Requirements of Section 1129(a)(8). ........................................................................................32

I.      The Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Section 1129(a)(9)). ...........................33

J.      At Least One Impaired Class of Claims Accepted the Plan, Excluding the Acceptance of Insiders (Section 1129(a)(10)). .......................................34

K.     The Plan is Feasible (Section 1129(a)(11)). ............................................34

L.      The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)). ...............................................................................36

M.    Sections 1129(a)(13)–(16) are Inapplicable...........................................36

N.     Only One Plan to Be Confirmed. ............................................................37

O.     The Principal Purpose of The Plan is Not Avoidance of Taxes or Section 5 of the Securities Act (Section 1129(d)). ................................................37

P.      Section 1129(e) Does Not Apply to the Plan.........................................37

III.   The Plan Satisfies the "Cramdown" Requirements of Section 1129(b). ...........................38

A.     The Plan Does Not Unfairly Discriminate with Respect to Impaired Classes That Have Not Voted to Accept the Plan (Section 1129(b)(1))...............38

B.     The Plan Is Fair and Equitable with Respect to the Rejecting Classes (Section 1129(b)(2))...............................................................................40

IV.    The Waiver of a Stay of the Confirmation Order is Appropriate. ...................................41

A.     Good Cause Exists to Waive the Automatic Stay of the Confirmation Order. ......................................................................................................41

B.     Modifications to the Plan. ......................................................................42

CONCLUSION.............................................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 203 N. LaSalle St. Ltd. P'ship.*,
190 B.R. 567 (Bankr. N.D. Ill. 1995) ...................................................................38

*In re Ambanc La Mesa Ltd. P'ship*,
115 F.3d 650 (9th Cir. 1997) ...............................................................................39

*In re Armstrong World Indus., Inc.*,
348 B.R. 111 (D. Del. 2006)................................................................................11

*In re Aztec Co.*,
107 B.R. 585 (Bankr. M.D. Tenn. 1989) .............................................................39

*Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999).......................................................................................30, 40

*In re Bowles*,
48 B.R. 502 (Bankr. E.D. Va. 1985).....................................................................38

*In re Boylan Int'l, Ltd.*,
452 B.R. 43 (Bankr. S.D.N.Y 2011) .....................................................................42

*In re Burns & Roe Enters., Inc.*,
No. 08-4191 (GEB), 2009 WL 438694 (D.N.J. Feb. 23, 2009) ............................41

*Century Glove, Inc. v. First Am. Bank of N.Y.*,
860 F.2d 94 (3d Cir. 1988)....................................................................................9

*In re Chapel Gate Apartments, Ltd.*,
64 B.R. 569 (Bankr. N.D. Tex. 1986)...................................................................28

*In re Charter Commc'ns*,
419 B.R. 221 (Bankr. S.D.N.Y. 2009)..................................................................32

*In re Coastal Broad. Sys., Inc.*,
570 F. App'x 188 (3d Cir. 2014) ..........................................................................13

*Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*,
279 B.R. 145 (Bankr. D. Del. 2002) ......................................................................9

*In re Crdentia Corp.*,
Case No. 10-10926 (BLS), 2010 WL 3313383 (Bankr. D. Del. May 26, 2010)....35

*In re Dex One Corp.*,
No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013)................................................................43

*In re Exide Techs.*,
303 B.R. 48 (Bankr. D. Del. 2003) .......................................................................................22

*In re Freymiller Trucking, Inc.*,
190 B.R. 913 (Bankr. W.D. Okla. 1996) ...............................................................................38

*In re Future Energy Corp.*,
83 B.R. 470 (Bankr. S.D. Ohio 1988).....................................................................................28

*In re Gatehouse Media, Inc.*,
No. 13-12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) .........................................................43

*In re Geokinetics Inc.*,
No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013) ..........................................................43

*In re Glob. Safety Textiles Holdings LLC*,
No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009).............................41

*In re Greate Bay Hotel & Casino, Inc.*,
251 B.R. 213 (Bankr. D.N.J. 2000) .......................................................................................38

*In re GSE Envtl., Inc.*,
No. 13-11126 (MFW) (Bankr. D. Del. July 25, 2014) ..........................................................43

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) ......................................................................................21

*In re Jersey City Med. Ctr.*,
817 F.2d 1055 (3d Cir. 1987)................................................................................................13

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
987 F.2d 154 (3d Cir. 1993).............................................................................................13, 14

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987) ...........................39

*In re Lapworth*,
1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998)................................................................24

*Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Corp.)*,
150 F.3d 503 (5th Cir. 1998) ..................................................................................................9

*In re Madison Hotel Assocs.*,
749 F.2d 410 (7th Cir. 1984) ................................................................................................27

*Momentum Mfg. Corp. v. Emp. Creditors Comm.* (*In re Momentum Mfg. Corp.*),
   25 F.3d 1132 (2d Cir. 1994) ...................................................................................24

*N.L.R.B. v. Bildisco & Bildisco*,
   682 F.2d 72 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984) ........................................19

*In re NII Holdings, Inc.*,
   288 B.R. 356 (Bankr. D. Del. 2002) ......................................................................27

*In re Nuverra Env't Sols., Inc.*,
   590 B.R. 75 (D. Del. 2018) ..............................................................................12, 13

*In re Phoenix Petroleum Co.*,
   278 B.R. 385 (Bankr. E.D. Pa. 2001) ......................................................................9

*In re Physiotherapy Holdings, Inc.*,
   No. 13-12965 (KG) (Bankr. D. Del. Dec. 23, 2013) ..............................................43

*Platinum Cap., Inc. v. Sylmar Plaza, L.P.* (*In re Sylmar Plaza, L.P.*),
   314 F.3d 1070 (9th Cir. 2002) ...............................................................................27

*In re Revco D.S., Inc.*,
   131 B.R. 615 (Bankr. N.D. Ohio 1990) .................................................................35

*In re S & W Enter.*,
   37 B.R. 153 (Bankr. N.D. Ill. 1984) ......................................................................12

*In re Scioto Valley Mortg. Co.*,
   88 B.R. 168 (Bankr. S.D. Ohio 1988) ....................................................................10

*Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*,
   872 F.2d 36 (3d Cir. 1989) .....................................................................................19

*In re Smith*,
   357 B.R. 60 (Bankr. M.D.N.C. 2007), *appeal dismissed*, 2007 WL 1087575
   (M.D.N.C. Apr. 4, 2007) .......................................................................................30

*In re Source Home Entm't, LLC*,
   No. 14-11553 (KG) (Bankr. D. Del. Feb. 20, 2015) ..............................................43

*In re Trans World Airlines, Inc.*,
   261 B.R. 103 (Bankr. D. Del. 2001) ......................................................................19

*In re Tribune Co.*,
   476 B.R. 843 (Bankr. D. Del. 2012) ......................................................................13

*In re Wash. Mut., Inc.*,
   442 B.R. 314 (Bankr. D. Del. 2011) ................................................................22, 23

*In re Worldcom, Inc.*,
   2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ............................................24

*In re Zenith Elecs. Corp.*,
   241 B.R. 92 (Bankr. D. Del. 1999) ........................................................................38

**Statutes**

11 U.S.C. 1123(a)(6) .............................................................................................16

11 U.S.C. 1126(c) .................................................................................................26

11 U.S.C. 1126(f) .................................................................................................26

11 U.S.C. 1126(g) ................................................................................................26

11 U.S.C. § 101(31) .............................................................................................29

11 U.S.C. § 1114(e) .............................................................................................36

11 U.S.C. § 1122(a) .............................................................................................12

11 U.S.C. § 1123(a)(1) .........................................................................................15

11 U.S.C. § 1123(a)(2) .........................................................................................15

11 U.S.C. § 1123(a)(3) .........................................................................................15

11 U.S.C. § 1123(a)(4) .........................................................................................15

11 U.S.C. § 1123(a)(5) .........................................................................................16

11 U.S.C. § 1123(a)(6) ....................................................................................16, 20

11 U.S.C. § 1123(a)(7) .........................................................................................17

11 U.S.C. § 1123(b)(1)–(3), (6) ..................................................................... *passim*

11 U.S.C. § 1123(b)(3)(A) ....................................................................................20

11 U.S.C. § 1125(a)(1) ...........................................................................................8

11 U.S.C. § 1126 ........................................................................................6, 25, 26

11 U.S.C. § 1129(a)(4) .........................................................................................28

11 U.S.C. § 1129(a)(5)(A)(i) ................................................................................29

11 U.S.C. § 1129(a)(5)(A)(ii) ...............................................................................29

11 U.S.C. § 1129(a)(5)(B) ...................................................................................................29

11 U.S.C. § 1129(a)(7)(A) ...................................................................................................30

11 U.S.C. § 1129(a)(10) .......................................................................................................34

11 U.S.C. § 1129(a)(11) ..................................................................................................34, 35

11 U.S.C. § 1129(b)(2) .........................................................................................................40

11 U.S.C. § 1129(b)(2)(B)(ii) ..............................................................................................40

11 U.S.C. § 1129(b)(2)(C)(ii) ..............................................................................................40

15 U.S.C. §§ 77a–77aa .........................................................................................................37

28 U.S.C. § 157(b)(2)(A), (L), and (O) .................................................................................7

28 U.S.C. § 1334(b) ...............................................................................................................7

28 U.S.C. § 1408 ....................................................................................................................7

28 U.S.C. § 1409 ....................................................................................................................7

28 U.S.C. § 1930 ..................................................................................................................35

Securities Act of 1933, Chapter 38, § 5, 48 Stat. 74, 77-78 ...............................................37

**Other Authorities**

S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 ...................................12

S. Rep. No. 989, 95th Cong., 2d Sess. (1978) ....................................................................24

The above-captioned debtor (the "**Debtor**") submits this memorandum of law (this "**Memorandum**") in support of confirmation of the *Amended Combined Disclosure Statement and Chapter 11 Plan of BYJU's Alpha, Inc.*, dated September 16, 2025 [D.I. 475] (as further modified, amended, or supplemented from time to time in accordance with its terms, the "**Combined Plan and Disclosure Statement**" or "**Plan**" or "**Disclosure Statement**" as the context indicates).[2] In support of final approval of the Disclosure Statement and confirmation of the Plan, the Debtor respectfully states as follows:[3]

## INTRODUCTION

1.      The Debtor, BYJU's Alpha, Inc., a Delaware corporation, was created as an indirect wholly owned subsidiary of Think & Learn Private Ltd. ("**T&L**"), an Indian corporation founded with the stated purpose to bring educational software and access to children across the globe. T&L formed the Debtor to raise funds from prominent Western investors for the stated purpose of international expansion.

