**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BYJU'S ALPHA, INC.,[1] | ) Case No. 24-10140 (BLS) |
| | ) |
| Debtor. | ) |
| | ) |

## NOTICE OF FILING OF AMENDED PLAN SUPPLEMENT

     **PLEASE TAKE NOTICE THAT** on October 14 , 2025, the above-captioned debtor and debtor-in-possession (the "Debtor") filed the *Notice of Filing of Plan Supplement* [Docket No. 503] (the "Plan Supplement") in support of the *Amended Combined Disclosure Statement and Chapter 11 Plan of BYJU's Alpha, Inc.* [D.I. 475] (as modified, amended, or supplemented from time to time, the "Plan")[2].

     **PLEASE TAKE FURTHER NOTICE THAT** the Debtor hereby files this amended plan supplement (as may be further amended from time to time, the "Amended Plan Supplement," and together with the Plan Supplement, the "Plan Supplement") in support of the Plan.

     **PLEASE TAKE FURTHER NOTICE THAT** the Debtor reserves all rights, subject to all applicable consultation, approval, and/or consent rights of any applicable counterparties contained or contemplated under the Plan, to alter, amend, modify, or supplement the Plan Supplement and any of the documents attached hereto in accordance with the terms of the Plan. The final version of any such document may contain material differences from the version filed herewith.

     **PLEASE TAKE FURTHER NOTICE THAT** the documents contained in the Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is approved, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

     **PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **October 29, 2025, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Judge Brendan L. Shannon, in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 6th Floor, Courtroom #1, Wilmington, Delaware 19801. The Confirmation Hearing may

---

[1]   The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case is 1007 N. Market St. Ste. G20 452, Wilmington, DE 19801.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan [D.I. 475].

be adjourned from time to time without further notice, except noting such in an agenda filed on the docket of the Debtor's Chapter 11 Case in accordance with the Bankruptcy Court's procedures.

Dated: October 29, 2025
Wilmington, Delaware

<table>
<tr><td></td><td>/s/ Kenneth J. Enos</td></tr>
<tr><td>**QUINN EMANUEL URQUHART &amp; SULLIVAN, LLP**</td><td>**YOUNG CONAWAY STARGATT &amp; TAYLOR, LLP**</td></tr>
<tr><td>Susheel Kirpalani (admitted *pro hac vice*)</td><td>Robert S. Brady (Del. No. 2847)</td></tr>
<tr><td>Benjamin Finestone (admitted *pro hac vice*)</td><td>Kenneth J. Enos (Del. No. 4544)</td></tr>
<tr><td>Daniel Holzman (admitted *pro hac vice*)</td><td>Jared W. Kochenash (Del. No. 6557)</td></tr>
<tr><td>Jianjian Ye (admitted *pro hac vice*)</td><td>Timothy R. Powell (Del. No. 6894)</td></tr>
<tr><td>51 Madison Avenue, 22nd Floor</td><td>1000 North King Street</td></tr>
<tr><td>New York, New York 10010</td><td>Wilmington, Delaware 19801</td></tr>
<tr><td>Telephone: (212) 849-7000</td><td>Telephone: (302) 571-6600</td></tr>
<tr><td>susheelkirpalani@quinnemanuel.com</td><td>Facsimile: (302) 571-1253</td></tr>
<tr><td>benjaminfinestone@quinnemanuel.com</td><td>rbrady@ycst.com</td></tr>
<tr><td>danielholzman@quinnemanuel.com</td><td>kenos@ycst.com</td></tr>
<tr><td>jianjianye@quinnemanuel.com</td><td>jkochenash@ycst.com</td></tr>
<tr><td></td><td>tpowell@ycst.com</td></tr>
<tr><td>*Counsel for the Debtor*</td><td>*Counsel for the Debtor*</td></tr>
</table>

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BYJU'S ALPHA, INC.,[1] | ) | Case No. 24-10140 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## AMENDED PLAN SUPPLEMENT

    This Amended Plan Supplement contains current drafts of the following documents, each of which remain subject to ongoing review and negotiations among the Debtor and interested parties pursuant to the terms of the Plan, as may be modified, amended, or supplemented from time to time.

| **Exhibit** | **Description** |
|---|---|
| D | Wind-Down Financing Facility Term Sheet |
| D-1 | Redline to Previously Filed Wind-Down Financing Facility Term Sheet |

    The Debtor reserves all rights, subject to all applicable consultation, approval, and/or consent rights of any applicable counterparties contained or contemplated under the Plan to amend, modify, revise, or supplement all of the documents included herein in accordance with the terms of the Plan.

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case is 1007 N. Market St. Ste. G20 452, Wilmington, DE 19801.

## **Exhibit D**

Wind-Down Financing Facility Term Sheet

CONFIDENTIAL; SUBJECT TO FRE 408
[K&E / RS Draft 10/27/2025]

**SAGA FORMATIONS, INC. (F/K/A EPIC! CREATIONS, INC.), PAJEAU, INC. (F/K/A NEURON FUEL, INC.), TANGIBLE PLAY, INC., AND BYJU'S ALPHA, INC.**
**SUMMARY OF TERMS AND CONDITIONS FOR**
**WIND-DOWN FINANCING FACILITY**[1]

**[●], 2025**

| | |
|---|---|
| **BORROWERS:** | Pajeau, Inc. (f/k/a Neuron Fuel, Inc.), Tangible Play, Inc., Saga Formations, Inc. (f/k/a Epic! Creations, Inc.), BYJU's Alpha, Inc. ("Byju's"), each a Delaware corporation (each, a "Borrower" and collectively, the "Borrowers"). |
| **AGENT:** | GLAS Trust Company LLC will act as the administrative agent and the collateral agent for the Wind-Down Financing Facility (the "Wind-Down Financing Agent"). |
| **LENDERS:** | The Wind-Down Financing Facility shall be provided by certain members of the ad hoc group of lenders under the Prepetition Credit Agreement (as defined below) (in their capacity as lenders under the Wind-Down Financing Facility, the "Wind-Down Financing Lenders"). |
| **WIND-DOWN FINANCING FACILITY:** | Senior secured wind-down financing facility (the "Wind-Down Financing Facility" and any loans made thereunder, the "Term Loans", together with any obligations arising thereunder, the "Obligations") which shall consist of: (i) delayed draw first-out "new money" term loans in an aggregate principal amount equal to $[●][2] (the "New Money Term Loan Facility" and any term loans made thereunder, the "New Money Term Loans"), with the first draw in the aggregate principal amount up to $[●][3] available on the Closing Date, (ii) roll-over second-out term loans in an aggregate principal amount of $[●] in respect of all outstanding obligations constituting New Money Term Loans under and as defined in the Alpha DIP Credit Agreement on a dollar-for-dollar basis (the "Second-Out Roll-Over Term Loans"), (iii) roll-over third-out term loans in an aggregate principal amount of $[●] in respect of all outstanding obligations constituting "Roll-Up Loans" under and as defined in the Alpha DIP Credit Agreement on a dollar-for-dollar basis (the "Third Out Roll-Over Term Loans"; together with the Second-Out Roll-Over Term Loans, the "Roll-Over Term Loans"), (iv) [a delayed draw second-out |

---

[1]   Capitalized terms used but not defined herein shall have the meaning set forth in the *Second Amended Combined Disclosure Statement and Chapter 11 Plan for the Estates of Saga Formations, Inc., Pajeau, Inc., and Tangible Play, Inc.* [Epic Docket No. 971] (the "Epic Plan") or the *Amended Combined Disclosure Statement and Chapter 11 Plan of BYJU's Alpha, Inc.* [Alpha Docket No. 475] (the "Alpha Plan" and, together with the Epic Plan, the "Plans"), as applicable.