2.      In November 2021, the Debtor borrowed $1.2 billion in term loans under that certain credit and guaranty agreement, dated as of November 24, 2021 (as amended, supplemented, restated, or otherwise modified from time to time, the "**Prepetition Credit Agreement**"). The loan parties to the Prepetition Credit Agreement included T&L (as parent guarantor), the Debtor (as borrower), various T&L affiliates and subsidiaries as guarantors, the lenders from time to time

---

[2]    Capitalized terms used but not otherwise defined in this Memorandum have the meanings set forth in the Combined Plan and Disclosure Statement.

[3]    The facts and circumstances supporting the confirmation of the Plan are set forth in, among other things, the *Declaration of Timothy R. Pohl, Director, CEO, and Secretary of BYJU's Alpha, Inc., in Support of Final Approval and Confirmation of the Amended Combined Disclosure Statement and Chapter 11 Plan of BYJU's Alpha, Inc.* (the "**Pohl Declaration**"), and the *Declaration of Brenda S. Walters of Young Conaway Stargatt & Taylor, LLP, Regarding the Tabulation of Ballots Cast on the Combined Disclosure Statement and Chapter 11 Plan of BYJU's Alpha, Inc.* (the "**Voting Report**"), each of which is incorporated herein by reference.

party thereto (the "**Prepetition Term Loan Lenders**"), and GLAS Trust Company LLC, as administrative agent and collateral agent (the "**Prepetition Agent**").

3.        Within four months of entering into the Prepetition Credit Agreement, by March 16, 2022, the Debtor was in default. Following a series of additional defaults and repeated forbearances, the Prepetition Term Loan Lenders directed the Prepetition Agent to exercise remedies, including by accelerating the loan obligations, taking ownership of the pledged common stock in the Debtor, and appointing Timothy R. Pohl as director of the Debtor. Mr. Pohl was then appointed as the Debtor's sole officer. Thereafter, Mr. Pohl discovered that the Debtor's former management had transferred $533 million (the "**Alpha Funds**") away from the Debtor. As a result, the Debtor initiated this Chapter 11 Case with the aim of maximizing the value of the Debtor's estate for the benefit of its stakeholders, an important component of which was to efficiently investigate and pursue the recovery of the Alpha Funds in a single forum.

4.        On February 1, 2024, the Debtor filed its voluntary chapter 11 petition in this Bankruptcy Court.

5.        As described in greater detail in the Disclosure Statement, during the pendency of the Chapter 11 Case, the Debtor initiated and prosecuted three adversary proceedings to recover the Alpha Funds and the proceeds thereof and furthermore hold the wrongdoers involved in the fraudulent transfers accountable, the status of which is summarized below:

- The Camshaft Adversary.  On April 24, 2024, the Debtor filed the *Second Amended Complaint for Avoidance and Recovery of Fraudulent Transfers, Breach of Fiduciary Duties, Aiding and Abetting Breach of Fiduciary Duties, Accounting, Declaratory Judgment, Turnover of Property, Conversion, and Violation of Automatic Stay* (the "**Second Amended Complaint**"). On July 8, 2024, the Debtor and the Prepetition Agent filed the *Debtor's and GLAS Trust Company LLC's Motion for Partial Summary Judgment on Counts I, II, IV, VIII, and X of the Second Amended Complaint* (the "**PMSJ**"). On February 27, 2025, the Bankruptcy Court granted the PMSJ, pursuant to its *Memorandum Opinion*. On March 14, 2025, the Bankruptcy Court entered its *Judgment Order* (the "**Alpha Funds Judgment**

**Order**"), finding that, among other things: (i) the transfer of the Alpha Funds to Camshaft Fund was an actual fraudulent transfer and avoided under sections 544(b) and 548(a)(1)(A) of the Bankruptcy Code; (ii) Camshaft Fund is liable to the Debtor and the Prepetition Agent in the amount of $533 million, plus interest and costs; (iii) the transfer of the limited partnership interest in Camshaft Fund to Inspilearn, for the benefit of T&L, was an actual fraudulent transfer and is avoided under sections 544(b) and 548(a)(1)(A) of the Bankruptcy Code; and (iv) Inspilearn and T&L are jointly and severally liable to the Debtor and the Prepetition Agent in the amount of $540,647,109.20, plus interest and costs.

- <u>Raveendran Adversary.</u> On April 9, 2025, the Debtor initiated the Raveendran Adversary against Byju Raveendran (former self-appointed CEO of the Debtor and co-founder and former CEO and board member of T&L), Divya Gokulnath (wife of Raveendran and co-founder and former director of T&L), and Anita Kishore (Chief Strategy Officer and *de facto* CFO of T&L) in connection with their involvement in the illegal transfers of the Alpha Funds and Camshaft LP Interest. Specifically, the Debtor brought claims for (1) aiding and abetting Riju Ravindran's breaches of fiduciary duty against Mr. Raveendran and Ms. Gokulnath, (2) a principal claim of breach of fiduciary duty against Mr. Raveendran, (3) aiding and abetting Mr. Raveendran's breach of fiduciary duty against Ms. Kishore, (4) accounting against all defendants, and (5) conversion against all defendants. The Prepetition Agent filed a motion to intervene on April 21, 2025, which was granted on May 7, 2025. On May 9, 2025, the Bankruptcy Court granted the Debtor's Motion for Limited Expedited Discovery of Mr. Raveendran, and, on June 29, 2025, held Mr. Raveendran in contempt for failing to comply with this and a related discovery order. Mr. Raveendran moved to have the Bankruptcy Court reconsider its contempt order on July 14-15, 2025. All three defendants moved to dismiss the complaint against them on July 25-26, 2025. The Debtor and the Prepetition Agent moved for judgment against Mr. Raveendran under Bankruptcy Rule 7037 on August 11, 2025 (the "**Rule 7037 Motion**"). Oral argument on Mr. Raveendran's motions and the Rule 7037 Motion occurred on September 9 and 29, 2025, and the parties are awaiting the Bankruptcy Court's rulings.

- <u>OCI Adversary</u>. On May 5, 2025, the Debtor initiated the OCI Adversary against OCI and Rupin Banker. OCI was a subsequent transferee of the mid-2022 transfer of the Alpha Funds, which have been avoided under the Alpha Funds Judgment Order. Therefore, the Debtor seeks to recover from OCI under section 550 of the Bankruptcy Code. The Debtor has also asserted claims against both OCI and Mr. Banker for aiding and abetting each of Camshaft's, T&L's, and Mr. Ravindran's breaches of their fiduciary duties. The Prepetition Agent filed a motion to intervene as a plaintiff on May 27, 2025, which was granted on July 8, 2025. OCI filed a motion to dismiss the complaint on July 14, 2025. Mr. Banker filed a motion to dismiss the complaint on September 5, 2025. Both motions are fully briefed.

6.      The Debtor is now proposing the Plan, which will enable the Wind-Down Debtor to continue the Debtor's efforts to locate and recover the Alpha Funds, building on the work accomplished during the Chapter 11 Case. Under the Plan, the Plan Administrator, on behalf of the Wind-Down Debtor, will enter into the Wind-Down Financing Facility to obtain the necessary funding to continue this work. On the effective date, the DIP Term Loans giving rise to the Allowed DIP Claims shall be rolled into the Wind-Down Financing Facility in accordance with the Plan, the Final DIP Order, the DIP Credit Agreement, and the Definitive Documentation, and each holder of an Allowed DIP Claim will receive a *pro rata* share of the Wind-Down Financing Facility Roll-Over Term Loans under such Wind-Down Financing Facility.

7.      After the Effective Date, under the oversight of the Plan Administrator, the Wind-Down Debtor will continue investigating and pursuing legal actions against those individuals and entities complicit in the intricate scheme surrounding the illegal transfers of the Alpha Funds and the proceeds thereof, and any others who may be in possession of Debtor assets or may otherwise be liable to the Debtor. While confirmation of the Plan marks the conclusion of one component of the Chapter 11 Case, it is just one step among many in the Debtor's ongoing efforts to maximize value for its creditors. The only voting class, Class 3, the Debtor's secured lenders, has voted in favor of the Plan.

8.      For the reasons set forth herein and on the record that the Debtor will establish at the Confirmation Hearing, the Debtor respectfully requests that the Bankruptcy Court confirm the Plan.

## BACKGROUND

### I.      Procedural History.

9.      As set forth above, on February 1, 2024, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. [D.I. 1]. The Debtor is managing its property as

debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Additional information regarding the Debtor, its capital structure, and the circumstances leading to the filing of this Chapter 11 Case is set forth in the *Declaration of Timothy R. Pohl, Director, CEO, and Secretary of BYJU's Alpha, Inc., in Support of the Debtor's Chapter 11 Petition* [D.I. 3 (sealed), 7 (redacted)].