[2]   The total amount of the New Money Term Loan Facility shall be confirmed prior to the Effective Date based upon the total new money funding that the Borrowers, in consultation with the Wind-Down Financing Agent and the Prepetition Agent at the direction of the Prepetition Required Lenders, determine to be necessary or desirable for the Plan Administrator to investigate, pursue, litigate, or settle the Retained Causes of Action and effectuate the Wind-Down, including to fund payments that would otherwise be made pursuant to the Cooperation Agreement, including funds sufficient to satisfy professional fee obligations arising under the Cooperation Agreement for the period from August 1, 2025, through the Closing Date.

[3]   Note to Draft: The principal amount of the wind-down New Money Term Loans, Second-Out Roll-Over Term Loans and Third Out Roll-Over Term Loans to be confirmed.

term loan in an aggregate principal amount equal to $10.0 million][4] (the "Director Indemnity Term Loan Facility" and any term loans made thereunder, the "Director Indemnity Term Loans"), and (v) a delayed draw second-out term loan in an aggregate principal amount equal to $500,000 (the "Trustee Indemnity Term Loan Facility" and any term loans made thereunder, the "Trustee Indemnity Term Loans"; the Director Indemnity Term Loan Facility and the Trustee Indemnity Term Loan Facility, the "Indemnity Term Loan Facilities"; the Director Indemnity Term Loans and the Trustee Indemnity Term Loans, the "Indemnity Term Loans").

The Borrowers shall be able to draw on the commitments of the New Money Term Loan Facility up to two draws until the earlier to occur of (i) the date on which the maximum amount of such commitments has been drawn, (ii) the date on which all the commitments for the New Money Term Loans have been terminated in accordance with the Credit Documentation, and (iii) the date that is seven (7) years after the date of the Closing Date.

The Intercreditor Agreement shall be amended such that, on the Closing Date, any Distributable Cash of Pajeau, Inc. (f/k/a Neuron Fuel, Inc.), Tangible Play, Inc., Saga Formations, Inc. (f/k/a Epic! Creations, Inc.), and BYJU's Alpha, Inc. to be distributed pursuant to the treatment of Class 3 Prepetition Term Loan Claims in accordance with the Intercreditor Agreement under the Epic Plan or Alpha Plan, as applicable, shall be deemed distributed and funded by the Wind-Down Financing Lenders on a *pro rata* basis as New Money Term Loans.

The Borrowers shall be able to draw on the commitments of the Director Indemnity Term Loan Facility until the earlier to occur of (i) the date on which the maximum amount of such commitments has been drawn and (ii) the Director Indemnification Termination Date (as defined below).

The Borrowers shall be able to draw on the commitments of the Trustee Indemnity Term Loan Facility until the earlier to occur of (i) the date on which the maximum amount of such commitments has been drawn and (ii) the Trustee Indemnification Termination Date (as defined below).

Amounts borrowed under the Wind-Down Financing Facility that are repaid or prepaid may not be re-borrowed.

**INCREMENTAL FACILITY:** The Credit Documentation (as defined below) will permit the Borrowers to add one or more incremental term loan facilities (which may take form of delayed draw term loan commitments) to the Wind-Down Financing Facility and/or to increase the Term Loans, subject to terms to be agreed by the Borrowers and the Wind-Down Financing Lenders.

**CHAPTER 11 CASES:** On February 1, 2024, BYJU's Alpha, Inc. commenced a voluntary case (the "Alpha Case") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended, in the United States Bankruptcy Court for the District of Delaware. On September 16, 2024, the Bankruptcy Court entered the *Order for Relief in Involuntary Cases and Appointing Chapter 11 Trustee* [Epic Docket No. 147] (the "Order for Relief") commencing the chapter 11 cases of Saga Formations, Inc. (f/k/a Epic!

---

[4] Assuming the Alpha DIP Tranche 2 Term Loans are not drawn prior to the Effective Date. Otherwise, it will be part of the Roll-Over Term Loans.

2

Creations, Inc.), Pajeau, Inc. (f/k/a Neuron Fuel, Inc.), and Tangible Play, Inc. (the "Epic Cases" and, together with the Alpha Case, the "Chapter 11 Cases").

| | |
|---|---|
| **PREPETITION CREDIT AGREEMENT:** | That certain Credit and Guaranty Agreement, dated as of November 24, 2021 (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement"), by and among Think and Learn Private Limited, a company established under the laws of India with corporate identification number U80903KA2011PTC061427 (the "Parent Guarantor"), BYJU's Alpha, Inc., certain subsidiaries of the Parent Guarantor, each lender from time to time party thereto (the "Prepetition Lenders"), and GLAS Trust Company LLC, a limited liability company organized and existing under the laws of the State of New Hampshire, as administrative agent and as collateral agent, the "Prepetition Agent"). |
| **DIP CREDIT AGREEMENT:** | That certain Senior Secured Superpriority Debtor-In-Possession Credit and Guaranty Agreement, dated as of April 9, 2024 (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Alpha DIP Credit Agreement"), by and among BYJU's Alpha, Inc., the other guarantors, the lenders party thereto from time to time (the "Alpha DIP Lenders") and GLAS Trust Company LLC, as administrative agent and collateral agent (the "Alpha DIP Agent"). |
| **MATURITY DATE:** | The New Money Term Loans and Roll-Over Term Loans will mature on the date which is seven (7) following the date of the first draw of the New Money Term Loans thereunder. |
| | The Director Indemnity Term Loans will mature on the Director Indemnification Termination Date.  The Trustee Indemnity Term Loans will mature on the Trustee Indemnification Termination Date. |
| **USE OF PROCEEDS:** | The New Money Term Loan Facility may be drawn by the Plan Administrator with the consent of the Wind-Down Debtors Oversight Committee to fund the administration of the Borrowers, including for the payment of the ongoing fees of the Plan Administrator, the Plan Administrator's counsel, the Wind-Down Debtors Oversight Committee's counsel (if any), and other professionals retained by the Borrowers, the Plan Administrator, or the Wind-Down Debtors Oversight Committee (on a collective basis, and not for individual members) from time to time (if any) as well as litigation and other expenses necessary or advisable to pursue the Retained Causes of Action or otherwise effectuate the Wind-Down and payment of fees and expenses that would otherwise be made under the Cooperation Agreement, including the satisfaction of professional fee obligations arising under the Cooperation Agreement for the period from August 1, 2025, through the Closing Date; *provided* that, for the avoidance of doubt, to the extent a payment required to be made under the Cooperation Agreement is not satisfied from the proceeds of the Wind-Down Financing Facility, such obligation shall remain outstanding and the funding mechanism provided for under the Cooperation Agreement shall remain in full force and effect in accordance with the terms thereof. |
| | The Director Indemnity Term Loan Facility may be drawn by the Plan Administrator, which shall not require the consent of the Wind-Down Debtors Oversight Committee. The proceeds of Director Indemnity Term Loans, if any, will be used solely to provide funding to the Borrowers to pay the Borrowers' indemnification obligations owed to Timothy R. Pohl ("Pohl") in his capacity as the director and officer of the Borrowers solely to the extent any Borrower has received such requests for indemnification and |

otherwise met the funding condition of the Director Indemnity Term Loans. To the extent any proceeds of Director Indemnity Term Loans have not been utilized for the purposes described herein on the date that is the later to occur of (i) the date that is six (6) years following the end of the Borrower's chapter 11 case (the "Tail Date") and (ii) the date of any final and binding resolution of any litigation pending against Pohl prior to the Tail Date for which he is entitled to indemnification under any of (a) that certain Independent Director Agreement, dated as of March 3, 2023, by and between the Byju's and Pohl, (b) that certain Certificate of Incorporation of Byju's, filed on September 27, 2021, as amended by that certain Certificate of Amendment of Certificate of Incorporation of Byju's filed on May 10, 2023, (c) those certain Bylaws of Byju's adopted on September 29, 2021, or (d) the Plan Administrator Agreement contemplated to be entered into with Pohl in connection with the consummation of the Plans, each of the foregoing as may be amended from time to time (such later date, the "Director Indemnification Termination Date"), the applicable Borrower shall promptly return all such proceeds to the Wind-Down Financing Agent for application against _first_, the obligations under the Director Indemnity Term Loan Facility and _second_, the obligations under the Wind-Down Financing Facility.