10.     On September 16, 2025, the Debtor filed the Combined Plan and Disclosure Statement. That same day, the Bankruptcy Court entered the *Order (I) Approving the Combined Plan and Disclosure Statement on an Interim Basis for Solicitation Purposes Only, (II) Establishing Solicitation and Voting Procedures, (III) Approving the Form of Ballots and Solicitation Materials, (IV) Establishing the Voting Record Date, (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadlines for Filing Confirmation Objections, and (VI) Granting Related Relief* [D.I. 478] (the "**Disclosure Statement Order**"). The Disclosure Statement Order approved, among other things, the proposed procedures for solicitation of the Plan and related notices, forms, and ballots (collectively, the "**Solicitation Packages**").

11.     On October 14, 2025, the Debtor filed the *Notice of Filing of Plan Supplement* [D.I. 503] (the "**Plan Supplement**").

12.     The deadline for all holders of Claims entitled to vote on the Plan to cast their ballots was October 19, 2025, at 4:00 p.m. (prevailing Eastern Time) (the "**Voting Deadline**"). The deadline to file objections to the Plan was October 22, 2025, at 4:00 p.m. (prevailing Eastern Time). A combined hearing to consider (i) final approval of the Disclosure Statement and the Combined Plan and Disclosure Statement Summary as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and (ii) confirmation of the Plan (the "**Confirmation Hearing**") is scheduled for October 29, 2025, at 10:00 a.m. (prevailing Eastern

Time). Concurrently with the filing of this Memorandum, the Debtor has submitted a proposed

order confirming the Plan (the "**Confirmation Order**").

13.     No formal objections were filed with respect to the adequacy of the Disclosure

Statement or confirmation of the Plan. The Debtor has worked collaboratively with various key

constituents, including the U.S. Trustee and the Prepetition Term Loan Lenders to incorporate their

comments to the Combined Plan and Disclosure Statement.

## II.     The Solicitation Process and Voting Results.

14.     The Debtor solicited the Plan in accordance with the Disclosure Statement Order.

15.     On September 25, 2025, the Publication Notice was published in the *Wall Street

Journal*. An affidavit evidencing the publication of the Publication Notice was filed with the

Bankruptcy Court on September 25, 2025 [D.I. 487].

16.     In accordance with the Bankruptcy Code, only Holders of Claims in Impaired

Classes receiving or retaining property on account of such Claims were entitled to vote on the

Plan.[4] Holders of Claims and Interests were not entitled to vote if their rights are: (a) Unimpaired

by the Plan; or (b) Impaired by the Plan such that they will receive no distribution of property

under the Plan. As a result, the following Classes of Claims and Interests were not entitled to vote

on the Plan, and the Debtor did not solicit votes from Holders of such Claims and Interests:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 - Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 - Other Priority Claims | Unimpaired | Presumed to Accept |
| Class 4 - General Unsecured Claims | Impaired | Deemed to Reject |
| Class 5 - Intercompany Claims | Impaired | Deemed to Reject |
| Class 6 - 510(b) Claims | Impaired | Deemed to Reject |

---

[4]     *See* 11 U.S.C. § 1126.

| Class | Status | Voting Rights |
|---|---|---|
| Class 7 - Interests | Impaired | Deemed to Reject |

17.     The Debtor solicited votes on the Plan from Holders of Claims in Class 3, the only class of Impaired Classes receiving or retaining property on account of such Claims. The voting results, as reflected in the Voting Report, are summarized as follows:

| Class | Total Ballots Received by the Prepetition Agent | | | | Class Voting Result |
|---|---|---|---|---|---|
| | Accept | | Reject | | |
| | Amount | Number | Amount | Number | |
| Class 3 – Prepetition Term Loan Claims | $1,151,639,766.29 (100%) | 58 (100%) | $0 (0.00%) | 0 (0.00%) | ACCEPT |

18.     In sum, Class 3, the only voting Class, voted to accept the Plan pursuant to the Master Ballot submitted by the Agent, which reflected the votes of all beneficial interest holders to accept the Plan.

19.     On October 27, 2025, the Debtor filed the Voting Report [D.I. 509].

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. § 1334(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L), and (O), and the Bankruptcy Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

## ADEQUATE NOTICE OF COMBINED HEARING

21.     In accordance with Bankruptcy Rules 2002, 6006, 9007, and 9014, the Disclosure Statement Order, the Combined Hearing Notice and the solicitation procedures set forth therein, adequate notice of (a) the time for filing objections to confirmation of the Plan and final approval

7

of the Disclosure Statement; (b) the transactions, settlements, and compromises contemplated thereby; and (c) the Combined Hearing was provided to all holders of Claims and Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules. No other or further notice of the Combined Hearing is necessary or required.

## ARGUMENT

### I.      The Disclosure Statement Should Be Approved on a Final Basis.

22.      Section 1125(b) of the Bankruptcy Code requires that, before soliciting votes on a plan, the plan proponent must provide a disclosure statement that contains adequate information regarding the proposed plan. Section 1125(a) defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.[5]

23.      The amount and type of information required to satisfy section 1125(a) must be determined case-by-case. The legislative history of section 1125 indicates that the threshold of what constitutes "adequate information" is flexible and based on the circumstances of each case.[6] Courts also have broad discretion to determine what constitutes adequate information necessary to satisfy the requirements of section 1125(a).[7] This grant of discretion was intended to facilitate the

---

[5]      *See* 11 U.S.C. § 1125(a)(1).

[6]      H.R. Rep. No. 95-595, at 409 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6364.

[7]      *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("The general language of the statute and its surrounding legislative history make clear that the determination of what is adequate information is subjective and made on a case-by-case basis. This determination is largely within the discretion of the bankruptcy court.") (internal quotations omitted).

effective emergence from chapter 11 in the broad range of businesses in which chapter 11 debtors engage.[8] A disclosure statement must provide creditors entitled to vote on the plan with information that is "reasonably practicable" to permit an "informed judgment."[9] The general purpose of the disclosure statement is to set forth sufficient facts to permit a creditor to make an informed evaluation of the merits of the plan.[10]

24.    Bankruptcy courts are afforded broad discretion in determining whether a disclosure statement contains adequate information.[11] Accordingly, the determination of the adequacy of information in a disclosure statement must be made on a case-by-case basis, focusing on the unique facts and circumstances of the relevant case. In that regard, courts generally examine whether a disclosure statement contains, if applicable, the following types of information:

- the circumstances that gave rise to the filing of the bankruptcy petition;

- a description of the available assets and their value;

- the anticipated future of the debtor;

- the sources of information provided in the disclosure statement;

- the condition and performance of the debtor while in chapter 11;

- information regarding claims against the estate;

- a liquidation analysis setting forth the estimated return that creditors would receive if the debtor's bankruptcy case were a case under chapter 7 of the Bankruptcy Code;

---

[8]    *See* H.R. Rep. No. 95-595, at 408–409 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6364–65.

[9]    *Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 158 n.26 (Bankr. D. Del. 2002).

[10]    *See Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988); *Phoenix Petroleum*, 278 B.R. at 392.

[11]    *See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Corp.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("[I]n determining what constitutes 'adequate information' with respect to a particular disclosure statement, '[b]oth the kind and form of information are left essentially to the judicial discretion of the court . . . the information required will necessarily be governed by the circumstances of the case.'") (quoting S. Rep. No. 95-989, at 121 (1978)); *cert. denied*, 119 S. Ct. 2019 (1999).

- the accounting and valuation methods used to produce the financial information in the disclosure statement;

- information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors or officers of the debtor;

- a summary of the chapter 11 plan;

- an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

- financial information that would be relevant to creditors' determinations of whether to accept or reject the plan;

- information relevant to the risks being taken by the creditors and interest holders;

- the tax consequences of the plan; and

- the relationship of the debtor with its affiliates.[12]

This list is not meant to be exhaustive, nor do courts require all the information on this list to be included in a disclosure statement. Rather, the court must decide what information is appropriate in each case.

25.    Here, the Combined Plan and Disclosure Statement contains adequate information, as required by section 1125, so that creditors were able to make an informed decision in voting to accept or reject the Plan. The Combined Plan and Disclosure Statement is comprehensive and contains the type of information described above. Specifically, the Combined Plan and Disclosure Statement includes: (a) significant events preceding and during the Debtor's Chapter 11 Case; (b) the Debtor's prepetition operations and capital structure; (c) the Debtor's efforts to locate the Alpha funds; (d) work to stabilize the business; (e) the designation and treatment of Claims and Interests under the Plan; (f) a detailed description of the method to fund the Plan and make

---

[12]    *See, e.g.*, *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988).

Distributions to creditors under the Plan; (g) a description of the nature and extent of likely claims against the Estate, including administrative claims; (h) provisions governing releases, injunctions, exculpations, and Retained Causes of Action; (i) the risk factors affecting the Plan; (j) the federal tax consequences related to the Combined Plan and Disclosure Statement; (k) a summary of the Combined Plan and Disclosure Statement's structure; (l) the conditions precedent for confirmation and effectiveness of the Combined Plan and Disclosure Statement; (m) the voting and confirmation procedures; and (n) a summary of the Bankruptcy Code and other requirements for confirmation.

26.     Accordingly, the Debtor submits that the proposed Disclosure Statement, as supplemented, contains more than sufficient detail to permit holders of Claims entitled to vote on the Plan to make an informed judgment on whether to accept or reject the Plan and should therefore be approved on a final basis.