The Trustee Indemnity Term Loan Facility shall be fully committed and available until the later of (i) six (6) years after the closing of the Chapter 11 Cases and (ii) the date of any final and binding resolution of the India Lawsuit (such later date, the "Trustee Indemnification Termination Date"). The Chapter 11 Trustee will be entitled to draw on that commitment to satisfy any judgment against her and to pay her reasonable out-of-pocket expenses including attorney's fees and all other defense costs in the following circumstances: (x) a judgment is entered in the India Lawsuit against her personally and a Person moves to recognize or enforce that judgment against the Chapter 11 Trustee's personal property wherever located; (y) the Chapter 11 Trustee in her sole discretion determines to bring an action in the Bankruptcy Court to enforce the terms of this Plan or the Confirmation Order against a Person seeking to bring claims or causes of action against her individually related to her service as the Chapter 11 Trustee; or (z) to defend against any action brought against the Chapter 11 Trustee whether in the Bankruptcy Court or in any court asserting claims or causes of action based in whole or in part on the allegations set forth in the India Lawsuit. To the extent any proceeds of Trustee Indemnity Term Loans have not been utilized for the purposes described herein by the Trustee Indemnification Termination Date, the applicable Borrower shall promptly return all such proceeds to the Wind-Down Financing Agent for application against _first_, the obligations under the Trustee Indemnity Term Loan Facility and _second_, the obligations under the Wind-Down Financing Facility.

Notwithstanding anything to the contrary, the Indemnity Term Loans shall not be used for any payment of interest or fees.

**INTEREST RATE:** The New Money Term Loans shall accrue interest at a rate per annum equal to 25%, which interest shall be payable quarterly in kind rather than in cash and shall be issued in additional New Money Term Loans.

The Second-Out Roll-Over Term Loans and Third-Out Roll-Over Term Loans shall accrue interest at a rate per annum equal to Term SOFR plus [8]%, which interest shall be payable quarterly and shall all be payable in kind.

| | |
|---|---|
| **MINIMUM MULTIPLE ON INVESTED CAPITAL:** | Solely with respect to New Money Term Loan Facility and any of the Indemnity Term Loan Facilities, a minimum multiple on invested capital ("MOIC") of 3.00x on any principal amount of Term Loans funded under the New Money Term Loan Facility or any of the Indemnity Term Loan Facilities shall apply upon repayment or prepayment of such Term Loans.  For the avoidance of doubt, the MOIC multiple will be calculated based on only principal amount funded under the New Money Term Loan Facility and any of the Indemnity Term Loan Facilities (and not any interest accrued thereon). |
| **VOLUNTARY / MANDATORY PREPAYMENT:** | Subject to the Intercreditor Agreement and the Credit Documentation, (i) the Term Loans may be prepaid in part or in full without any premium and (ii) the Term Loans shall be prepaid with 100% of net cash proceeds of any asset sale, litigation or settlement awards and/or extraordinary receipt, in each case subject to the terms and conditions regarding distributions set forth in the Plan Administrator Agreement. |
| | For the avoidance of doubt, MOIC shall apply to any repayment or prepayment of New Money Term Loans and Indemnity Term Loans. |
| **SECURITY AND RANKING:** | The obligations of the Borrowers shall be (i) secured by: a perfected first-priority security interest (subject to permitted liens and other exceptions to be set forth in the Credit Documentation) in substantially all of each Borrower's and guarantor's tangible and intangible assets now owned or hereafter acquired on a senior basis to the loans under the Prepetition Credit Agreement, including, without limitation, all rights, interests and obligations in and to any cause of action of the Borrowers with respect to fraud, fraudulent conveyance, or breach of fiduciary duties, and any other Retained Causes of Action, and any proceeds thereof (collectively, the "Litigation Claims") and (ii) unconditionally guaranteed by each other Borrower and/or guarantor. |
| | The Term Loans (and related Obligations) shall benefit from payment priority and turn-over rights (and related rights) in respect of any recovery received from or in respect of any guarantor under the Prepetition Credit Agreement that is not a Borrower pursuant to an intercreditor arrangement to be entered into by and between the Wind-Down Financing Agent and the Prepetition Agent (the "Intercreditor Agreement"). |
| | Subject to the Credit Documentation, any amount received on account of the Obligations (except with respect to repayment or prepayment from any proceeds in the Director Indemnity Escrow Account and the Trustee Indemnity Escrow Account, respectively) shall be applied in the following order: (i) first, to the New Money Term Loans and the Indemnity Term Loans on a pari passu basis (for the avoidance of doubt, including the MOIC amount and/or interest accrued thereon), (ii) second, to the principal amount and the interest accrued on Second-Out Roll-Over Term Loans, (iii) third, to the extent there is any outstanding unfunded commitments under the Director Indemnity Term Loan Facility or the Trustee Indemnity Term Loan Facility, to the Director Indemnity Escrow Account and the Trustee Indemnity Escrow Account on a pari passu basis; *provided that*, any amount so applied shall reduce dollar-for-dollar the commitment amount of the respective Indemnity Term Loan Facilities until such commitment is $0 and is terminated, (iv) fourth, to the principal amount and the interest accrued on the Third-Out Roll-Over Term Loans. |
| **CONDITIONS PRECEDENT:** | The effectiveness of the Wind-Down Financing Facility shall be subject to the satisfaction or waiver by the Wind-Down Financing Lenders of the following |

conditions (in addition to other customary conditions) (the date on which such conditions are satisfied or waived, the "Closing Date"):

    (a) the Credit Documentation (for the avoidance of doubt, including the Intercreditor Agreement), in form and substance reasonably acceptable to the Wind-Down Financing Agent and the Prepetition Agent at the direction of the Prepetition Required Lenders, shall have been approved by order of the Bankruptcy Court (such approval via the Confirmation Orders (as defined below) being sufficient) and executed and delivered by all parties thereto and shall be in full force and effect, and no amendment, supplement or modification thereof shall have been entered into without the Consent of the Agents;

    (b) the accuracy in all materials respects of all representations and warranties in the Credit Documentation;

    (c) no default or event of default exists or would exist after giving effect thereto;

    (d) delivery of a customary borrowing notice at least two (2) business days prior to the requested funding date;

    (e) the Bankruptcy Court shall have entered (i) the Confirmation Order approving the Alpha Plan (the "Alpha Confirmation Order"), and (ii) the Confirmation Order approving the Epic Plan (the "Epic Confirmation Order" and, together with the Alpha Confirmation Order, the "Confirmation Orders"), in each case in form and substance reasonably acceptable to the Wind-Down Financing Agent and the Prepetition Agent at the direction of the Prepetition Required Lenders, and such Confirmation Orders shall be in full force and effect and shall not have been vacated, reversed, modified, amended, or stayed and shall not be subject to a pending appeal or motion for leave to appeal or other proceeding to set aside such order or to challenge the relief provided for in such orders;

    (f) each Effective Date shall have occurred or shall occur concurrently with the entry into the Wind-Down Financing Facility; and

    (g) the Wind-Down Debtor Assets shall have vested in the Borrowers.