## II.     The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code and Should Be Confirmed.

### A.     The Plan Meets All Applicable Requirements of the Bankruptcy Code.

27.     To confirm the Plan, the Bankruptcy Court must find that the Plan satisfies the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[13] The Debtor submits, based on the record of this Chapter 11 Case, the Walters Declaration, the Voting Report, and the Debtor's arguments set forth herein, that the applicable burden is clearly satisfied and the Plan complies with all relevant sections of the Bankruptcy Code (in particular, sections 1122, 1123, 1125, 1126, and 1129), the Bankruptcy Rules, and all other applicable law. The Plan far exceeds the preponderance of the evidence standard set forth in the Bankruptcy Code and will

---

[13]   *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (D. Del. 2006) ("[T]he debtor's standard of proof that the requirements of § 1129 are satisfied is preponderance of the evidence.").

be further supported by evidence that will be submitted at the Confirmation Hearing. The Debtor thus respectfully requests that the Bankruptcy Court confirm the Plan.

> **1.      The Plan Complies with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1)).**

28.      Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of the Bankruptcy Code.[14] The principal objective of section 1129(a)(1) is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan.[15] Consequently, the determination of whether the Plan complies with section 1129(a)(1) requires an analysis of sections 1122 (governing the classification of claims and interests) and 1123 (dictating the contents of a plan) of the Bankruptcy Code. As explained below, the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1), including sections 1122 and 1123 of the Bankruptcy Code.

> **a.   The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.**

29.      Section 1122 of the Bankruptcy Code provides that "[e]xcept as otherwise provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[16] For a classification structure to satisfy section 1122 of the Bankruptcy Code, substantially similar claims

---

[14]    11 U.S.C. § 1129(a)(1).

[15]    The legislative history of section 1129(a)(1) explains that this provision is intended to draw in the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a plan, respectively. S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *In re S & W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was more directly aimed at were Sections 1122 and 1123.").

[16]    11 U.S.C. § 1122(a).

or interests need not be grouped in the same class.[17] Instead, claims or interests placed in a particular class must be substantially similar to each other.[18] Courts in this jurisdiction and others have recognized that plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis for doing so.[19]

30.     The Third Circuit "permits the grouping of similar claims in different classes[]" as long as those classifications are reasonable.[20] The classifications, however, cannot be "arbitrarily designed" to secure the approval of an impaired class when "the overwhelming sentiment of the impaired creditors [i]s that the proposed reorganization of the debtor would not serve any legitimate purpose."[21] Separate classes of similar claims are reasonable when each class represents "a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed."[22]

31.     Because claims only need to be "substantially" similar to be placed in the same class, plan proponents have broad discretion in determining to classify claims. Courts have identified several grounds justifying the separate classification of claims, including: (a) where members of a class possess different legal rights; and (b) where sound business reasons support

---

[17]     *See, e.g.*, *In re Nuverra Env't Sols., Inc.*, 590 B.R. 75, 96 (D. Del. 2018).

[18]     *Id.*

[19]     *See In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013) ("The Bankruptcy Court has 'broad discretion' to decide if a plan satisfies that requirement, and [] will uphold a plan's classification scheme so long as it is 'reasonable' and does not 'arbitrarily designate classes.'") (citing *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) (recognizing that separate classes of claims must be reasonable and allowing a plan proponent to group similar claims in different classes))).

[20]     *In re Coastal Broad. Sys., Inc.*, 570 F. App'x 188, 193 (3d Cir. 2014) ("Although not explicit in § 1122, a corollary to that rule is that the 'grouping of similar claims in different classes' is permitted so long as the classification is 'reasonable.'") (internal citation omitted); *see also In re Jersey City Med. Ctr.*, 817 F.2d at 1061; *In re Tribune Co.*, 476 B.R. 843, 854–55 (Bankr. D. Del. 2012).

[21]     *See John Hancock Mut. Life Ins. Co.*, 987 F.2d at 158.

[22]     *Id.*

13

separate classification.[23] Additionally, section 1122(b) of the Bankruptcy Code expressly permits

separate classification of certain claims for purposes of administrative convenience.[24]

32.     Here, the Plan appropriately classifies Claims and Interests as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 - Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 - Other Priority Claims | Unimpaired | Presumed to Accept |
| Class 3 – Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 - General Unsecured Claims | Impaired | Deemed to Reject |
| Class 5 - Intercompany Claims | Impaired | Deemed to Reject |
| Class 6 - 510(b) Claims | Impaired | Deemed to Reject |
| Class 7 - Interests | Impaired | Deemed to Reject |

33.     The Plan's classification of Claims and Interests satisfies the requirements of

section 1122 of the Bankruptcy Code because each Class is composed of substantially similar

Claims or Interests, respectively, and the Claims and Interests in each separate class differ from

those in every other class due to differing legal rights of the Holders of Claims and Interests in

each separate Class.

34.     Section 1129(a)(10) of the Bankruptcy Code requires that, if any class of claims is

impaired under a chapter 11 plan, at least one such impaired class must vote to accept the plan for

---

[23]    *Id.*

[24]    11 U.S.C. § 1122(b).

it to be confirmed.[25] The primary concern with a debtor's classification scheme is whether the debtor's separate classes were designed solely to gerrymander votes to guarantee an impaired accepting class to satisfy section 1129(a)(10) of the Bankruptcy Code.[26] Here, no party has raised any formal or informal objection to the Plan's classification of Claims and Interests, and the Debtor's classification scheme is appropriate because it is not designed to gerrymander an Impaired accepting vote on the Plan.

35.    Accordingly, the Debtor submits that the Plan fully complies with section 1122 of the Bankruptcy Code.

### b. The Plan Satisfies the Mandatory Requirements of Section 1123(a) of the Bankruptcy Code.

36.    The seven applicable requirements of section 1123(a) of the Bankruptcy Code generally relate to the specification of Claims treatment and classification, the equal treatment of Claims within classes, and the mechanics of implementing a plan.[27] The Plan satisfies each of these requirements.

---

[25]   *See* 11 U.S.C. § 1129(a)(10); *Nantucket Invs. II v. Cal. Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 209 n.18 (3d Cir. 1995) ("Where the debtor cannot secure the acceptance of all classes of impaired claims, the Bankruptcy Code permits the confirmation of a plan over the objections of impaired classes under certain conditions through a procedure known as a cram down." (citations omitted)).

[26]   *See John Hancock Mut. Life Ins. Co.*, 987 F.2d at 159 ("[W]here . . . the sole purpose and effect of creating multiple classes is to mold the outcome of the voting, it follows that the classification scheme must provide a reasonable method for counting votes. In a 'cram down' case, this means that each class must represent a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed.  Otherwise, the classification scheme would simply constitute a method for circumventing the requirement set out in 11 U.S.C. § 1129(a)(10)."); *W. Real Est. Equities, L.L.C. v. Vill. at Camp Bowie I, L.P. (In re Vill. at Camp Bowie I, L.P.)*, 710 F.3d 239, 247 (5th Cir. 2013) ("[I]n [*Greystone*] we held that a plan proponent cannot gerrymander creditor classes *solely* for purposes of obtaining the impaired accepting class necessary to satisfy § 1129(a)(10). . . . *Greystone* does not stand for the proposition that a court can ride roughshod over affirmative language in the Bankruptcy Code to enforce some Platonic ideal of a fair voting process." (emphasis added)).

[27]   *See* 11 U.S.C. § 1123(a). Section 1123(a)(8) is inapplicable to this Chapter 11 Case because it is applicable only to individual debtors.

37.     ***Specification of Classes, Impairment, and Treatment***. The first three requirements of section 1123(a) are that the plan specify (a) the classification of claims and interests other than certain tax and priority administrative claims, (b) whether such claims and interests are impaired or unimpaired, and (c) the precise nature of their treatment under the plan.[28] For the reasons set forth above, Article IV of the Plan properly satisfies the requirements of 1123(a)(1)-(3).[29]

38.     ***Equal Treatment***. The fourth requirement of section 1123(a) is that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment."[30] The Plan meets this requirement because Holders of Allowed Claims or Interests in each Class will receive the same rights and treatment as other Holders of Allowed Claims or Interests within such Holders' respective Class, unless a Holder of an Allowed Claim agrees to less favorable treatment. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

39.     ***Adequate Means for Implementation***. The fifth requirement of section 1123(a) is that a plan must provide "adequate means" for its implementation.[31] The Plan provides a detailed blueprint for its implementation.

40.     Article VIII of the Plan, in particular, sets forth the means for implementation of the Plan, which include, *inter alia*: (a) the establishment and funding of the Plan Reserves, (b) the vesting of the Wind-Down Debtor Assets in the Wind-Down Debtor, (c) the Wind-Down

---

[28]    *See* 11 U.S.C. § 1123(a)(1)–(3).

[29]    Plan, Art. IV.A., B.

[30]    11 U.S.C. § 1123(a)(4).

[31]    *See* 11 U.S.C. § 1123(a)(5). Section 1123(a)(5) specifies that adequate means for implementation of a plan may include, among other things: (a) retention by the debtor of all or part of its property; (b) the transfer of property of the estate to one or more entities; (c) cancellation or modification of any indenture; (d) curing or waiving of any default; (e) amendment of the debtor's charter; or (f) issuance of securities for cash, for property, for existing securities, in exchange for claims or interests, or for any other appropriate purpose.

Financing Facility, (d) the appointment of the Plan Administrator, (e) the sources of consideration for Plan distributions and the provisions governing distributions, and (f) the resolution of Disputed Claims.