**FUNDING CONDITIONS:**

With respect solely to the New Money Term Loans, the obligation of each Wind-Down Financing Lender to make a New Money Term Loan is subject to the satisfaction of the following conditions: (i) there shall exist no default or an event of default under the Credit Documentation, (ii) the representations and warranties of the applicable Borrower and each Guarantor therein shall be true and correct in all material respects (or in the case of representations and warranties with a "materiality" qualifier, true and correct in all respects) immediately prior to, and after giving effect to, such funding, (iii) the making of such Term Loan shall not violate any requirement of law and shall not be enjoined, temporarily, preliminarily or permanently, and (iv) delivery of a customary borrowing notice at least three (3) business days prior to the requested funding date.

With respect solely to the Director Indemnity Term Loans, the obligation of each Wind-Down Financing Lender to make a Director Indemnity Term Loan is subject to the satisfaction of the following conditions: delivery to the Wind-Down Financing Agent the following (the "Director Indemnification Borrowing Conditions"): (i) delivery of a

6

borrowing notice (the "<u>Director Indemnification Borrowing Request</u>") at least three (3) days prior to the requested funding date, stating (a) the business day of the proposed borrowing (b) the aggregate principal amount of the proposed borrowing, and (c) the proposed borrowing is a Director Indemnity Term Loan; and (ii) a certificate signed by a responsible officer of the applicable Borrower certifying that such Borrower has received a bona fide request in good faith from Pohl to fund the Director Indemnity Term Loans for purposes of payment of current or future indemnification or reimbursement obligations.

With respect solely to the Trustee Indemnity Term Loans, the obligation of each Wind-Down Financing Lender to make a Trustee Indemnity Term Loan is subject to the satisfaction of the following conditions: delivery to the Wind-Down Financing Agent the following (the "<u>Trustee Indemnification Borrowing Conditions</u>"): (i) delivery of a borrowing notice (the "<u>Trustee Indemnification Borrowing Request</u>") at least three (3) days prior to the requested funding date, stating (a) the business day of the proposed borrowing (b) the aggregate principal amount of the proposed borrowing, and (c) the proposed borrowing is a Trustee Indemnity Term Loan; and (ii) a certificate signed by a responsible officer of the applicable Borrower certifying that such Borrower has received a bona fide request in good faith from the Trustee to fund the Trustee Indemnity Term Loans for purposes of payment of current or future indemnification or reimbursement obligations.

**WITHDRAWALS FROM ESCROW ACCOUNT:**

The proceeds of New Money Term Loans will be funded into an escrow account of the applicable Borrower with the Wind-Down Financing Agent that is subject to a first priority lien in favor of the Wind-Down Financing Agent for the benefit of the Wind-Down Financing Lenders (including any existing secured credit facilities) (the "<u>Escrow Account</u>") and, for the avoidance of doubt, shall accrue interest from the date of such funding. Any withdrawal from the Escrow Account will be subject to the following conditions: (i) there shall exist no default or an event of default under the Credit Documentation, (ii) the representations and warranties of each Borrower and each Guarantor therein shall be true and correct in all material respects (or in the case of representations and warranties with a "materiality" qualifier, true and correct in all respects) immediately prior to, and after giving effect to, such funding, and (iii) the Wind-Down Financing Agent (for distribution to the Wind-Down Financing Lenders) having received a withdrawal notice, executed by the applicable Borrower requesting the proposed withdrawal thereunder by no later than three (3) business days prior to the proposed withdrawal date, (a) requesting the amount and date of the withdrawal and (b) listing the use of the net proceeds of the withdrawal. Upon receipt of a withdrawal notice, the Wind-Down Financing Agent shall promptly direct the escrow agent to disburse funds from the Escrow Account on the applicable withdrawal date; <u>provided</u> that, if the Required Lenders determine (which determination may be communicated via a direction of the Required Lenders) that the applicable Borrower has failed to satisfy the conditions precedent set forth in the Credit Documentation for a withdrawal notice and so advise the Wind-Down Financing Agent in writing (directly or through a direction of the Required Lenders) prior to the escrow agent disbursing the withdrawal, the Wind-Down Financing Agent shall decline to authorize such withdrawal and shall communicate the same to the escrow agent.

Subject to the Director Indemnification Borrowing Conditions, the proceeds of the Director Indemnity Term Loans will be funded into an escrow account of the applicable Borrower with the Wind-Down Financing Agent that is subject to a first priority lien in favor of the Wind-Down Financing Agent for the benefit of the Lenders of the

Director Indemnity Term Loan Facility (including any existing secured credit facilities) (the "Director Indemnity Escrow Account") and, for the avoidance of doubt, shall accrue interest from the date of such funding. Any withdrawal from the Director Indemnity Escrow Account will be subject to the Wind-Down Financing Agent (for distribution to the Wind-Down Financing Lenders) having received a withdrawal notice, executed by the applicable Borrower describing the intended withdrawal thereunder by no later than three (3) business days prior to the intended withdrawal date, stating the amount and date of the withdrawal. Upon receipt of a withdrawal notice, the Wind-Down Financing Agent shall promptly direct the indemnity escrow agent to disburse funds from the Director Indemnity Escrow Account on the applicable withdrawal date. Notwithstanding anything to the contrary, any undrawn or unused amount of the Director Indemnity Term Loans will remain available to be drawn and used until the Director Indemnification Termination Date.

Subject to the Trustee Indemnification Borrowing Conditions, the proceeds of the Trustee Indemnity Term Loans will be funded into an escrow account of the applicable Borrower with the Wind-Down Financing Agent that is subject to a first priority lien in favor of the Wind-Down Financing Agent for the benefit of the Lenders of the Trustee Indemnity Term Loan Facility (including any existing secured credit facilities) (the "Trustee Indemnity Escrow Account") and, for the avoidance of doubt, shall accrue interest from the date of such funding. Any withdrawal from the Trustee Indemnity Escrow Account will be subject to the Wind-Down Financing Agent (for distribution to the Wind-Down Financing Lenders) having received a withdrawal notice, executed by the applicable Borrower describing the intended withdrawal thereunder by no later than three (3) business days prior to the intended withdrawal date, stating the amount and date of the withdrawal. Upon receipt of a withdrawal notice, the Wind-Down Financing Agent shall promptly direct the indemnity escrow agent to disburse funds from the Trustee Indemnity Escrow Account on the applicable withdrawal date. Notwithstanding anything to the contrary, any undrawn or unused amount of the Trustee Indemnity Term Loans will remain available to be drawn and used until the Trustee Indemnification Termination Date.

| | |
|---|---|
| **DOCUMENTATION PRINCIPLES:** | The definitive financing documentation for the Wind-Down Financing Facility (the "Credit Documentation") shall contain the terms set forth in this term sheet and, to the extent any other terms are not expressly set forth in this term sheet, will (i) be negotiated in good faith within a reasonable time period to be determined based on the expected Closing Date and (ii) contain such other terms as the Borrowers and the holders of majority outstanding principal amount of commitments (the "Required Lenders") shall reasonably agree; it being understood and agreed that the Credit Documentation shall be substantially consistent with the Alpha DIP Credit Agreement, as modified by the terms herein (collectively, the "Documentation Principles"). |
| **REPRESENTATIONS AND WARRANTIES:** | Appropriate and customary for credit facilities of this type, and in accordance with the Documentation Principles. |
| **AFFIRMATIVE COVENANTS:** | Appropriate and customary for credit facilities of this type, and in accordance with the Documentation Principles. |
| **NEGATIVE COVENANTS:** | Appropriate and customary for credit facilities of this type, and in accordance with the Documentation Principles. |

**EVENTS OF DEFAULT:**    Appropriate and customary events of default ("Event of Default") for credit facilities of this type and in accordance with the Documentation Principles.  Notwithstanding anything to the contrary, the occurrence of an Event of Default, the exercise of any remedies, and the occurrence of the commitment termination date, the Wind-Down Financing Lenders, subject to satisfaction of Indemnification Borrowing Conditions, will fund any Director Indemnification Borrowing Request to fund Director Indemnity Term Loans delivered by the applicable Borrower on or prior to the Director Indemnification Termination Date.