41.     The precise terms governing the execution of these transactions are set forth in greater detail in the Plan.[32] Thus, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

42.     ***Non-Voting Securities***. The sixth requirement of section 1123(a) is that a plan must contemplate a provision in the reorganized debtor's corporate charter, if the debtor is a corporation, that prohibits the issuance of non-voting equity securities or, with respect to preferred stock, adequate provisions for the election of directors upon an event of default.[33] Section 1123(a)(6) is not applicable under the Plan because no new equity securities are being issued by the Debtor under the Plan. The Debtor's corporate entities will be wound down and will not be issuing securities. Thus, the requirement that the Debtor's new organizational documents prohibit the issuance of nonvoting equity securities does not apply in this Chapter 11 Case.

43.     ***Selection of Officers and Directors***. Finally, section 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan."[34] Article V.D of the Plan provides: "The Plan Administrator shall be immediately and automatically deemed appointed by the Debtor or the Wind-Down Debtor, as applicable, as the sole director and the sole officer of each of the Wind-Down Debtor, and the Plan Administrator shall succeed to the powers of the Debtor's directors and officers." The Plan

---

[32]   Plan, Arts. V, VI, VIII.

[33]   11 U.S.C. 1123(a)(6).

[34]   11 U.S.C. § 1123(a)(7).

Supplement identifies Timothy Pohl as the Plan Administrator. [D.I. 503]. Accordingly, the Debtor respectfully submits that the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

### c. The Plan Appropriately Contains Certain Discretionary Components Permitted by Section 1123(b) of the Bankruptcy Code.

44.     Section 1123(b) sets forth various discretionary provisions that may be incorporated into a chapter 11 plan.[35] Among other things, section 1123(b) of the Bankruptcy Code provides that a plan may: (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the Debtor or the Estate; and (d) include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code.[36] Among other provisions, the Plan proposes treatment for Executory Contracts and Unexpired Leases, provides a structure for Claim allowance and disallowance, and establishes a distribution process for the satisfaction of Allowed Claims entitled to distributions under the Plan. Additionally, the Plan contains provisions implementing certain releases and exculpations, discharging claims and interests and permanently enjoining certain causes of action. The Debtor has determined, as the fiduciary of the Estate and in the exercise of its reasonable business judgment, that each of the discretionary provisions of the Plan is appropriate given the circumstances of this Chapter 11 Case.

45.     ***Impairment of Classes (Section 1123(b)(1)).*** In accordance with section 1123(b)(1) of the Bankruptcy Code, Article IV of the Plan classifies and describes the treatment

---

[35]     *See* 11 U.S.C. § 1123(b).

[36]     11 U.S.C. § 1123(b)(1)–(3), (6).

for Claims and Interests under the Plan and identifies which Claims and Interests are impaired or unimpaired.

46.     ***Executory Contracts and Leases (Section 1123(b)(2)).*** As described in Article IX of the Plan, on the Effective Date, each Executory Contract or Unexpired Lease shall be deemed automatically rejected by the Debtor unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are otherwise provided for in the Plan, such as being specifically assumed in connection with confirmation of the Plan, or are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) have been previously assumed, assumed and assigned, or rejected by the Debtor pursuant to any Bankruptcy Court order; (c) are the subject of a pending motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a pending objection with respect thereto) that is pending on the Confirmation Date; or (d) are a contract, release, or other agreement or document entered into in connection with the Plan.

47.     Under section 1123(b)(2) of the Bankruptcy Code, "a plan may, subject to section 365, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected."[37] Section 365(a) of the Bankruptcy Code provides that a debtor, subject to the court's approval, may assume or reject any executory contract or unexpired lease. Bankruptcy courts generally approve a debtor's decision to assume, assume and assign, or reject executory contracts or unexpired leases where such decision is made in the exercise of such debtor's sound business judgment and benefits its estate.[38] The business judgment standard

---

[37]    11 U.S.C. § 1123(b)(2).

[38]    *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989); *N.L.R.B. v. Bildisco & Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984).

requires that the court approve the debtor's business decision unless that judgment is the product of bad faith, whim, or caprice.[39]

48.     The Debtor believes that such relief is appropriate as the Debtor is no longer an operating entity and thus has no need for its remaining contracts after the Effective Date (and those contracts will continue to be an unnecessary expense of the Estate if not rejected). The Plan provides that parties with Claims arising from the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed by the Rejection Bar Date which is the later of: (a) the General Bar Date; (b) thirty (30) days after the entry of an order by the Bankruptcy Court authorizing such rejection; or (c) such other date, if any, as the Bankruptcy Court may fix in the order authorizing such rejection.

49.     The Debtor believes that confirmation of the Plan is a sufficient forum to address the rejection of the Debtor's executory contracts and unexpired leases, and that the notice of the Effective Date will provide sufficient notice to all counterparties of the deadline to file claims against the Debtor for rejection damages. The Debtor is not assuming any Executory Contracts or Unexpired Leases.

50.     ***Settlement and Adjustment of Claims (Section 1123(b)(3)).*** Section 1123(b)(3) of the Bankruptcy Code provides that a plan may "provide for . . . the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[40] In accordance with section 1123(b)(3) of the Bankruptcy Code, Article IV of the Plan extinguishes or modifies, or leaves unaffected, as the case may be, the rights of holders of Claims and Interests in each Class. In addition, Article X provides for certain Debtor and Estate Releases and Article V provides that the Retained Causes

---

[39]    *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001)

[40]    11 U.S.C. § 1123(b)(3)(A).

of Action will vest in the Wind-Down Debtor and that the Plan Administrator will investigate and/or adjudicate and may compromise or settle, all such Retained Causes of Action.

51. ***Modification of Rights of Holders of Claims (Section 1123(b)(5)).*** Article IV of the Plan modifies the rights of Holders of Claims as set forth therein.

52. ***Other Appropriate Provisions (Section 1123(b)(6)).*** Section 1123(b)(6) of the Bankruptcy Code also authorizes the inclusion of "any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[41] The Plan includes several such discretionary provisions, including various terms discharging, releasing, and enjoining the pursuit of certain Claims. The release and exculpation provisions set forth in the Plan are the result of extensive good-faith and arm's-length negotiations by the Debtor and certain parties subject to the release, exculpation, and injunction provisions. As demonstrated below, such provisions are consistent with applicable case law and precedent in this district, comply with the Bankruptcy Code in all respects, and should be approved in all respects as integral components of the Plan.

### d. The Debtor Release is Appropriate.

53. A debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[42]

54. Article X.D of the Plan provides that each Released Party is deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released by the Debtor, the Estate, and the Wind-Down Debtor (the "**Debtor Release**").

---

[41]   11 U.S.C. § 1123(a)(6).

[42]   *U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether the compromise is fair, reasonable, and in the best interest of the estate." (internal citations omitted)).

55.     In summary, the proposed Debtor Release releases any estate claims against (a) the current Prepetition Term Loan Lenders; (b) the Prepetition Agent; (c) the DIP Lenders; (d) Timothy R. Pohl; (e) the DIP Agent and each of their Related Parties and any other related Persons, but solely in their capacity as such. Certain aspects of these releases were already approved by the Final DIP Order.

56.     With respect to any other releases, courts in this jurisdiction typically assess the propriety of a "debtor release" in light of five "*Zenith* factors" in the context of a chapter 11 plan:[43]

- whether the third party has made a substantial contribution to the debtor's reorganization;

- whether the release is essential to the debtor's reorganization;

- whether a substantial majority of creditors support the release; and

- whether there is an identity of interest between the debtor and the third party; and

- whether the plan provides for payment of all or substantially all of the claims in the class or classes affected by the release.

No one factor is dispositive, nor is a proponent required to establish each factor for the release to be approved.[44]

57.     The *Zenith* factors support the proposed Debtor Release, and no party objects to the Debtor Release. **First**, each of the Released Parties made substantial contributions to the Debtor and its Estate and aided in the reorganization process. The Released Parties contributed by providing the financing necessary for the Debtor to prosecute this Chapter 11 Case by, in the case of the Prepetition Term Loan Lenders, helping the Estate investigate and litigate for the

---

[43]     *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) (citing *In re Zenith Elecs. Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999)).

[44]     *In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011) ("These factors . . . simply provide guidance in the [c]ourt's determination of fairness."); *In re Exide Techs.*, 303 B.R. 48, 72 (Bankr. D. Del. 2003) (finding that factors are not exclusive or conjunctive requirements).

recovery of the Alpha Funds and by participating in the attempts to stop the bad actors from further depleting the Estate's assets by seeking the protection of this Bankruptcy Court and participating in various hearings in this bankruptcy.

58.     **Second**, the Debtor Release is essential to the Plan itself. Without the Debtor Release, there would be no acceptance of the Plan and no financing to effectuate the post-Effective Date transactions contemplated by the Plan.

59.     **Third**, as evidenced by the Voting Report and as noted herein, the Plan, inclusive of the Debtor Release, was approved by the only voting Class.

60.     **Fourth**, the Plan provides a means, through the vesting of the Retained Causes of Action, to return value to the Debtor's creditors.

61.     Accordingly, the Debtor Release is justified and in the best interests of the Debtor's creditors.

### e. The Exculpation Provision is Appropriate and Should be Approved.

62.     Article X.A of the Plan provides for the exculpation of the Exculpated Parties. The Exculpation is fair and appropriate under both applicable law and the facts and circumstances of this Chapter 11 Case. The Exculpated Parties are limited to the Debtor, any of the Debtor's current officers and directors (*i.e.*, Timothy R. Pohl), and the Estate Professionals. Further, the exculpation is limited to acts or omissions occurring after the Petition Date and before the Effective Date in connection with the Debtor's prosecution of the Chapter 11 Case, and to provide that the Exculpation does not protect the Exculpated Parties from liability resulting from actual fraud, willful misconduct, or gross negligence. Courts in this jurisdiction have held exculpation provisions to be appropriate where limited to estate fiduciaries and to conduct not constituting

gross negligence or willful misconduct.[45] Accordingly, the Exculpation provides reasonable and appropriate protections and should be approved.