**WAIVER OF JURY TRIAL, GOVERNING LAW:**    Waiver of jury trial, submission to jurisdiction in Delaware before the Bankruptcy Court. Delaware law (without reference to choice of law provisions) to govern.

**MISCELLANEOUS:**    This summary of terms and conditions does not purport to summarize all the conditions, covenants, representations, warranties and other provisions which would be contained in the definitive Credit Documentation for the Wind-Down Financing Facility contemplated hereby.

**<u>Exhibit D-1</u>**

Redline to Previously Filed Wind-Down Financing Facility Term Sheet

CONFIDENTIAL; SUBJECT TO FRE 408
[~~KIRKLAND & ELLIS DRAFT~~K&E / RS Draft 10/~~13~~27/2025]

**SAGA FORMATIONS, INC. (F/K/A EPIC! CREATIONS, INC.), PAJEAU, INC. (F/K/A NEURON FUEL, INC.), TANGIBLE PLAY, INC., AND BYJU'S ALPHA, INC.**
**SUMMARY OF TERMS AND CONDITIONS FOR**
**WIND-DOWN FINANCING FACILITY**[1]

**[●], 2025**

| | |
|---|---|
| **BORROWERS:** | Pajeau, Inc. (f/k/a Neuron Fuel, Inc.), Tangible Play, Inc., Saga Formations, Inc. (f/k/a Epic! Creations, Inc.), BYJU's Alpha, Inc. ("<u>Byju's</u>"), each a Delaware corporation (each, a "<u>Borrower</u>" and collectively, the "<u>Borrowers</u>"). |
| **AGENT:** | GLAS Trust Company LLC will act as the administrative agent and the collateral agent for the Wind-Down Financing Facility (the "<u>Wind-Down Financing Agent</u>"). |
| **LENDERS:** | The Wind-Down Financing Facility shall be provided by certain members of the ad hoc group of lenders under the Prepetition Credit Agreement (as defined below) (in their capacity as lenders under the Wind-Down Financing Facility, the "<u>Wind-Down Financing Lenders</u>"). |
| | ~~[Certain Prepetition Lenders (and/or any of their affiliates or related funds, accounts, vehicles or other entities that are managed, advised or sub-advised by any of the foregoing) (the "Backstop Lenders") will commit to fund their pro rata share (calculated based on such Backstop Lender's commitments under the New Money Term Loan Facility as at the time of entry into the relevant backstop arrangements) of any commitments under the Wind-Down Financing Facility that are not subscribed for by other lenders under the Wind-Down Financing Facility (such commitments, the "Backstop Commitments").][2]~~ |
| **WIND-DOWN FINANCING FACILITY:** | Senior secured wind-down financing facility (the "<u>Wind-Down Financing Facility</u>" and any loans made thereunder, the "<u>Term Loans</u>", together with any obligations arising thereunder, the "<u>Obligations</u>") which shall consist of: (i) delayed draw first-out "new money" term loans in an aggregate principal amount equal to $[●]~~³and~~[2] (the "<u>New Money</u> |

---

[1]    Capitalized terms used but not defined herein shall have the meaning set forth in the *Second Amended Combined Disclosure Statement and Chapter 11 Plan for the Estates of Saga Formations, Inc., Pajeau, Inc., and Tangible Play, Inc.* [Epic Docket No. ~~[●]~~971] (the "<u>Epic Plan</u>") or the *Amended Combined Disclosure Statement and Chapter 11 Plan of BYJU's Alpha, Inc.* [Alpha Docket No. 475] (the "<u>Alpha Plan</u>" and, together with the Epic Plan, the "<u>Plans</u>"), as applicable.

~~³    Backstop arrangement to be determined.~~

~~³    The total amount of the New Money Term Loan Facility shall be confirmed prior to the Effective Date based upon the total new money funding that the Borrowers, in consultation with the Wind-Down Financing Agent at the direction of the Prepetition Required Lenders, determine to be necessary or desirable for the Plan Administrator to investigate, pursue, litigate, or settle the Retained Causes of Action and effectuate the Wind-Down.~~

[2]    The total amount of the New Money Term Loan Facility shall be confirmed prior to the Effective Date based upon the total new money funding that the Borrowers, in consultation with the Wind-Down Financing Agent and the Prepetition Agent at the direction of the Prepetition Required Lenders, determine to be necessary or desirable for the Plan Administrator to investigate, pursue, litigate, or settle the Retained Causes of Action and effectuate the Wind-Down, including to fund payments that would otherwise be made pursuant to the Cooperation Agreement, including funds sufficient to satisfy professional fee obligations arising under the Cooperation Agreement for the period from August 1, 2025, through the Closing Date.

Term Loan Facility" and any term loans made thereunder, the "New Money Term Loans"), with the first draw in the aggregate principal amount up to $[●][3] available on the Closing Date, (ii) roll-over second-out term loans in an aggregate principal amount up too $[●] in respect of all outstanding obligations constituting New Money Term Loans under and as defined in the Alpha DIP Credit Agreement on a dollar-for-dollar basis (the "Second-Out Roll-Over Term Loans"), (iii) roll-over third-out term loans in an aggregate principal amount of $[●] in respect of all outstanding obligations constituting "Roll-Up Loans" under and as defined in the Alpha DIP Credit Agreement on a dollar-for-dollar basis (the "Third Out Roll-Over Term Loans"; together with the Second-Out Roll-Over Term Loans, the "Roll-Over Term Loans"), (iv) [a delayed draw second-out term loan in an aggregate principal amount equal to $10.0 million][4] (the "Director Indemnity Term Loan Facility" and any term loans made thereunder, the "Director Indemnity Term Loans"), and (iv̶v̶) a delayed draw second-out term loan in an aggregate principal amount equal to $500,000 (the "Trustee Indemnity Term Loan Facility" and any term loans made thereunder, the "Trustee Indemnity Term Loans"; the Director Indemnity Term Loan Facility and the Trustee Indemnity Term Loan Facility, the "Indemnity Term Loan Facilities"; the Director Indemnity Term Loans and the Trustee Indemnity Term Loans, the "Indemnity Term Loans").

The Borrowers shall be able to draw on the commitments of the New Money Term Loan Facility up to two draws until the earlier to occur of (i) the date on which the maximum amount of such commitments has been drawn, (ii) the date on which all the commitments for the New Money Term Loans have been terminated in accordance with the Credit Documentation, and (iii) the date that is [●]seven (7) years after the date of the Closing Date.

The Intercreditor Agreement shall be amended such that, on the Closing Date, any Distributable Cash of Pajeau, Inc. (f/k/a Neuron Fuel, Inc.), Tangible Play, Inc., Saga Formations, Inc. (f/k/a Epic! Creations, Inc.), and BYJU's Alpha, Inc. to be distributed pursuant to the treatment of Class 3 Prepetition Term Loan Claims in accordance with the Intercreditor Agreement under the Epic Plan or Alpha Plan, as applicable, shall be deemed distributed and funded by the Wind-Down Financing Lenders on a *pro rata* basis as New Money Term Loans.