### f.   The Injunction Is Narrowly Tailored and Should Be Approved.

63.    Article X.B and C of the Plan provides for an injunction that is necessary to implement the Plan's release and exculpation provisions. The injunction generally provides that all entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined from prosecuting or otherwise pursuing claims released or exculpated under the Plan. The Plan's release and exculpation provisions, each of which were material components of the Plan, would be substantially weakened without the injunction provision. Accordingly, the injunction provision should be approved.[46]

### B.    The Debtor Has Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)).

64.    Section 1129(a)(2) of the Bankruptcy Code requires the plan proponent to comply with the applicable provisions of the Bankruptcy Code.[47] Case law and legislative history indicate this section principally reflects the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code, which prohibits solicitation of plan votes without a court-approved disclosure statement.[48] As set forth below, the Debtor has complied with the applicable provisions

---

[45]  *See Wash. Mut.*, 442 B.R. at 350–51 (holding that exculpation must be limited to estate fiduciaries and conduct not constituting gross negligence or willful misconduct).

[46]  *See In re Drexel Burnham*, 960 F.2d 285, 293 (holding that a court may approve an injunction provision where such provision "plays an important part in the debtor's reorganization plan"); *In re 710 Long Ridge Rd. Operating Co., II, LLC*, No. 13-13653 (DHS), 2014 WL 886433, at *12 (Bankr. D.N.J. Mar. 5, 2014) (same); *Pettibone Corp. v. Hawxhurst*, 163 B.R. 989, 995 (N.D. Ill. 1994) (same).

[47]  *See* 11 U.S.C. § 1129(a)(2).

[48]  *See In re Lapworth*, 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *In re Worldcom, Inc.*, 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable provisions of the Bankruptcy Code,

24

of the Bankruptcy Code regarding disclosure and plan solicitation, including sections 1125 and 1126, as well as Bankruptcy Rules 3017 and 3018, Local Rule 3017-1, and the Disclosure Statement Order.

### 1. The Debtor Complied with the Disclosure and Solicitation Requirements of Section 1125.

65.     Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[49] Section 1125 of the Bankruptcy Code ensures that parties in interest are fully informed regarding a debtor's condition so that they may make an informed decision whether to approve or reject the plan.[50]

66.     The Debtor has satisfied section 1125 of the Bankruptcy Code here. Before the Debtor solicited votes on the Plan, the Bankruptcy Court conditionally approved the Disclosure Statement as containing adequate information and following the Bankruptcy Court's entry of the Disclosure Statement Order, the Voting Agent sent the Solicitation Packages, including instructions for accessing electronic or hard-copy versions of the Plan and Disclosure Statement, to all Holders of Claims entitled to vote on the Plan and tabulated votes on the Plan consistent with the Bankruptcy Court-approved procedures, as evidenced by the Voting Report and the Walters Declaration. The Debtor, through the Voting Agent, complied with the content and delivery

---

including "disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code"); S. Rep. No. 989, 95th Cong., 2d Sess., at 126 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess., at 412 (1977).

[49]   11 U.S.C. § 1125(b).

[50]   *See Momentum Mfg. Corp. v. Emp. Creditors Comm*. (*In re Momentum Mfg. Corp.*), 25 F.3d 1132, 1136 (2d Cir. 1994) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

requirements of the Disclosure Statement Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code. Further, the Debtor did not solicit acceptances of the Plan from any holder of a Claim before entry of the Disclosure Statement Order and thus complied with section 1125(b) of the Bankruptcy Code. The Debtor also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class.

67.     Finally, as set forth herein and in the Pohl Declaration, the Debtor at all times engaged in arm's-length, good-faith negotiations and took appropriate actions in connection with the solicitation of the Plan in compliance with section 1125 of the Bankruptcy Code. Therefore, the Debtor respectfully requests that this Bankruptcy Court grant the parties the protections provided under section 1125(e) of the Bankruptcy Code.

> ### 2.     The Debtor Satisfied the Plan Acceptance Requirements of Section 1126.

68.     Section 1126 of the Bankruptcy Code provides that only holders of claims and equity interests allowed under section 502 of the Bankruptcy Code in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan.[51] As noted above, the Debtor did not solicit votes on the Plan from the following Classes:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 - Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 - Other Priority Claims | Unimpaired | Presumed to Accept |

---

[51]    *See* 11 U.S.C. § 1126.

| Class | Status | Voting Rights |
|---|---|---|
| Class 4 - General Unsecured Claims | Impaired | Deemed to Reject |
| Class 5 - Intercompany Claims | Impaired | Deemed to Reject |
| Class 6 - 510(b) Claims | Impaired | Deemed to Reject |
| Class 7 - Interests | Impaired | Deemed to Reject |

69.     Holders of Claims in the Unimpaired Classes are conclusively presumed to accept the Plan and holders of Claims and Interests in the Deemed Rejecting Classes are deemed to reject the Plan and, therefore, were not entitled to vote on the Plan.[52] Thus, the Debtor solicited votes only from holders of Claims in Class 3 (the "**Voting Class**") because this is the only Class that is Impaired and entitled to receive a distribution under the Plan.[53] The Voting Report, summarized above, reflects the results of the voting process in accordance with section 1126 of the Bankruptcy Code.[54]

70.     Sections 1126(c) and (d) of the Bankruptcy Code specify that holders of an impaired class of claims or interests must vote in favor of a plan by at least two-thirds in amount and more than one-half in number of the allowed claims, or interests, of such class to accept the plan.[55] The Voting Agent reviewed all Ballots received in accordance with the procedures

---

[52]   11 U.S.C. 1126(f), (g).

[53]   *See* Plan, Art. III.A., B.

[54]   "A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of [section 1126], that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of [section 1126], that have accepted or rejected such plan." 11 U.S.C. 1126(c). No Class of Interests was entitled to vote on the Plan. *See* Plan, Art. III.A-B. Therefore, the Debtor does not need to comply with section 1126(d) of the Bankruptcy Code.

[55]   *See* 11 U.S.C. §§ 1126(c), (d)

approved pursuant to the Disclosure Statement Order. As set forth above, of those who timely voted, Holders of Claims in Class 3 in excess of these statutory thresholds voted to accept the Plan.[56] Based on the foregoing, the Debtor submits that the Plan satisfies the requirements of section 1129(a)(2).

C.    **The Plan Is Proposed in Good Faith and Not by Any Means Forbidden by Law (Section 1129(a)(3)).**

71.    Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."[57] Where a plan satisfies the purpose of the Bankruptcy Code and has a good chance of succeeding, the good faith requirement of section 1129(a)(3) of the Bankruptcy Code is satisfied.[58] Thus, "good faith" should be evaluated in light of the totality of the circumstances surrounding the development of the plan.[59]

72.    The Debtor negotiated, developed, and proposed the Plan in good faith in accordance with section 1129(a)(3) and no party asserts otherwise. Throughout this Chapter 11 Case, the Debtor engaged in extensive, arm's-length negotiations with key constituencies as it worked to secure the financing necessary to conduct the Chapter 11 Case and develop the Plan, which provides the path for additional recovery. Accordingly, the Plan and the Debtor's conduct satisfy section 1129(a)(3) of the Bankruptcy Code.

---

[56]    *See* Voting Report, <u>Exhibit A</u>.

[57]    11 U.S.C. § 1129(a)(3).

[58]    *See In re NII Holdings, Inc*., 288 B.R. 356, 362 (Bankr. D. Del. 2002) (concluding that 1129(a)(3) is satisfied when "the Plan has been proposed with the legitimate purpose of reorganizing the business affairs of each of the debtors and maximizing the returns available to creditors of the Debtors").

[59]    *See Platinum Cap., Inc. v. Sylmar Plaza, L.P.* (*In re Sylmar Plaza, L.P.*), 314 F.3d 1070, 1074 (9th Cir. 2002); *see also In re Madison Hotel Assocs*., 749 F.2d 410, 425 (7th Cir. 1984) (stating that to determine compliance with section 1129(a)(3), the court examines the plan "in light of the totality of the circumstances surrounding confection of the plan") (internal citation omitted).

**D.    The Debtor Seeks to Pay Certain Professional Fees and Expenses Subject to Court Approval (Section 1129(a)(4)).**

73.    Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person issuing securities or acquiring property under the plan be subject to approval of the Bankruptcy Court as reasonable.[60] No one has objected to the Plan on the basis that it does not satisfy section 1129(a)(4).

74.    As set forth in the Plan, all payments made or to be made by the Estate for services or for costs or expenses in connection with this Chapter 11 Case prior to the Effective Date, including all Professional Fee Claims, are subject to approval of the Bankruptcy Court.[61] Article III.M of the Plan provides that final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date of the Plan must be filed no later than forty-five (45) days after the Effective Date for determination of the Allowed amounts of such fees by the Bankruptcy Court, after notice and a hearing, in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders.[62] Accordingly, the Plan fully complies with the requirements of section 1129(a)(4).