The Borrowers shall be able to draw on the commitments of the Director Indemnity Term Loan Facility until the earlier to occur of (i) the date on which the maximum amount of such commitments has been drawn and (ii) the Director Indemnification Termination Date (as defined below).

The Borrowers shall be able to draw on the commitments of the Trustee Indemnity Term Loan Facility until the earlier to occur of (i) the date on which the maximum amount of such commitments has been drawn and (ii) the Trustee Indemnification Termination Date (as defined below).

Amounts borrowed under the Wind-Down Financing Facility that are repaid or prepaid

---

[3]  Note to Draft: The principal amount of the wind-down New Money Term Loans, Second-Out Roll-Over Term Loans and Third Out Roll-Over Term Loans to be confirmed.

[4]  Assuming the Alpha DIP Tranche 2 Term Loans are not drawn prior to the Effective Date. Otherwise, it will be part of the Roll-Over Term Loans.

may not be re-borrowed.

**INCREMENTAL FACILITY:**

The Credit Documentation (as defined below) will permit the Borrowers to add one or more incremental term loan facilities (which may take form of delayed draw term loan commitments) to the Wind-Down Financing Facility and/or to increase the Term Loans, subject to terms to be agreed by the Borrowers and the Wind-Down Financing Lenders.

**CHAPTER 11 CASES:**

On February 1, 2024, BYJU's Alpha, Inc. commenced a voluntary case (the "Alpha Case") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended, in the United States Bankruptcy Court for the District of Delaware.  On September 16, 2024, the Bankruptcy Court entered the *Order for Relief in Involuntary Cases and Appointing Chapter 11 Trustee* [Epic Docket No. 147] (the "Order for Relief") commencing the chapter 11 cases of Saga Formations, Inc. (f/k/a Epic! Creations, Inc.), Pajeau, Inc. (f/k/a Neuron Fuel, Inc.), and Tangible Play, Inc. (the "Epic Cases" and, together with the Alpha Case, the "Chapter 11 Cases").

**PREPETITION CREDIT AGREEMENT:**

That certain Credit and Guaranty Agreement, dated as of November 24, 2021 (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement"), by and among Think and Learn Private Limited, a company established under the laws of India with corporate identification number U80903KA2011PTC061427 (the "Parent Guarantor"), ~~Byju's~~BYJU's Alpha, Inc., certain subsidiaries of the Parent Guarantor, each lender from time to time party thereto (the "Prepetition Lenders"), and GLAS Trust Company LLC, a limited liability company organized and existing under the laws of the State of New Hampshire, as administrative agent and as collateral agent, the "Prepetition Agent").

**DIP CREDIT AGREEMENT:**

That certain Senior Secured Superpriority Debtor-In-Possession Credit and Guaranty Agreement, dated as of April 9, 2024 (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Alpha DIP Credit Agreement"), by and among ~~Byju's~~BYJU's Alpha, Inc., the other guarantors, the lenders party thereto from time to time (the "Alpha DIP Lenders") and GLAS Trust Company LLC, as administrative agent and collateral agent (the "Alpha DIP Agent").

**MATURITY DATE:**

The New Money Term Loans and Roll-Over Term Loans will mature on the date which is ~~the later of~~seven (~~1~~7) ~~[●] years~~ following the date of the first draw of the New Money Term Loans thereunder.

The Director Indemnity Term Loans will mature on the Director Indemnification Termination Date.  The Trustee Indemnity Term Loans will mature on the Trustee Indemnification Termination Date.

**USE OF PROCEEDS:**

The New Money Term Loan Facility may be drawn by the Plan Administrator with the consent of the Wind-Down Debtors Oversight Committee to fund the administration of the Borrowers, including for the payment of the ongoing fees of the Plan Administrator, the Plan Administrator's counsel, the Wind-Down Debtors Oversight Committee's counsel (if any), and other professionals retained by the Borrowers, the Plan Administrator, or the Wind-Down Debtors Oversight Committee (on a collective basis, and not for individual members) from time to time (if any) as well as litigation and other expenses necessary or advisable to pursue the Retained Causes of Action or otherwise effectuate the Wind-Down. and payment of fees and expenses that would otherwise be made under the Cooperation Agreement, including the satisfaction of professional fee obligations arising under the Cooperation Agreement for the period from August 1, 2025, through the Closing Date; *provided* that, for the avoidance of doubt, to the extent a payment required to be

3

made under the Cooperation Agreement is not satisfied from the proceeds of the Wind-Down Financing Facility, such obligation shall remain outstanding and the funding mechanism provided for under the Cooperation Agreement shall remain in full force and effect in accordance with the terms thereof.

The Director Indemnity Term Loan Facility may be drawn by the Plan Administrator, which shall not require the consent of the Wind-Down Debtors Oversight Committee. The proceeds of Director Indemnity Term Loans, if any, will be used solely to provide funding to the Borrowers to pay the Borrowers' indemnification obligations owed to Timothy R. Pohl ("Pohl") in his capacity as the director and officer of the Borrowers solely to the extent any Borrower has received such requests for indemnification and otherwise met the funding condition of the Director Indemnity Term Loans. To the extent any proceeds of Director Indemnity Term Loans have not been utilized for the purposes described herein on the date that is the later to occur of (i) the date that is [six (6) years] following the end of the Borrower's chapter 11 case (the "Tail Date") and (ii) the date of any final and binding resolution of any litigation pending against Pohl prior to the Tail Date for which he is entitled to indemnification under any of (a) that certain Independent Director Agreement, dated as of March 3, 2023, by and between the Byju's and Pohl, (b) that certain Certificate of Incorporation of Byju's, filed on September 27, 2021, as amended by that certain Certificate of Amendment of Certificate of Incorporation of Byju's filed on May 10, 2023, (c) those certain Bylaws of Byju's adopted on September 29, 2021, or (d) the Plan Administrator Agreement contemplated to be entered into with Pohl in connection with the consummation of the Plans, each of the foregoing as may be amended from time to time (such later date, the "Director Indemnification Termination Date"), the applicable Borrower shall promptly return all such proceeds to the Wind-Down Financing Agent for application against *first*, the obligations under the Director Indemnity Term Loan Facility and *second*, the obligations under the Wind-Down Financing Facility.

The Trustee Indemnity Term Loan Facility shall be ~~unfunded but~~ fully committed and available until the later of (i) six (6) years after the closing of the Chapter 11 Cases and (ii) the date of any final and binding resolution of the India Lawsuit (such later date, the "Trustee Indemnification Termination Date"). The Chapter 11 Trustee will be entitled to draw on that commitment to satisfy any judgment against her and to pay her reasonable out-of-pocket expenses including attorney's fees and all other defense costs in the following circumstances: (x) a judgment is entered in the India Lawsuit against her personally and a Person moves to recognize or enforce that judgment against the Chapter 11 Trustee's personal property wherever located; (y) the Chapter 11 Trustee in her sole discretion determines to bring an action in the Bankruptcy Court to enforce the terms of this Plan or the Confirmation Order against a Person seeking to bring claims or causes of action against her individually related to her service as the Chapter 11 Trustee; or (z) to defend against any action brought against the Chapter 11 Trustee whether in the Bankruptcy Court or in any court asserting claims or causes of action based in whole or in part on the allegations set forth in the India Lawsuit. To the extent any proceeds of Trustee Indemnity Term Loans have not been utilized for the purposes described herein by the Trustee Indemnification Termination Date, the applicable Borrower shall promptly return all such proceeds to the Wind-Down Financing Agent for application against *first*, the obligations under the Trustee Indemnity Term Loan Facility and *second*, the obligations under the Wind-Down Financing Facility.