**E.    The Debtor Complied with the Bankruptcy Code's Governance Disclosure Requirement (Section 1129(a)(5)).**

75.    The Bankruptcy Code requires that a plan proponent disclose the "identity and affiliations" of any individual proposed to serve as a director or officer of the debtor or a successor to the debtor under the plan.[63] Section 1129(a)(5)(A)(ii) further requires that the appointment or

---

[60]    *See* 11 U.S.C. § 1129(a)(4); *see also In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

[61]    *See* Plan, Art. II.

[62]    *Id.*

[63]    11 U.S.C. § 1129(a)(5)(A)(i).

continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.[64] In addition, section 1129(a)(5)(B) also requires a plan proponent to disclose the identity of any "insider" (as defined by 11 U.S.C. § 101(31)) to be employed or retained by the reorganized debtor and the nature of any compensation for such insider.[65]

76.    The Debtor has satisfied the foregoing requirements. Articles V and VI of the Plan provide for the winding down of the Debtor and the management of the Wind-Down Debtor by the Plan Administrator and the Wind-Down Debtor Oversight Committee. In addition, as part of the Plan and/or Plan Supplement (including the Plan Administrator Agreement), the Debtor has disclosed the identity, responsibilities, and compensation of the Plan Administrator (Timothy Pohl) and the composition of the Wind-Down Debtor Oversight Committee.[66] The Plan Administrator Agreement provides that the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of Holders of Claims and Interests who are entitled receive distributions pursuant to Plan.[67] Therefore, the requirements under Section 1129(a)(5) of the Bankruptcy Code are satisfied.

**F.    The Plan Does Not Require Governmental Approval of Rate Changes (Section 1129(a)(6)).**

77.    Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved

---

[64]    11 U.S.C. § 1129(a)(5)(A)(ii).

[65]    11 U.S.C. § 1129(a)(5)(B).

[66]    D.I. 503.

[67]    Id.

any rate change provided for in the plan.[68] The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction. The Debtor submits that Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Plan.

**G.    The Plan Is in The Best Interests of Creditors and Interest Holders (Section 1129(a)(7)).**

78.    Section 1129(a)(7) of the Bankruptcy Code—the "best interests of creditors" test—requires that, with respect to each impaired class of claims or interests, either each holder of a claim or interest of such class (a) has accepted the plan; or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor liquidated under chapter 7 of the Bankruptcy Code.[69] The best interests test applies if a class of claims or interests entitled to vote does not vote unanimously to accept a plan, even if the class as a whole votes to accept the plan.[70] The best interests test is generally satisfied by a liquidation analysis demonstrating that an impaired class will receive no less under the plan than under a chapter 7 liquidation.[71]

79.    The Plan satisfies section 1129(a)(7) and no party asserts otherwise. As set forth in the Pohl Declaration, the recoveries provided under the Plan to all holders of Claims and Interests are expected to be at least as much as the potential recoveries available in a chapter 7 liquidation.

---

[68]    11 U.S.C. § 1129(a)(6).

[69]    11 U.S.C. § 1129(a)(7)(A).

[70]    *See Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").

[71]    *See In re Smith*, 357 B.R. 60, 67 (Bankr. M.D.N.C. 2007), *appeal dismissed*, 2007 WL 1087575 (M.D.N.C. Apr. 4, 2007) ("In order to show that a payment under a plan is equal to the value that the creditor would receive if the debtor were liquidated, there must be a liquidation analysis of some type that is based on evidence and not mere assumptions or assertions.") (citations omitted).

80.     The Debtor submits that, if this Chapter 11 Case were converted to a case under chapter 7 of the Bankruptcy Code, the value of distributions to each impaired class of Claims or Interests or each rejecting Creditor would be less than the value of distributions under the Plan. Several factors contribute to smaller distributions: (a) the Estate would incur costs, such as professional fees, in winding up chapter 7 cases; (b) the chapter 7 process would take substantially longer; and (c) a chapter 7 trustee and professionals would incur costs in becoming familiar with the Debtor's assets (in this Chapter 11 Case, primarily the Retained Causes of Action), and likely would realize less value than the Plan Administrator.

81.     For the foregoing reasons, the Debtor submits that the Plan provides an equal or better potential recovery for Holders of Claims and Interests as compared to a liquidation under chapter 7 of the Bankruptcy Code. Therefore, the Plan satisfies the "best interests" of creditors test under section 1129(a)(7) of the Bankruptcy Code.

**H.      The Plan can be Confirmed Notwithstanding the Requirements of Section 1129(a)(8).**

82.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept a plan or be unimpaired under a plan.[72] As discussed above, certain Classes of Claims were unimpaired and conclusively presumed to accept the Plan. Class 3 voted to accept the Plan. Classes 4 (General Unsecured Claims), 5 (Intercompany Claims), 6 (Section 510(b) Claims), and 7 (Interests) are deemed to reject the Plan. While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the deemed rejecting Classes, the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below.

---

[72]     11 U.S.C. § 1129(a)(8).

**I.     The Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Section 1129(a)(9)).**

83.     Section 1129(a)(9) requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments. In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative claims allowed under section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims. No party has objected to confirmation on the basis of section 1129(a)(9) of the Bankruptcy Code.

84.     In accordance with section 1129(a)(9), the Plan generally provides that each Holder of an Allowed Administrative Claim will receive, in full and final satisfaction of its Allowed Administrative Claim, Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following: (a) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Estate in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtor or the Wind-Down Debtor, as applicable; or (e) at such time and upon such terms

as set forth in a Final Order of the Court.[73] In addition, Allowed Professional Fee Claims will be paid in Cash from funds held in the Professional Fee Escrow Account,[74] and Allowed Priority Tax Claims will be paid in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.[75]

85.     Accordingly, the Plan complies with the requirements of section 1129(a)(9) of the Bankruptcy Code.

**J.      At Least One Impaired Class of Claims Accepted the Plan, Excluding the Acceptance of Insiders (Section 1129(a)(10)).**

86.     Section 1129(a)(10) provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, excluding acceptance by any insider. Section 1129(a)(10) serves as an alternative to the requirement under section 1129(a)(8) of the Bankruptcy Code that each class of claims or interests must either accept the plan or be unimpaired under the plan.[76] As detailed herein and in the Voting Report, Class 3 is Impaired and voted to accepted the Plan, exclusive of any acceptances by insiders.[77] Thus, the Plan has been accepted by at least one Voting Class holding Impaired, non-insider claims with respect to the Debtor. Accordingly, the Plan satisfies the requirements of section 1129(a)(10).

**K.      The Plan is Feasible (Section 1129(a)(11)).**

87.     Section 1129(a)(11) requires that the Bankruptcy Court find that a plan is feasible as a condition precedent to confirmation. Specifically, the Bankruptcy Court must determine that

---

[73]   *See* Plan, Art. II.K.

[74]   *See* Plan, Art. II.M.

[75]   *See* Plan, Art. II.N.

[76]   11 U.S.C. § 1129(a)(10).

[77]   *See* Voting Report, Exhibit A.

confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is provided for in the plan.[78]

88.     Post-confirmation, the completion of the Debtor's/Estate's liquidation and wind-down is proposed in the Plan and no further financial reorganization of the Debtor is contemplated. As set forth in the Pohl Declaration, the Plan provides that the Plan Administrator shall conduct the liquidation of the Debtor and its Estate, including the analysis and prosecution of the Retained Causes of Action in an orderly and value maximizing manner.[79] The conditions precedent to the Effective Date are reasonably likely to be satisfied.[80] The Debtor anticipates having sufficient funds and resources available as of the Effective Date to consummate the Combined Plan and Disclosure Statement.[81] Under these circumstances, because the Plan contemplates the liquidation and wind-down of the Debtor, feasibility has been met.[82] Therefore, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.[83]

---

[78]  *See* 11 U.S.C. § 1129(a)(11).

[79]  Pohl Declaration, ¶¶ 16, 19.

[80]  *Id.*

[81]  Id.

[82]  *See In re Crdentia Corp.*, Case No. 10-10926 (BLS), 2010 WL 3313383, at *9 (Bankr. D. Del. May 26, 2010) ("The Plan provides for a workable scheme of liquidation and, therefore, satisfies section 1129(a)(11) of the Bankruptcy Code."); *see also In re Revco D.S., Inc*., 131 B.R. 615, 622 (Bankr. N.D. Ohio 1990) (holding that "Section 1129(a)(11) is satisfied as the plan provides that the property of [the] Debtors shall be liquidated").

[83]  *Id.*

L.   **The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)).**

89.   Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.[84] Article III.N of the Plan provides that all fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtor or the Wind-Down Debtor, as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.[85] Accordingly, the Plan complies with section 1129(a)(12).

M.   **Sections 1129(a)(13)–(16) are Inapplicable.**

90.   A number of the Bankruptcy Code's confirmation requirements are inapplicable to the Plan. The Bankruptcy Code requires that all retiree benefits continue post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code.[86] Section 1114(a) of the Bankruptcy Code defines retiree benefits as medical benefits.[87] Because the Debtor does not provide retiree medical benefits, section 1129(a)(13) of the Bankruptcy Code is inapplicable here. Section 1129(a)(14) is inapplicable to the Plan because the Debtor is not subject to any domestic support obligations. Section 1129(a)(15) of the Bankruptcy Code applies only to debtors that are individuals and therefore does not apply here because the Debtor is not an "individual" as defined

---

[84]   *See* 11 U.S.C. § 1129(a)(12).

[85]   *See* Plan, Art. II.B.

[86]   11 U.S.C. § 1129(a)(13).

[87]   Section 1114(a) of the Bankruptcy Code defines "retiree benefits" as "payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title." 11 U.S.C. § 1114(e).

in the Bankruptcy Code. Section 1129(a)(16) of the Bankruptcy Code applies only to debtors that are nonprofit entities or trusts and therefore does not apply here.