Notwithstanding anything to the contrary, the Indemnity Term Loans shall not be used for any payment of interest or fees.

| | |
|---|---|
| **INTEREST RATE:** | The New Money Term Loans shall accrue interest at a rate per annum equal to 25%, which interest shall be payable quarterly in kind rather than in cash and shall be issued in additional New Money Term Loans. |
| | The Second-Out Roll-Over Term Loans and Third-Out Roll-Over Term Loans shall accrue interest at a rate per annum equal to Term SOFR plus [8]%, which interest shall be payable quarterly and shall all be payable in kind. |
| ~~ECONOMICS~~MINIMUM MULTIPLE ON INVESTED CAPITAL: | [~~Interest, fees, premium,~~Solely with respect to New Money Term Loan Facility and any of the Indemnity Term Loan Facilities, a minimum multiple on invested capital ~~and other economies to be determined.~~]("MOIC") of 3.00x on any principal amount of Term Loans funded under the New Money Term Loan Facility or any of the Indemnity Term Loan Facilities shall apply upon repayment or prepayment of such Term Loans. For the avoidance of doubt, the MOIC multiple will be calculated based on only principal amount funded under the New Money Term Loan Facility and any of the Indemnity Term Loan Facilities (and not any interest accrued thereon). |
| **VOLUNTARY / MANDATORY PREPAYMENT:** | Subject to the Intercreditor Agreement and the Credit Documentation, (i) the Term Loans may be prepaid in part or in full without any premium and (ii) the Term Loans shall be prepaid with 100% of net cash proceeds of any asset sale, litigation or settlement awards and/or extraordinary receipt, in each case subject to the terms and conditions regarding distributions set forth in the Plan Administrator Agreement. |
| | For the avoidance of doubt, MOIC shall apply to any repayment or prepayment of New Money Term Loans and Indemnity Term Loans. |
| **SECURITY AND RANKING:** | The obligations of the Borrowers shall be (i) secured by: a perfected first-priority security interest (subject to permitted liens and other exceptions to be set forth in the Credit Documentation) in substantially all of each Borrower's and guarantor's tangible and intangible assets now owned or hereafter acquired on a senior basis to the loans under the Prepetition Credit Agreement, including, without limitation, all rights, interests and obligations in and to any cause of action of the Borrowers with respect to fraud, fraudulent conveyance, or breach of fiduciary duties, and any other Retained Causes of Action, and any proceeds thereof (collectively, the "<u>Litigation Claims</u>") and (ii) unconditionally guaranteed by each other Borrower and/or guarantor. |
| | The Term Loans (and related Obligations) shall benefit from payment priority and turn-over rights (and related rights) in respect of any recovery received from or in respect of any guarantor under the Prepetition Credit Agreement that is not a Borrower pursuant to an intercreditor arrangement to be entered into by and between the Wind-Down Financing Agent and the Prepetition Agent (the "<u>Intercreditor Agreement</u>"). |
| | ~~The New Money Term Loans shall rank senior on a payment basis to (i) the Roll-Over Term Loans and (ii) the Indemnity Term Loans~~Subject to the Credit Documentation, any amount received on account of the Obligations (except with respect to repayment or prepayment from any proceeds in the Director Indemnity Escrow Account and the Trustee Indemnity Escrow Account, respectively) shall be applied in the following order: (i) first, to the New Money Term Loans and the Indemnity Term Loans on a pari passu basis (for the avoidance of doubt, including the MOIC amount and/or interest accrued thereon), (ii) second, to the principal amount and the interest accrued on Second-Out Roll-Over Term Loans, (iii) third, to the extent there is any outstanding unfunded commitments under the Director Indemnity Term Loan Facility or the Trustee Indemnity Term Loan Facility, to the Director Indemnity Escrow Account and the Trustee Indemnity Escrow Account on a pari passu basis; *provided that*, any |

amount so applied shall reduce dollar-for-dollar the commitment amount of the respective Indemnity Term Loan Facilities until such commitment is $0 and is terminated, (iv) fourth, to the principal amount and the interest accrued on the Third-Out Roll-Over Term Loans.

| | |
|---|---|
| **CONDITIONS PRECEDENT:** | The effectiveness of the Wind-Down Financing Facility shall be subject to the satisfaction or waiver by the Wind-Down Financing Lenders of the following conditions (in addition to other customary conditions) (the date on which such conditions are satisfied or waived, the "Closing Date"): |

    (a)  the Credit Documentation (for the avoidance of doubt, including the Intercreditor Agreement), in form and substance reasonably acceptable to the Wind-Down Financing Agent and the Prepetition Agent at the direction of the Prepetition Required Lenders, shall have been approved by order of the Bankruptcy Court (such approval via the Confirmation Orders (as defined below) being sufficient) and executed and delivered by all parties thereto and shall be in full force and effect, and no amendment, supplement or modification thereof shall have been entered into without the Consent of the Agents;

    (b)  the accuracy in all materials respects of all representations and warranties in the Credit Documentation;

    (c)  no default or event of default exists or would exist after giving effect thereto;

    (d)  delivery of a customary borrowing notice at least two (2) business days prior to the requested funding date;

    (e)  the Bankruptcy Court shall have entered (i) the Confirmation Order approving the Alpha Plan (the "Alpha Confirmation Order"), and (ii) the Confirmation Order approving the Epic Plan (the "Epic Confirmation Order" and, together with the Alpha Confirmation Order, the "Confirmation Orders")), in each case in form and substance reasonably acceptable to the Wind-Down Financing Agent and the Prepetition Agent at the direction of the Prepetition Required Lenders, and such Confirmation Orders shall be in full force and effect and shall not have been vacated, reversed, modified, amended, or stayed and shall not be subject to a pending appeal or motion for leave to appeal or other proceeding to set aside such order or to challenge the relief provided for in such orders;

    (f)  each Effective Date shall have occurred or shall occur concurrently with the entry into the Wind-Down Financing Facility; and

    (g)  the Wind-Down Debtor Assets shall have vested in the Borrowers.

| | |
|---|---|
| **FUNDING CONDITIONS:** | With respect solely to the New Money Term Loans, the obligation of each Wind-Down Financing Lender to make a New Money Term Loan is subject to the satisfaction of the following conditions: (i) there shall exist no default or an event of default under the Credit Documentation, (ii) the representations and warranties of the applicable Borrower and each Guarantor therein shall be true and correct in all material respects (or in the case of representations and warranties with a "materiality" qualifier, true and correct in all respects) immediately prior to, and after giving effect to, such funding, (iii) the making of such Term Loan shall not violate any requirement of law and shall not be enjoined, temporarily, preliminarily or permanently, and (iv) delivery of a customary borrowing notice at least three (3) business days prior to the requested funding date. |

With respect solely to the Director Indemnity Term Loans, the obligation of each Wind-Down Financing Lender to make a Director Indemnity Term Loan is subject to the satisfaction of the following conditions: delivery to the Wind-Down Financing Agent the following (the "Director Indemnification Borrowing Conditions"): (i) delivery of a borrowing notice (the "Director Indemnification Borrowing Request") at least three (3) days prior to the requested funding date, stating (a) the business day of the proposed borrowing (b) the aggregate principal amount of the proposed borrowing, and (c) the proposed

borrowing is a Director Indemnity Term Loan; and (ii) a certificate signed by a responsible officer of the applicable Borrower certifying that such Borrower has received a bona fide request in good faith from Pohl to fund the Director Indemnity Term Loans for purposes of payment of current or future indemnification or reimbursement obligations.