### N.      Only One Plan to Be Confirmed.

91.      Section 1129(c) of the Bankruptcy Code provides that the bankruptcy court may confirm only one plan.[88] Because the Plan is the only plan before the Bankruptcy Court, section 1129(c) of the Bankruptcy Code is satisfied.

### O.      The Principal Purpose of The Plan is Not Avoidance of Taxes or Section 5 of the Securities Act (Section 1129(d)).

92.      Section 1129(d) of the Bankruptcy Code provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[89] The Plan has been proposed in good faith and not for the avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933. Moreover, no federal, state or local government unit, or any other party has raised any objection to the Plan on these or any other grounds, and all Priority Tax Claims will be paid in full pursuant to the Plan. The Debtor therefore submits that the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

### P.      Section 1129(e) Does Not Apply to the Plan.

93.      The provisions of section 1129(e) of the Bankruptcy Code apply only to a "small business case." This Chapter 11 Case is not a "small business case" and, accordingly, section 1129(e) of the Bankruptcy Code has no application to the Plan.

---

[88]    *See* 11 U.S.C. § 1129(c).

[89]    *See* 11 U.S.C. § 1129(d); *see also* Securities Act of 1933, ch. 38, § 5, 48 Stat. 74, 77-78 (codified as amended at 15 U.S.C. §§ 77a–77aa).

## III.    The Plan Satisfies the "Cramdown" Requirements of Section 1129(b).

94.    Section 1129(b)(1) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.[90] To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[91] No party has objected on the basis that the Plan either "discriminates unfairly" or is not in fact "fair and equitable."

95.    The Debtor received the requisite votes from the Voting Class, Class 3, which was the only class entitled to vote on the Plan. Classes 4 (General Unsecured Claims), 5 (Intercompany Claims), 6 (Section 510(b) Claims), and 7 (Interests) (collectively, the "**Rejecting Classes**") were not entitled to vote on the Plan and are deemed to reject the Plan. Notwithstanding that the Plan was not accepted by such Impaired Classes, the Plan satisfies the "cramdown" requirements under section 1129(b).

### A.    The Plan Does Not Unfairly Discriminate with Respect to Impaired Classes That Have Not Voted to Accept the Plan (Section 1129(b)(1)).

96.    The Plan does not discriminate unfairly with respect to the Rejecting Classes. Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case

---

[90]    *See* 11 U.S.C. § 1129(b).

[91]    *See* 11 U.S.C. § 1129(b)(1); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 105 (Bankr. D. Del. 1999) (explaining that "[w]here a class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable.'").

to make the determination.[92] Generally, courts have held that a plan unfairly discriminates in violation of section 1129(b) only if similarly situated claims receive materially different treatment without a reasonable basis for the disparate treatment.[93] A plan does not unfairly discriminate where it provides different treatment to two or more classes that are comprised of dissimilar claims or interests.[94] Likewise, there is no unfair discrimination if, taking into account the particular facts and circumstances of the case, there is a reasonable basis for the disparate treatment.[95]

97.    Here, the Plan's treatment of the Rejecting Classes is proper because all similarly situated holders of Claims and Interests will receive substantially similar treatment and the Plan's classification scheme rests on a legally acceptable rationale. Where the Plan provides differing treatment for certain Classes of Claims or Interests, the Debtor has a rational basis for doing so. The Plan separately classified Claims into the voting Class 3 (Prepetition Term Loan Claims) based upon the secured nature of those Claims. Class 4 General Unsecured Claims includes Claims held by parties that do not have security for their claims. Class 5 (Intercompany Claims) is legally distinct from both of these Classes, as the Intercompany Claims consist of Claims held by and among the Debtor against non-Debtor affiliates. Class 6 (Section 510(b) Claims) (if any) is also a legally distinct Class. Class 7 (Interests) consists of all Interests in the Debtor. Class 7 is legally

---

[92]    *See In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *Bank of Am.*, 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."); *see also In re Bowles*, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly] discriminate is to be determined on a case-by-case basis."); *see also In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances").

[93]    *See In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 228 (Bankr. D.N.J. 2000) (noting that one of "the hallmarks of the various tests" is "whether there is a reasonable basis for the discrimination. . . . ").

[94]    *See In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 655 (9th Cir. 1997); *In re Aztec Co.*, 107 B.R. 585, 589-91 (Bankr. M.D. Tenn. 1989); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987); *aff'd sub nom., Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

[95]    *Aztec Co.*, 107 B.R. at 590.

distinct in nature from all other Classes. All Interests in the Debtor are classified together and afforded the same treatment under the Plan.

98.     Accordingly, there is no unfair discrimination among the Classes and there is a reasonable basis for the disparate treatment among those Classes. With respect to the rejecting Classes, there is no unfair discrimination because there are no other Classes containing creditors with Claims or Interests similar to those in such Classes and each Class contains Claims and Interests that are similarly situated. Accordingly, the Plan does not discriminate unfairly against such Classes. Thus, the Plan does not "discriminate unfairly" with respect to any impaired Classes of Claims or Interests.

### B.     The Plan Is Fair and Equitable with Respect to the Rejecting Classes (Section 1129(b)(2)).

99.     For a plan to be "fair and equitable" with respect to an impaired class of unsecured claims or interests that rejects a plan (or is deemed to reject a plan), the plan must follow the "absolute priority" rule and satisfy the requirements of section 1129(b)(2).[96] Generally, this requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired rejecting class not receive any distribution under a plan on account of its junior claim or interest.[97]

100.     In the present case, the Plan is fair and equitable with respect to Class 4. No classes junior to Class 4 will receive a recovery under the Plan. Accordingly, the Plan satisfies the

---

[96]   11 U.S.C. § 1129(b)(2)(B)(ii); 11 U.S.C. § 1129(b)(2)(C)(ii); *see also 203 N. LaSalle*, 526 U.S. at 441–42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'").

[97]   *See 203 N. LaSalle*, 526 U.S. at 459.

requirements of sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) and, therefore, is fair and equitable with respect to rejecting classes and Classes 5, 6, and 7. [98]

101.    Accordingly, the Plan is "fair and equitable" with respect to all Impaired Classes of Claims and Interests and satisfies section 1129(b) of the Bankruptcy Code.

## IV.    The Waiver of a Stay of the Confirmation Order is Appropriate.

### A.    Good Cause Exists to Waive the Automatic Stay of the Confirmation Order.

102.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise." Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code. Each rule also permits modification of the imposed stay upon court order.

103.    The Debtor submits that good cause exists for waiving and eliminating any stay of the Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the Confirmation Order will be effective immediately upon its entry.[99] As noted above, this Chapter 11 Case and the related transactions were negotiated and implemented in good faith and with a high degree of transparency and public dissemination of information. Each day the Debtor remains in chapter 11 it incurs significant administrative and professional costs.

---

[98]    Pohl Declaration, ¶ 49.

[99]    *See, e.g., In re Source Home Entm't, LLC*, No. 14-11553 (KG) (Bankr. D. Del. Feb. 20, 2015) (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *In re GSE Envtl., Inc*., No. 13-11126 (MFW) (Bankr. D. Del. July 25, 2014) (same); *In re Physiotherapy Holdings, Inc*., No. 13-12965 (KG) (Bankr. D. Del. Dec. 23, 2013) (same); *In re Gatehouse Media, Inc*., No. 13-12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) (same); *In re Dex One Corp*., No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013) (same); *In re Geokinetics Inc*., No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013) (same).

104.    Based on the foregoing, the Debtor requests a waiver of any stay imposed by the Bankruptcy Rules so that the Confirmation Order may be effective immediately upon its entry.

**B.    Modifications to the Plan.**

105.    Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code. Furthermore, when a plan proponent files a modified plan with the court, the modified plan becomes the Plan. Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder. Interpreting Bankruptcy Rule 3019, courts consistently have held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[100]

106.    The Debtor filed a modified version of the Plan which includes technical clarifications and resolves certain formal and informal comments to the Plan by parties in interest. Such modifications are immaterial and thus comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. No modifications will require additional solicitation or disclosure is required on account of the modifications, and such modifications should be deemed accepted by all creditors that previously accepted the Plan.

---

[100]    *See, e.g.*, *In re Glob. Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or resolicitation); *In re Burns & Roe Enters., Inc.*, No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

## CONCLUSION

107.    For all of the reasons set forth herein, in the Pohl Declaration, the Walters Declaration, and the Voting Report, the Debtor respectfully requests that the Bankruptcy Court confirm the Plan as fully satisfying all of the applicable requirements of the Bankruptcy Code by entering the Confirmation Order, waiving the stay imposed by Bankruptcy Rule 3020(e), overruling any objections, and granting such other and further relief as may be appropriate under the circumstances.

Dated: October 27, 2025
Wilmington, Delaware

/s/ Kenneth J. Enos

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Susheel Kirpalani (admitted *pro hac vice*)
Benjamin Finestone (admitted *pro hac vice*)
Daniel Holzman (admitted *pro hac vice*)
Jianjian Ye (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
susheelkirpalani@quinnemanuel.com
benjaminfinestone@quinnemanuel.com
danielholzman@quinnemanuel.com
jianjianye@quinnemanuel.com

*Counsel for the Debtor*

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

Robert S. Brady (Del. No. 2847)
Kenneth J. Enos (Del. No. 4544)
Jared W. Kochenash (Del. No. 6557)
Timothy R. Powell (Del. No. 6894)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
kenos@ycst.com
jkochenash@ycst.com
tpowell@ycst.com

*Counsel for the Debtor*