With respect solely to the Trustee Indemnity Term Loans, the obligation of each Wind-Down Financing Lender to make a Trustee Indemnity Term Loan is subject to the satisfaction of the following conditions: delivery to the Wind-Down Financing Agent the following (the "Trustee Indemnification Borrowing Conditions"): (i) delivery of a borrowing notice (the "Trustee Indemnification Borrowing Request") at least three (3) days prior to the requested funding date, stating (a) the business day of the proposed borrowing (b) the aggregate principal amount of the proposed borrowing, and (c) the proposed borrowing is a Trustee Indemnity Term Loan; and (ii) a certificate signed by a responsible officer of the applicable Borrower certifying that such Borrower has received a bona fide request in good faith from the Trustee to fund the Trustee Indemnity Term Loans for purposes of payment of current or future indemnification or reimbursement obligations.

| | |
|---|---|
| **WITHDRAWALS FROM ESCROW ACCOUNT:** | The proceeds of New Money Term Loans will be funded into an escrow account of the applicable Borrower with the Wind-Down Financing Agent that is subject to a first priority lien in favor of the Wind-Down Financing Agent for the benefit of the Wind-Down Financing Lenders (including any existing secured credit facilities) (the "Escrow Account") and, for the avoidance of doubt, shall accrue interest from the date of such funding. Any withdrawal from the Escrow Account will be subject to the following conditions: (i) there shall exist no default or an event of default under the Credit Documentation, (ii) the representations and warranties of each Borrower and each Guarantor therein shall be true and correct in all material respects (or in the case of representations and warranties with a "materiality" qualifier, true and correct in all respects) immediately prior to, and after giving effect to, such funding, and (iii) the Wind-Down Financing Agent (for distribution to the Wind-Down Financing Lenders) having received a withdrawal notice, executed by the applicable Borrower requesting the proposed withdrawal thereunder by no later than three (3) business days prior to the proposed withdrawal date, (a) requesting the amount and date of the withdrawal and (b) listing the use of the net proceeds of the withdrawal. Upon receipt of a withdrawal notice, the Wind-Down Financing Agent shall promptly direct the escrow agent to disburse funds from the Escrow Account on the applicable withdrawal date; provided that, if the Required Lenders determine (which determination may be communicated via a direction of the Required Lenders) that the applicable Borrower has failed to satisfy the conditions precedent set forth in the Credit Documentation for a withdrawal notice and so advise the Wind-Down Financing Agent in writing (directly or through a direction of the Required Lenders) prior to the escrow agent disbursing the withdrawal, the Wind-Down Financing Agent shall decline to authorize such withdrawal and shall communicate the same to the escrow agent. |

Subject to the Director Indemnification Borrowing Conditions, the proceeds of the Director Indemnity Term Loans will be funded into an escrow account of the applicable Borrower with the Wind-Down Financing Agent that is subject to a first priority lien in favor of the Wind-Down Financing Agent for the benefit of the Lenders of the Director Indemnity Term Loan Facility (including any existing secured credit facilities) (the "Director Indemnity Escrow Account") and, for the avoidance of doubt, shall accrue interest from the date of such funding. Any withdrawal from the Director Indemnity Escrow Account will be subject to the Wind-Down Financing Agent (for distribution to the Wind-Down Financing Lenders) having received a withdrawal notice, executed by the applicable Borrower describing the intended withdrawal thereunder by no later than three (3) business days prior to the intended withdrawal date, stating the amount and date of the

withdrawal. Upon receipt of a withdrawal notice, the Wind-Down Financing Agent shall promptly direct the indemnity escrow agent to disburse funds from the Director Indemnity Escrow Account on the applicable withdrawal date. Notwithstanding anything to the contrary, any undrawn or unused amount of the Director Indemnity Term Loans will remain available to be drawn and used until the Director Indemnification Termination Date.

Subject to the Trustee Indemnification Borrowing Conditions, the proceeds of the Trustee Indemnity Term Loans will be funded into an escrow account of the applicable Borrower with the Wind-Down Financing Agent that is subject to a first priority lien in favor of the Wind-Down Financing Agent for the benefit of the Lenders of the Trustee Indemnity Term Loan Facility (including any existing secured credit facilities) (the "Trustee Indemnity Escrow Account") and, for the avoidance of doubt, shall accrue interest from the date of such funding. Any withdrawal from the Trustee Indemnity Escrow Account will be subject to the Wind-Down Financing Agent (for distribution to the Wind-Down Financing Lenders) having received a withdrawal notice, executed by the applicable Borrower describing the intended withdrawal thereunder by no later than three (3) business days prior to the intended withdrawal date, stating the amount and date of the withdrawal. Upon receipt of a withdrawal notice, the Wind-Down Financing Agent shall promptly direct the indemnity escrow agent to disburse funds from the Trustee Indemnity Escrow Account on the applicable withdrawal date. Notwithstanding anything to the contrary, any undrawn or unused amount of the Trustee Indemnity Term Loans will remain available to be drawn and used until the Trustee Indemnification Termination Date.

| | |
|---|---|
| **DOCUMENTATION PRINCIPLES:** | The definitive financing documentation for the Wind-Down Financing Facility (the "Credit Documentation") shall contain the terms set forth in this term sheet and, to the extent any other terms are not expressly set forth in this term sheet, will (i) be negotiated in good faith within a reasonable time period to be determined based on the expected Closing Date and (ii) contain such other terms as the Borrowers and the holders of majority outstanding principal amount of commitments (the "Required Lenders") shall reasonably agree; it being understood and agreed that the Credit Documentation shall be substantially consistent with the Alpha DIP Credit Agreement, as modified by the terms herein (collectively, the "Documentation Principles"). |
| **REPRESENTATIONS AND WARRANTIES:** | Appropriate and customary for credit facilities of this type, and in accordance with the Documentation Principles. |
| **AFFIRMATIVE COVENANTS:** | Appropriate and customary for credit facilities of this type, and in accordance with the Documentation Principles. |
| **NEGATIVE COVENANTS:** | Appropriate and customary for credit facilities of this type, and in accordance with the Documentation Principles. |
| **EVENTS OF DEFAULT:** | Appropriate and customary events of default ("Event of Default") for credit facilities of this type and in accordance with the Documentation Principles. Notwithstanding anything to the contrary, the occurrence of an Event of Default, the exercise of any remedies, and the occurrence of the commitment termination date, the Wind-Down Financing Lenders, subject to satisfaction of Indemnification Borrowing Conditions, will fund any Director Indemnification Borrowing Request to fund Director Indemnity Term Loans delivered by the applicable Borrower on or prior to the Director Indemnification Termination Date. |
| **WAIVER OF JURY TRIAL, GOVERNING LAW:** | Waiver of jury trial, submission to jurisdiction in Delaware before the Bankruptcy Court. Delaware law (without reference to choice of law provisions) to govern. |

8

**MISCELLANEOUS:** This summary of terms and conditions does not purport to summarize all the conditions, covenants, representations, warranties and other provisions which would be contained in the definitive Credit Documentation for the Wind-Down Financing Facility contemplated hereby.

| Summary report:<br>Litera Compare for Word 11.10.1.2 Document comparison done on<br>10/27/2025 7:50:36 PM | |
|---|---|
| **Style name:** Color (Kirkland Default) | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** (KE 10.13 Edits) Epic Wind Down Financing Term Sheet (003) (002).docx | |
| **Modified filename:** BYJU - Wind-Down Financing Term Sheet (KERS Draft 10-27-25)-133310475-v24.docx | |
| **Changes:** | |
| Add | 37 |
| Delete | 30 |
| Move From | 2 |
| Move To | 2 |
| Table Insert | 2 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 73 |